# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

INTEGRITY INVESTMENT FUND, LLC, )
an Illinois limited liability company, )
INTEGRITY INVESTMENT REO )
HOLDINGS, LLC, an Illinois limited )
liability company, SIGTELLO, LLC, an )
Illinois series limited liability company, and )
ABBOTT PORTFOLIO, LLC, an Illinois )
limited liability company. )
                                  )
      Plaintiffs, )
                                  )  Case No.
        v. )
                                  )
KWAME RAOUL, in his official capacity as )
Attorney General of the State of Illinois, )
DAVID HARRIS, in his official capacity as )
Director of the Illinois Department of )
Revenue, MARIA PAPPAS, in her capacity
as Treasurer of Cook County;
MONICA GORDON, in her capacity as
Clerk of Cook County, COOK COUNTY,
ILLINOIS, an Illinois political subdivision
unit of government; Adams      F. Bryden Cory, in her capacity as Treasurer of
DuPage County, Illinois    Ryan A. Niekamp, in her capacity as Clerk of DuPage
County, Illinois
Boone        Curtis P. Newport, in her capacity as Treasurer of DuPage County,
Illinois       Julie A. Bliss, in her capacity as Clerk of DuPage County, Illinois
Bureau      Joseph Birkey, in her capacity as Treasurer of DuPage County, Illinois
        Matthew S. Eggers, in her capacity as Clerk of DuPage County, Illinois
Carroll      Lydia Hutchcarft, in her capacity as Treasurer of DuPage County,
Illinois       Amy Buss, in her capacity as Clerk of DuPage County, Illinois
Cass        Travis Cox, in her capacity as Treasurer of DuPage County, Illinois
        Shelly Wessel, in her capacity as Clerk of DuPage County, Illinois
Champaign  Byron Clark, in her capacity as Treasurer of DuPage County, Illinois
        Aaron Ammons, in her capacity as Clerk of DuPage County, Illinois
Christian   Betty Asmussen, in her capacity as Treasurer of DuPage County,
Illinois       Jodie Badman, in her capacity as Clerk of DuPage County, Illinois
Clay        Stacy Allen, in her capacity as Treasurer of DuPage County, Illinois
        Amy Britton, in her capacity as Clerk of DuPage County, Illinois

Clinton    Denise Trame, in her capacity as Treasurer of DuPage County, Illinois
        Vicky Albers, in her capacity as Clerk of DuPage County, Illinois
Coles    George E. Edwards, in her capacity as Treasurer of DuPage County,
Illinois        Julie Coe, in her capacity as Clerk of DuPage County, Illinois
Crawford    Rikki Calloway, in her capacity as Treasurer of DuPage County,
Illinois    Beckie Staley, in her capacity as Clerk of DuPage County, Illinois
Cumberland Jeny Maynard, in her capacity as Treasurer of DuPage County, Illinois
        Beverly Howard, in her capacity as Clerk of DuPage County, Illinois
DeWitt    Jay Russell, in her capacity as Treasurer of DuPage County, Illinois
        Kari Harris, in her capacity as Clerk of DuPage County, Illinois
DuPage    Gwen Henry, in her capacity as Treasurer of DuPage County, Illinois
        Jean Kaczmarek, in her capacity as Clerk of DuPage County, Illinois
Ford    Krisha Witcomb, in her capacity as Treasurer of DuPage County,
Illinois    Amy Frederick, in her capacity as Clerk of DuPage County, Illinois
Franklin    Steve Vercellino, in her capacity as Treasurer of DuPage County,
Illinois    Kevin Wilson, in her capacity as Clerk of DuPage County, Illinois
Fulton    Staci Mayall, in her capacity as Treasurer of DuPage County, Illinois
        Patrick O'Brian, in her capacity as Clerk of DuPage County, Illinois
Grundy    Todd Koehn, in her capacity as Treasurer of DuPage County, Illinois
        Kay Olson, in her capacity as Clerk of DuPage County, Illinois
Hancock    Kristine Pilkington, in her capacity as Treasurer of DuPage County,
Illinois        Holly Wilde-Tillman, in her capacity as Clerk of DuPage County,
Illinois
Henry    Kelly Vinceny, in her capacity as Treasurer of DuPage County, Illinois
        Barbara M Link, in her capacity as Clerk of DuPage County, Illinois
Jackson    Liz Hunter, in her capacity as Treasurer of DuPage County, Illinois
        Frank L. Byrd, in her capacity as Clerk of DuPage County, Illinois
Jersey    Becca Strang, in her capacity as Treasurer of DuPage County, Illinois
        Pam Warford, in her capacity as Clerk of DuPage County, Illinois
Kane    Chris Lauzen, in her capacity as Treasurer of DuPage County, Illinois
        John A. Cunningham, in her capacity as Clerk of DuPage County, Illinois
Kankakee    Nicholas Africano, in her capacity as Treasurer of DuPage County,
Illinois    Dan Hendrickson, in her capacity as Clerk of DuPage County, Illinois
Kendall    Jill Ferko, in her capacity as Treasurer of DuPage County, Illinois
        Debbie Gillette, in her capacity as Clerk of DuPage County, Illinois
Lake    Holly Kim, in her capacity as Treasurer of DuPage County, Illinois
        Anthony Vega, in her capacity as Clerk of DuPage County, Illinois
LaSalle    James L. Spelich, in her capacity as Treasurer of DuPage County,
Illinois    Jennifer Ebner, in her capacity as Clerk of DuPage County, Illinois
Lawrence    Barbie Morey, in her capacity as Treasurer of DuPage County, Illinois
        Will C. Gibson, in her capacity as Clerk of DuPage County, Illinois
Lee    Paul Rudolphi, in her capacity as Treasurer of DuPage County, Illinois

Nancy Peterson, in her capacity as Clerk of DuPage County, Illinois

Livingston M. Nikki Meier, in her capacity as Treasurer of DuPage County, Illinois Kristy Masching, in her capacity as Clerk of DuPage County, Illinois

Logan Penny Thomas, in her capacity as Treasurer of DuPage County, Illinois Theresa Moore, in her capacity as Clerk of DuPage County, Illinois

Macoupin Amber McGartland, in her capacity as Treasurer of DuPage County, Illinois Pete Duncan, in her capacity as Clerk of DuPage County, Illinois

Marion Gary L. Purcell, in her capacity as Treasurer of DuPage County, Illinois Steven Fox, in her capacity as Clerk of DuPage County, Illinois

Marshall Cynthia Nighsonger, in her capacity as Treasurer of DuPage County, Illinois Jill Kenyon, in her capacity as Clerk of DuPage County, Illinois

Mason Cari B. Meeker, in her capacity as Treasurer of DuPage County, Illinois Summer Brown, in her capacity as Clerk of DuPage County, Illinois

McDonough Dana Moon, in her capacity as Treasurer of DuPage County, Illinois Jeremy Benson, in her capacity as Clerk of DuPage County, Illinois

McHenry Glenda L. Miller, in her capacity as Treasurer of DuPage County, Illinois Joseph J Tirio, in her capacity as Clerk of DuPage County, Illinois

McLean Rebecca C McNeil, in her capacity as Treasurer of DuPage County, Illinois Kathy Michael, in her capacity as Clerk of DuPage County, Illinois

Menard Molly Bettis, in her capacity as Treasurer of DuPage County, Illinois Martha Gum, in her capacity as Clerk of DuPage County, Illinois

Mercer Bev Lower, in her capacity as Treasurer of DuPage County, Illinois Brian Gerber, in her capacity as Clerk of DuPage County, Illinois

Montgomery Nikki Lohman, in her capacity as Treasurer of DuPage County, Illinois Sandy Leitheiser, in her capacity as Clerk of DuPage County, Illinois

Morgan Crystal Myers, in her capacity as Treasurer of DuPage County, Illinois Sheriy Sills, in her capacity as Clerk of DuPage County, Illinois

Moultrie Stephanie L Helmuth, in her capacity as Treasurer of DuPage County, Illinois Linda Qualls-Binder, in her capacity as Clerk of DuPage County, Illinois

Ogle Tiffany O'Brien, in her capacity as Treasurer of DuPage County, Illinois Laura J. Cook, in her capacity as Clerk of DuPage County, Illinois

Peoria Branden Martin, in her capacity as Treasurer of DuPage County, Illinois Rachel Parker, in her capacity as Clerk of DuPage County, Illinois

Perry Jodi Koester, in her capacity as Treasurer of DuPage County, Illinois Robert Keli, in her capacity as Clerk of DuPage County, Illinois

Piatt Debbie Marshall, in her capacity as Treasurer of DuPage County, Illinois Jennifer Harper, in her capacity as Clerk of DuPage County, Illinois

Putnam Kevin E Kunkel, in her capacity as Treasurer of DuPage County, Illinois Tina Dulder, in her capacity as Clerk of DuPage County, Illinois

Rock Island Nick Camlin, in her capacity as Treasurer of DuPage County, Illinois Kelly Fisher, in her capacity as Clerk of DuPage County, Illinois

Sangamon    Joe Aiello, in her capacity as Treasurer of DuPage County, Illinois
           Frank Lesco, in her capacity as Clerk of DuPage County, Illinois
Shelby     Erica Firnhaber, in her capacity as Treasurer of DuPage County,
Illinois   Jessica Fox, in her capacity as Clerk of DuPage County, Illinois
St. Clair  Andrew Lopinot, in her capacity as Treasurer of DuPage County,
Illinois   Thomas Holbrook, in her capacity as Clerk of DuPage County, Illinois
Stark      Paula Leezer, in her capacity as Treasurer of DuPage County, Illinois
           Heather Hollis, in her capacity as Clerk of DuPage County, Illinois
           Stephenson  Stephanie Helms, in her capacity as Treasurer of DuPage
County, Illinois     Jazmin Winget, in her capacity as Clerk of DuPage County,
Illinois
Tazewell   Hannah Clark, in her capacity as Treasurer of DuPage County, Illinois
           John C. Ackerman, in her capacity as Clerk of DuPage County, Illinois
Vermillion  Darren Duncan, in her capacity as Treasurer of DuPage County,
Illinois   Mathew Long, in her capacity as Clerk of DuPage County, Illinois
White      Mike Baxley, in her capacity as Treasurer of DuPage County, Illinois
           Kayci Heil, in her capacity as Clerk of DuPage County, Illinois
Whiteside  Penny VanKampen in her capacity as Treasurer of DuPage County,
Illinois   Karen Starow, in her capacity as Clerk of DuPage County, Illinois
Will       Tim Brophy, in her capacity as Treasurer of DuPage County, Illinois
           Karen Stukel, in her capacity as Clerk of DuPage County, Illinois
Williamson  Ashley Gott, in her capacity as Treasurer of DuPage County, Illinois
           Amanda Barnes, in her capacity as Clerk of DuPage County, Illinois
Winnebago  Theresa Grenn, in her capacity as Treasurer of DuPage County,
Illinois   Lori Gummow, in her capacity as Clerk of DuPage County, Illinois

                                         )
           Defendants.                   )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, INTEGRITY INVESTMENT FUND, LLC, an Illinois limited

liability company, INTEGRITY INVESTMENT REO HOLDINGS, LLC, an Illinois

limited liability company, SIGTELLO, LLC, an Illinois series limited liability

company, and ABBOTT PORTFOLIO, LLC, an Illinois limited liability company, by

and through undersigned counsel, and for their Complaint against Defendants,

states and alleges as follows:

4

## INTRODUCTION

The Fifth Amendment to the United State Constitution bars the State of Illinois, or any county therein, from seizing property from its owners for the purpose of collecting delinquent property taxes, while in the process forever depriving the property owner of the surplus equity in said property without compensation. *See* U.S. Const. amend. V. The United States Supreme Court has ruled that such action is an unconstitutional taking of the owners' property. Yet, in Illinois this practice persists.

The Cook County property tax sale system, which implements the Illinois Property Tax Code, 35 ILCS 200/1-1 *et seq.*, unconstitutionally deprives a property owner who fails to pay overdue property taxes of not just their property to the extent it is taken to satisfy the amount of the tax debt, but of all of the surplus equity in the property possessed by the owner; *i.e.* - the market value of the property over and above what the owner owes in overdue taxes, penalties, interest and costs. The County Defendants sell the delinquent taxes to a private party investor-called a "tax purchaser"—who pays the past due taxes and, in exchange, receives the right to take ownership of the property if the property is not redeemed through payment of the taxes, plus all accrued penalties and interest by a deadline known as the "redemption date." Alternatively, if the property is not sold, it is forfeited to the county or state. If the property is not "redeemed" by paying all amounts due in taxes and related charges by the redemption date, the tax lien

certificate holder is entitled to a tax deed to the property, upon which will transfer ownership of the property free and clear, no matter how much it was worth in excess of the unredeemed taxes and related charges.

Plaintiffs are tax purchasers who have participated in the auction process, purchased tax certificates - upon the payment of delinquent taxes - from the Defendant Counties, which they still possess. Should the taxes on the subject properties not be paid, and said properties redeemed, Plaintiffs will be entitled to petition the Counties' Circuit Courts for tax deeds, and upon receipt of same they will own the subject properties.

In this process, nobody reimburses the property owner for their lost surplus equity. Therefore, a property tax sale, where the owner cannot or does not successfully redeem, will ultimately result in a total loss to the owner of not just the property to the extent of the amount of the taxes due, but also the entire value of the property over and above the tax amounts owed.

However, the Supreme Court has ruled that such a scheme is an unconstitutional violation of the property owners' Fifth Amendment rights against unlawful takings. *See Tyler v. Hennepin County*, 598 U.S. 631 (2023).

Plaintiffs assert their constitutional rights against the County Defendants for their sale of tax certificates to the Plaintiffs which are now all but worthless, as they will either force Plaintiffs to pay the surplus equity of the auctioned property to the property owner, to never receive a tax deed, or to violate the property owners'

Fifth Amendment rights. Plaintiffs assert their constitutional rights against the State Defendants for their unconstitutional scheme which violates property owners' constitutional rights, and forces Plaintiffs to either not obtain deeds to property for which they hold tax certificates, pay the property owners the surplus equity, or violate the property owners' Fifth Amendment rights. Plaintiffs are entitled to declaratory, injunctive, and equitable relief as a result of this unconstitutional scheme.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, 2202 and 42 U.S.C. § 1983. The Court has jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.

2.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## PARTIES

### Plaintiffs

3.     Plaintiff INTEGRITY INVESTMENT FUND, LLC, is an Illinois limited liability company, which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

4.     Plaintiff INTEGRITY INVESTMENT REO HOLDINGS, LLC, is an Illinois limited liability company, which has received tax certificates from the

Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

5.      Plaintiff SIGTELLO, LLC, is an Illinois series limited liability company, , which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

6.      Plaintiff ABBOTT PORTFOLIO, LLC, is an Illinois limited liability company, which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

**Defendants**

7.      Defendant Kwame Raoul is sued in his official capacity as the Attorney General of the State of the Illinois. In that capacity, he maintains his principal offices at 500 South 2nd Street, Springfield, IL 62702, but also maintains offices throughout the State, including in Chicago in Cook County.

8.      Defendant Raoul's ongoing enforcement of the relevant State law against Illinois property owners places Plaintiffs in the position of either not obtain deeds to property for which they hold tax certificates, pay the property owners the surplus equity, or violate the property owners' Fifth Amendment rights.

9. Defendant David Harris is sued in his official capacity as the Director of the Illinois Department of Revenue. In that capacity, he maintains his principal offices at 101 West Jefferson Street, Springfield, IL 62702, but also maintains offices through the State, including in Chicago and Des Plaines in Cook County.

10. Defendant Harris's ongoing enforcement of the relevant State law against Illinois property owners places Plaintiffs in the position of either not obtain deeds to property for which they hold tax certificates, pay the property owners the surplus equity, or violate the property owners' Fifth Amendment rights.

11. Defendant Maria Pappas is sued in her official capacity as the Treasurer and *Ex Officio* County Collector of Cook County, Illinois. As such, she maintains her principal offices at 118 North Clark Street, Unit 112, Chicago, IL 60602.

12. Defendant Pappas administers the property tax statutes for Cook County, pursuant to 35 ILCS 200, *et seq.* She is the Cook County official who mails delinquent tax notices (35 ILCS 200/20-5), advertises the tax delinquent property for sale and notices the tax assessee of the pending sale (35 ILCS 200/21-110, 21-135), sells tax delinquent properties (35 ILCS 200/21-190), and establishes rules of the property sale (35 ILCS 200/21-205).

13. Defendant Monica Gordon is sued in her official capacity as the Clerk of Cook County, Illinois. As such, she maintains her principal offices at 118 North Clark Street, Chicago, IL 60602.

14. Defendant Gordon is responsible for enforcing the complained-of laws

9

by sending out statutory notices (35 ILCS 200/22-5), preparing estimates of redemption (35 ILCS 200/21-355), preparing and maintaining the judgment and warrant books (35 ILCS 200/21-110, 21-120), memorializing the sales, payments, and dates of redemption (35 ILCS 200/21-360), and executing tax deeds (35 ILCS 200/22-85), among other duties, all of which are integral steps in Illinois' statutory tax sale scheme that effectuates the unconstitutional taking of private property without a compensation mechanism.

15.     Defendant Cook County, Illinois is a public body as defined in 5 ILCS 120/1, *et seq.* Cook County maintains a policy, practice, and custom of seizing property of delinquent property taxpayers, pursuant to 35 ILCS Art. 21, and auctioning that property to winning tax buyers (and sometimes to government entities for no payment), who – after the expiration of a redemption period – can exchange the tax certificate for a tax deed to the delinquent taxpayer's property, including all surplus equity the delinquent taxpayer may have acquired in the property, thus permanently depriving the delinquent taxpayer of said surplus equity. The challenged custom, and policy practice neither serves a valid public purpose, nor serves a solely a remedial purpose.

16.     Defendant Cook County, Illinois, includes its agents, who include Defendants Pappas and Gordon. Cook County is a party defendant, including but not limited to for purposes of indemnification of Defendants Pappas and Gordon as to any monetary amounts recovered by Plaintiffs through this action.

17.     Plaintiffs repeat and reallege the allegations of the immediately

10

preceding six paragraphs, substituting for Defendants Pappas and Gordon and

Cook County:

| County | Treasurer | Clerk & Recorder |
|---|---|---|
| Adams | F. Bryden Cory | Ryan A. Niekamp |
| Boone | Curtis P. Newport | Julie A. Bliss |
| Bureau | Joseph Birkey | Matthew S. Eggers |
| Carroll | Lydia Hutchcarft | Amy Buss |
| Cass | Travis Cox | Shelly Wessel |
| Champaign | Byron Clark | Aaron Ammons |
| Christian | Betty Asmussen | Jodie Badman |
| Clay | Stacy Allen | Amy Britton |
| Clinton | Denise Trame | Vicky Albers |
| Coles | George E. Edwards | Julie Coe |
| Crawford | Rikki Calloway | Beckie Staley |
| Cumberland | Jeny Maynard | Beverly Howard |
| DeWitt | Jay Russell | Kari Harris |
| DuPage | Gwen Henry | Jean Kaczmarek |
| Ford | Krisha Witcomb | Amy Frederick |
| Franklin | Steve Vercellino | Kevin Wilson |
| Fulton | Staci Mayall | Patrick O'Brian |
| Grundy | Todd Koehn | Kay Olson |
| Hancock | Kristine Pilkington | Holly Wilde-Tillman |

| | | |
|---|---|---|
| Henry | Kelly Vinceny | Barbara M Link |
| Jackson | Liz Hunter | Frank L. Byrd |
| Jersey | Becca Strang | Pam Warford |
| Kane | Chris Lauzen | John A. Cunningham |
| Kankakee | Nicholas Africano | Dan Hendrickson |
| Kendall | Jill Ferko | Debbie Gillette |
| Lake | Holly Kim | Anthony Vega |
| LaSalle | James L. Spelich | Jennifer Ebner |
| Lawrence | Barbie Morey | Will C. Gibson |
| Lee | Paul Rudolphi | Nancy Peterson |
| Livingston | M. Nikki Meier | Kristy Masching |
| Logan | Penny Thomas | Theresa Moore |
| Macoupin | Amber McGartland | Pete Duncan |
| Marion | Gary L. Purcell | Steven Fox |
| Marshall | Cynthia Nighsonger | Jill Kenyon |
| Mason | Cari B. Meeker | Summer Brown |
| McDonough | Dana Moon | Jeremy Benson |
| McHenry | Glenda L. Miller | Joseph J Tirio |
| McLean | Rebecca C McNeil | Kathy Michael |
| Menard | Molly Bettis | Martha Gum |
| Mercer | Bev Lower | Brian Gerber |
| Montgomery | Nikki Lohman | Sandy Leitheiser |

| | | |
|---|---|---|
| Morgan | Crystal Myers | Sheriy Sills |
| Moultrie | Stephanie L Helmuth | Linda Qualls-Binder |
| Ogle | Tiffany O'Brien | Laura J. Cook |
| Peoria | Branden Martin | Rachel Parker |
| Perry | Jodi Koester | Robert Keli |
| Piatt | Debbie Marshall | Jennifer Harper |
| Putnam | Kevin E Kunkel | Tina Dulder |
| Rock Island | Nick Camlin | Kelly Fisher |
| Sangamon | Joe Aiello | Frank Lesco |
| Shelby | Erica Firnhaber | Jessica Fox |
| St. Clair | Andrew Lopinot | Thomas Holbrook |
| Stark | Paula Leezer | Heather Hollis |
| Stephenson | Stephanie Helms | Jazmin Winget |
| Tazewell | Hannah Clark | John C. Ackerman |
| Vermillion | Darren Duncan | Mathew Long |
| White | Mike Baxley | Kayci Heil |
| Whiteside | Penny VanKampen | Karen Starow |
| Will | Tim Brophy | Karen Stukel |
| Williamson | Ashley Gott | Amanda Barnes |
| Winnebago | Theresa Grenn | Lori Gummow |

18.     In this official capacity, the individual Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

19.     Defendants, acting under color of state law and through their policies and customs, and acting in uniform fashion pursuant to Illinois statutes, *e.g.*, 35 ILCS 200/21- 1, *et seq.*, have violated the rights of delinquent taxpayers by seizing and auctioning their property without providing for the return of the property owners surplus equity, which has forced the Plaintiffs to either pay the surplus equity, forego obtaining tax deeds, or violate the property owners' constitutional rights per the Fifth Amendment and *Tyler*.

## STATEMENT OF FACTS

**The Statutory Scheme**

20.     Title 7 of the Illinois Property Tax Code (35 ILCS 200/Tit. 7, *et seq.*) is entitled "Tax Collection," and generally governs the assessment and collection of property taxes within the State of Illinois. Title 7 contains four Articles, which are:

- Article 19 of the Illinois Property Tax Code (35 ILCS 200/Art. 19, *et seq.*) governs the officials responsible for property tax collection at the local level within the State of Illinois.

- Article 20 of the Illinois Property Tax Code (35 ILCS 200/Art. 20, *et seq.*) governs the process for the collection of property taxes within the State of Illinois.

- Article 21 of the Illinois Property Tax Code (35 ILCS 200/Art. 21, *et seq.*) is entitled "Due Dates, Delinquencies, and Enforcement of Payments," and governs – among other related topics – tax liens, sales of properties for delinquent taxes, and redemption of auctioned properties within the State of Illinois.

- Article 22 of the Illinois Property Tax Code (35 ILCS 200/Art. 22, *et seq.*) governs the procedures by which a tax purchaser petitions for, and receives, a tax deed for an auctioned property within the State of Illinois.

21.     Under the Property Tax Code, a delinquent taxpayer will have his or her property seized by the County (and its Treasurer acting as *Ex Officio* County Collector) in which the property sits, then either auctioned to a tax purchaser or government entity who receives a tax certificate from the County and its County Collector in exchange for payment of the delinquent taxes. The tax purchaser then is entitled to payments of interest and costs on the unpaid taxes, which the property owner must pay in full in order to redeem the property during a statutory redemption period. If the property is not redeemed through a full payment the Circuit Court may order that a tax deed be issued which upon recording vested the tax certificate holder or its assignee with ownership of the property and its full value, while the property owner is dispossessed not only of the property, but of all the surplus equity the property owner had owned. *See* 35 ILCS Art. 21.

22.     The tax sale process in Illinois is governed by 35 ILCS 200/Art. 21, *et seq.* through which the Illinois General Assembly exercises its power to collect revenue on behalf of the People of Illinois, delegating enforcement to Defendant Pappas as County Treasurer and *Ex Officio* County Collector of Cook County, Illinois, who applies for judgments and issues certificates of purchase in the name of the People of Illinois (35 ILCS 200/21-180, 21-250). The process provides for the sale of tax delinquent real property (35 ILCS 200/21-190) subject to the right to redemption enshrined in State statutes and the Illinois Constitution. The sale of the property is memorialized through a Certificate of Purchase entitling the holder to redemption monies or to a tax deed if unredeemed (35 ILCS 200/21-240, 22-40).

15

23.     The process authorizes the divesture of all equity in the property, including surplus equity (*i.e.* value of the property in excess of the tax and tax collection amounts), without compensation, upon issuance of a tax deed, regardless of whether title vests in a private buyer or the county, and neither considers nor accounts for the property's value relative to the tax debt at any stage beyond initial assessment, ensuring no mechanism exists to compensate owners for surplus equity. The legislature lacked authority to enact such a draconian statute, which intentionally forfeits all surplus equity - contrary to the Illinois and U.S. Constitutions.

## Impact on Plaintiffs

24.     Plaintiffs purchased tax sale certificates at auctions in 64 of Illinois' 102 counties, all prior to the *Tyler* decision, in reliance on Defendants' representations that the certificates were enforceable financial instruments conveying merchantable title, including all surplus equity without payment to prior owners, as mandated by the Illinois Property Tax Code (PTC), 35 ILCS 200/21-205 *et seq.*, and specifically 35 ILCS 200/22-40.

25.     Defendants Counties, Treasurers, and Clerks, acting in a proprietary or governmental capacity under the PTC, enables divestures of real property through tax deeds without compensating owners for surplus equity, exposing Plaintiffs to liability by conducting tax sales and issuing tax deeds through the county treasurers acting *ex officio* as county collectors under Ill. Const. 1970, Art. VII, § 4(d). Alternatively, county treasurers act as state agents, implementing state

tax collection policies under 35 ILCS 200/*et seq.*, with Defendants Raoul and Harris responsible for the PTC's design and enforcement.

26.     Tax buyers have been accused – including by state and county Defendants - of being state actors under *Tyler* when obtaining tax deeds, exposing Plaintiffs to § 1983 liability for participating in the PTC's unconstitutional scheme, compelling them to seek relief to avoid complicity. Such accusations have further harmed Plaintiffs by devaluing Plaintiffs' property.

27.     Across Illinois' 102 counties, Defendants have conducted tax sale auctions annually, selling thousands of tax sale certificates and issuing thousands of tax deeds. These transactions, representing millions of dollars in investments by tax buyers like Plaintiffs, who collectively invested millions in reliance on Defendants' representations that the certificates were enforceable financial instruments and merchantable title would be conveyed without surplus payment obligations by Plaintiffs, exposing Plaintiffs to significant financial and legal risks and devalued property.

28.     The PTC's "take all" system, with the provision conveying full title without surplus payment under 35 ILCS 200/22-40 as its linchpin, is so integral that its removal would render the statutory scheme nonsensical and inoperable, fundamentally undermining its purpose. The system uses surplus equity as a "carrot" to attract robust bids from tax buyers, promising unencumbered title, and as a "stick" to coerce property owners to redeem delinquent taxes under threat of total property loss, a strategy consistent with Defendants' position that this coercive

mechanism is essential to enforce redemption and is consistent with the legislature's intent in enacting the PTC.

29.     The provision conveying full title without surplus payment cannot be severed from the PTC without dismantling its carefully calibrated balance of incentives and penalties. Its elimination would contradict explicit assurances made to tax buyers, who relied on Defendants' representations of merchantable title free of surplus obligations, and negate the coercive threat of complete forfeiture used to compel redemption, rendering the system incoherent and ineffective.

30.     Requiring Plaintiffs to pay surplus equity to prior owners upon obtaining a tax deed would violate the PTC's promise of merchantable title imposing an obligation akin to a forced sale that contradicts the contractual bargain and the system's economic incentives, further exposing Plaintiffs to financial loss and liability.

31.     The Illinois Tax Deed Indemnity Fund provisions (35 ILCS 200/21-295 et seq.) do not provide just compensation for surplus equity as required by Tyler. Each county maintains its own indemnity fund. The indemnity fund is not designed to automatically or promptly compensate all tax-delinquent property owners for lost equity, requiring owners to navigate a discretionary petition process that can take years, lacks guaranteed payment, and excludes prejudgment interest. The administrative hurdles and limited funding render county indemnity funds constitutionally inadequate, compelling Plaintiffs to risk participating in an unconstitutional scheme or forfeiting their investments. Cook County's indemnity

fund's insolvency and mismanagement exacerbate this inadequacy. As of November 2024, Cook County's indemnity fund had a backlog of 278 unpaid judgments totally roughly $33.62 million and a 6.5 year lag in payment. Cook County has failed to maintain statutorily required minimum reserves (35 ILCS 200/21-300), report annually on the fund's condition (35 ILCS 200/21-295), or include judgments as liabilities in county budgets (55 ILCS 5/1-6004), further undermining its ability to compensate owners. While in the majority of counties, annually, no indemnity judgments are entered and any money collected into the fund escheats to the county; no compensation is paid to divested property owns through the indemnity fund. The structural deficiencies of the indemnity fund statutes and Defendants' non-compliance render it incapable of fulfilling Tyler's mandate, compelling Plaintiffs to risk participating in an unconstitutional scheme or forfeiting their investments.

32.     Plaintiffs obtained tax deeds and acted under the PTC in good faith, unaware the PTC's "take all" system took surplus equity without compensation or imposed excessive fines.

33.     In *Tyler*, the United States Supreme Court held that taking surplus equity without just compensation violates the Fifth Amendment and suggested an additional Eighth Amendment violation.

34.     Illinois' PTC, functionally identical to Minnesota's law in *Tyler*, extinguishes owners' equity without compensation through its "take all" system, imposing a punitive sanction disproportionate to tax debts. *See Grady v. Wood*

*County*, 2025 U.S. Dist. LEXIS 81157, at *12–13 (S.D. W. Va. Apr. 29, 2025).

35.     Post-*Tyler*, Defendants have not reformed the PTC, issued moratoriums, or offered relief to Plaintiffs, who face coercion to either forfeit investments or participate in unconstitutional acts. Defendants Raoul and Harris have failed to propose legislative reforms, issue guidance, or take other actions to address the PTC's constitutional flaws, despite authority to do so under Ill. Const. art. V, § 8 and 15 ILCS 205/4.

36.     Defendants were aware or should have been aware of the PTC's constitutional flaws, yet continued to enforce it, shifting liability to tax buyers.

37.     Enforcing certificates requires Plaintiffs to participate in an unconstitutional taking and excessive fine, risking § 1983 liability, while PTC deadlines create an untenable dilemma: enforce and risk liability or forfeit investments. Illinois is the last and only state in the county that maintains a statutory scheme like that challenged in *Tyler*.

38.     Counties have sued the State of Illinois and tax buyers arguing either the state of tax buyers like Plaintiffs are liable for any unconstitutional takings.

39.     Plaintiffs reserve the right to pursue monetary relief, including damages for torts (negligent misrepresentation, fraudulent inducement), breach of contract, and restitution, in the Illinois Court of Claims (745 ILCS 5/8) against the state, and intend to file promptly while seeking declaratory, injunctive, and monetary relief against the County Defendants in this Court to address ongoing violations.

## CAUSES OF ACTION

### Count I: Violation of the Takings Clause – 42 U.S.C. § 1983

40.     Plaintiffs incorporate paragraphs 1–39.

41.     The PTC, 35 ILCS 200/21-360 and 200/21-365, takes surplus equity without just compensation, violating the Fifth Amendment's Takings Clause, as held in *Tyler*, and the Fourteenth Amendment. Defendants, whether as state agents or county officials, facilitate this taking.

42.     Defendants, acting under color of state law by enacting and enforcing the PTC, cause this violation, and now Plaintiffs are forced to either participate in an unconstitutional scheme to enforce their certificates risking liability or otherwise face loss of investments.

43.     Plaintiffs seek a declaratory judgment that the PTC is unconstitutional, an injunction preventing Defendants from enforcing it, and monetary relief against the County Defendants, reserving monetary relief.

### Count II: Unjust Enrichment and *Ultra Vires* Actions – 42 U.S.C. § 1983 – 42 U.S.C. § 1983

44.     Plaintiffs incorporate paragraphs 1–43.

45.     As ultra vires acts exceed constitutional authority, Plaintiffs are entitled to recover his investment.

46.     Defendants' retention of Plaintiffs' payments through tax sales under an unconstitutional PTC constitutes unjust enrichment, as they lack constitutional

authority, even if they had statutory authority.

47. Defendants acted *ultra vires*; even if they act pursuant to Illinois statutory authority, said authority is in excess of constitutional authority under the U.S. Constitution and State of Illinois Constitution.

48. The thousands of certificates sold statewide, generating millions in revenue, unjustly enrich Defendants at Plaintiffs' expense, as they retain these funds while shifting liability post-*Tyler*.

49. Plaintiffs seek a declaratory judgment, an injunction preventing further sales, and restitution against the County Defendants, reserving monetary restitution against the state.

## Count III: Due Process Violation – 42 U.S.C. § 1983

50. Plaintiffs incorporate paragraphs 1–49.

51. Plaintiffs' certificates are a protected property interest, but Defendants' failure to remedy the PTC's constitutional flaws post-*Tyler* deprives Plaintiffs of this interest without due process, forcing them to sue amidst imminent PTC deadlines. This deprives Plaintiffs of their certificate rights without due process, as they face liability risks without clear guidance.

52. Plaintiffs seek a declaratory judgment, injunctive relief, a stay or tolling of PTC deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

## Count IV: Unconstitutional Conditions – 42 U.S.C. § 1983

53. Plaintiffs incorporate paragraphs 1–52.

*54.* *Tyler v. Hennepin County*, 598 U.S. 631 (2023) held that surplus equity in tax foreclosures is a protected property interest under the Fifth Amendment, and its taking without just compensation is unconstitutional as incorporated by the Fourteenth Amendment. The *Tyler* concurrence also suggested that such forfeiture also violates the Eighth Amendment's Excessive Fines Clause due to its grossly disproportionate punitive nature.

55. Defendants' tax sale system, governed by the PTC and the Illinois Constitution does not compensate divested property owners for surplus equity in their property.

56. The government cannot use private parties to do indirectly what it is constitutionally prohibited from doing directly. This principle is rooted in the unconstitutional conditions doctrine and state action doctrine, which prevent the government from circumventing constitutional protections by delegating or incentivizing private actors to violate others' rights. *See. e.g. Frost v. Railroad Commission*, 271 U.S. 583 (1926) (striking conditions requiring private parties to waive constitutional protections); *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) (invalidating an ordinance requiring hotel owners to consent to warrantless searches, as it coerced private parties into violating Fourth Amendment rights to retain a business license).

57. Defendants' condition enforcement of Plaintiffs' rights and participate in the tax foreclosure process on complying with a statutory scheme that requires, allows, and incentivizes retaining surplus equity without compensating the original

property owner, thereby facilitating an unconstitutional taking.

58. The unconstitutional conditions doctrine, as established in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), prohibits the government from conditioning a benefit on a private party's participation in violating another's constitutional rights.

59. Post-*Tyler*, courts, including *257-261 20th Ave. Realty, LLC v. Roberto*, 288 A.3d 1209 (N.J. 2025), and *Nieveen v. TAX 106*, 979 N.W.2d 682 (Neb. 2022), have held that private tax lienholders are state actors under the *Lugar* test (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 1982) when they use state foreclosure processes, subjecting them to liability under 42 U.S.C. § 1983 for unconstitutional takings.

60. Post-*Tyler*, Defendants and county officials have alleged that tax buyers, like Plaintiffs are responsible for the taking of surplus equity. *Bell v. Pappas* (N.D. Ill.), *Sharritt v. Henry*, No. 1:23-cv-15838, 2024 U.S. Dist. LEXIS 189825, 2024 WL 4524501 (N.D. Ill. Oct. 18, 2024); *Top Metal Buyers, Inc. v. St. Clair County* (S.D. Ill.).

61. At least two tax deed issued to Plaintiffs have been challenged under the *Tyler* holding.

62. Plaintiff faces imminent harm.

63. Defendant's tax sale system thus imposes an unconstitutional condition, as it leverages the benefit of tax lien participation to compel Plaintiffs'

involvement in a constitutional statutory scheme.

64.     As in *Parrish v. Civil Service Commission*, 66 Cal. 2d 260 (1967), where a public official was protected for refusing to participate in unconstitutional searches, Plaintiffs cannot be coerced into facilitating the PTC's unconstitutional takings, nor should Defendants enforce a system that violates *Tyler's* mandate.

65.     This condition lacks a compelling state interest and coerces Plaintiffs to violate third-party rights or forfeit investments.

66.     Plaintiffs participated in tax sales administered under the Illinois PTC which was presumed constitutional prior to the decision in *Tyler* issued on May 25, 2023. 598 U.S. 631 (2023).

67.     Plaintiff participated in the tax sale and foreclosure process in good-faith reliance on which, prior to *Tyler*, did not indicate that retaining surplus equity was unconstitutional or that tax buyers would be deemed state actors subject to liability. *See e.g. Balthazar v. United States*, 430 U.S. 924 (1977); *United States v. Cooter*, 456 U.S. 444 (1982).

68.     These pending lawsuits demonstrate that Plaintiffs face a credible threat of liability as a state actors, including potential claims by the original property owner of or others similarly situated, seeking recovery of surplus equity.

69.     Defendants tax sale system and Defendants' accusation now exposes Plaintiff to retroactive liability as a state actor without fair notice or opportunity to avoid such liability at the time of their participation.

70.     This retroactive imposition of state actor status violates Plaintiff's

Fourteenth Amendment due process rights by:

    a.    Depriving Plaintiff of procedural due process, as Defendant's tax sale system provides no mechanisms to avoid participating in an unconstitutional taking should no redemption ; and

    b. Violating substantive due process by arbitrarily subjecting Plaintiff to unforeseen liability for actions taken in good-faith reliance on a then-valid statutory scheme, especially in light of pending litigation in other jurisdictions highlighting similar unfairness to tax buyers and counties.

71.    Plaintiffs seek a declaratory judgment, injunction, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state for the Court of Claims.

## Count V: Negligent Misrepresentation – Illinois Law

72.    Plaintiffs incorporate paragraphs 1–71.

73.    Defendants, including county treasurers *ex officio* acting in a proprietary or governmental capacity as state or county actors, negligently misrepresented certificates as enforceable financial instruments, inducing Plaintiffs' purchases and causing financial harm, actionable as a tort.

74.    Plaintiffs seek a declaratory judgment, injunctive relief to prevent further misrepresentations, and damages against the County Defendants, reserving damages against the state for the Court of Claims, to be filed promptly due to *Walker*'s time bar concerns.

## Count VI: Breach of Contract – Illinois Law (Alternative)

75.     Plaintiffs incorporate paragraphs 1–57.

76.     The certificates constitute contracts promising enforceable rights, which Defendants, including county treasurers *ex officio* acting in a proprietary or governmental capacity as state or county actors, breached by selling defective instruments tied to an unconstitutional scheme, actionable in contract.

77.     Plaintiffs seek a declaratory judgment, injunctive relief, and damages against the County Defendants, reserving damages against the state.

## Count VII: Declaratory Relief (Constitutional PTC) – Illinois Law (Alternative)

78.     Plaintiffs incorporate paragraphs 1–60.

79.     Alternatively, if the PTC is constitutional, Plaintiffs seek a declaration that they may enforce certificates without liability for surplus equity, as the PTC (35 ILCS 200/22-55) provides merchantable title free of claims.

## Count VIII: Unconscionability – Illinois Law (Alternative)

80.     Plaintiffs incorporate paragraphs 1–62.

81.     The certificate sales are procedurally and substantively unconscionable under *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1 (2006), as Defendants sold defective instruments while shifting liability, creating an oppressive dilemma as seen in *Shelley v. Kraemer*, 334 U.S. 1 (1948), where sellers avoided racially restrictive covenants violating Equal Protection, and *Barrows v. Jackson*, 346 U.S.

249 (1953), where a homeowner avoided a similar covenant, demonstrating that contracts tied to unconstitutional schemes are unenforceable.

82. Plaintiffs seek a declaratory judgment, rescission, injunctive relief, and restitution against the County Defendants, reserving restitution against the state.

## Count IX: Excessive Fines – 42 U.S.C. § 1983 (Alternative)

83. Plaintiffs incorporate paragraphs 1–65.

84. The PTC's forfeiture of surplus equity is a punitive sanction grossly disproportionate to tax debts, violating the Eighth Amendment, as incorporated by the Fourteenth Amendment. See *Timbs v. Indiana*, 586 U.S. 146 (2019); *Tyler*, 598 U.S. at 651–53 and echoed in *State v. Black*, 305 So. 3d 783 (Fla. Dist. Ct. App. 2020), where Florida's continued forfeiture practices post-*Timbs v. Indiana*, 586 U.S. 146 (2019), were challenged as disproportionate.

85. Plaintiffs, with third-party standing, assert owners' rights, as enforcing certificates risks § 1983 liability.

86. Plaintiffs seek a declaratory judgment, injunction, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

## Count X: Protective Declaratory Relief – 42 U.S.C. § 1983 (Alternative)

87. Plaintiffs incorporate paragraphs 1–67.

88. Plaintiffs obtained tax deeds in reliance on *Balthazar* and *Cooter*,

which suggested the PTC was constitutional, but *Tyler* exposes them to liability.

89.     The risk of § 1983 liability is heightened by tax buyers' Defendants allegations that tax buyers like Plaintiffs are state actors, necessitating protective relief for Plaintiffs' pre-*Tyler* actions.

90.     Plaintiffs seek a declaratory judgment that they are not state actors, face no § 1983 liability for tax deeds under *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state for the Court of Claims.

## Count XI: Stay and Tolling of Deadlines (Alternative)

91.     Plaintiffs incorporate paragraphs 1–73.

92.     PTC deadlines (35 ILCS 200/21-350, 22-10, 22-25, 22-30) create irreparable harm by forcing Plaintiffs to enforce certificates, risking § 1983 liability, or forfeit investments.

93.     The volume of certificates sold and deeds issued, coupled with imminent PTC deadlines, creates irreparable harm for Plaintiffs, tax buyers and property owners, and interested parties in the underlying real estate and financial instruments necessitating a stay or tolling.

94.     Plaintiffs seek a stay or tolling of deadlines pending resolution, consistent with other states' moratoriums.

## Count XII: Compelled Speech & Association – 42 U.S.C. § 1983 (Alternative)

95.     Plaintiffs incorporate paragraphs 1–77.

96.     Forcing Plaintiffs to participate in an unconstitutional scheme compels

them to endorse and associate with violations of *Tyler*, infringing their First Amendment rights publicly aligning them with the PTC's unconstitutional takings, harming their reputation as private investors and exposing them to § 1983 liability as alleged state actors, as counties and the state have accused tax buyers of being complicit in surplus equity seizures, per cases like *Bell v. Pappas* (N.D. Ill.) and *Sharritt v. Henry*, 2024 U.S. Dist. LEXIS 189825 (N.D. Ill. Oct. 18, 2024).

97. Plaintiffs seek a declaratory judgment, injunction, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief as established in *Wooley v. Maynard*, 430 U.S. 705 (1977), where compelling citizens to display ideological messages violated the First Amendment; *Janus v. AFSCME*, 138 S. Ct. 2448 (2018), which struck down compelled association with union speech; and *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), prohibiting compelled endorsement of objectionable government policies. By requiring plaintiffs to enforce certificates through a system that violates *Tyler* premises, Defendants force them to act as agents of an unconstitutional scheme, violating their rights to free speech and association.

**Count XIV: Fraudulent Inducement – Illinois Law (Alternative)**

98. Plaintiffs incorporate paragraphs 1–80.

99. Defendants, including county treasurers *ex officio* acting in a proprietary or governmental capacity as state or county actors, knowingly misrepresented certificate validity, fraudulently inducing Plaintiffs' purchases, causing financial harm, actionable as a tort.

100.    Plaintiffs seek a declaratory judgment, injunctive relief, and damages against the County Defendants, reserving damages against the state.

## Count XV: Equitable Estoppel – Illinois Law (Alternative)

101.    Plaintiffs incorporate paragraphs 1–81.

102.    Defendants' representations about certificate enforceability estop them from denying validity, protecting Plaintiffs' reliance.

103.    Plaintiffs seek a declaratory judgment, equitable relief, a stay or tolling of deadlines, and restitution against the County Defendants, reserving restitution against the state.

## Count XVI: Third-Party Standing – Declaratory Relief (Alternative)

104.    Plaintiffs incorporate paragraphs 1–86.

105.    Plaintiffs assert property owners' rights to surplus equity under *Barrows v. Jackson*, 346 U.S. 249 (1953), due to their economic relationship and owners' barriers to suing.

106.    Plaintiffs seek a declaratory judgment that the PTC violates owners' rights, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

## Count XVII: Abuse of Governmental Process – Proprietary or Governmental Conduct

107.    Plaintiffs incorporate paragraphs 1–89.

108.    Defendants' enforcement of the PTC, whether in a proprietary or governmental capacity, abuses governmental process by perpetuating an

unconstitutional scheme, harming Plaintiffs and owners.

109.    Plaintiffs seek a declaratory judgment, injunction, equitable relief, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

## Count XVIII: Constructive Trust / Equitable Lien – Restitution

110.    Plaintiffs incorporate paragraphs 1–92.

111.    Defendants hold Plaintiffs' payments in constructive trust or under an equitable lien due to their unconstitutional retention through tax sales.

112.    Plaintiffs seek a declaratory judgment, injunctive relief, a stay or tolling of deadlines, and restitution against the County Defendants, reserving restitution against the state.

## Count XIX: Supremacy Clause & Preemption – Federal Rights Enforcement

113.    Plaintiffs incorporate paragraphs 1–95.

114.    The PTC's defiance of *Tyler*, by allowing retention of surplus equity, violates the Supremacy Clause, U.S. Const. Art. VI, Cl. 2, as does *Walker v. Chasteen*, 2025 IL 10288, by prioritizing state immunity over federal Takings Clause protections, facilitated by county treasurers *ex officio* as state or county actors, necessitating federal enforcement of Plaintiffs' and owners' rights.

115.    Plaintiffs seek a declaratory judgment, injunction, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

## Count XX: Rescission Based on Impossibility / Frustration

116.    Plaintiffs incorporate paragraphs 1–98.

117.    *Tyler* renders certificate enforcement impossible or frustrates the contract's purpose, justifying rescission.

118.    Plaintiffs seek a declaratory judgment, rescission, injunctive relief, and restitution against the County Defendants, reserving restitution against the state

## Count XXI: Mandamus Relief – Duty to Reform or Clarify Compliance (Alternative)

119.    Plaintiffs incorporate paragraphs 1–101.

120.    Defendants Raoul and Pritzker have a non-discretionary duty to comply with *Tyler* by reforming the PTC or clarifying compliance, warranting mandamus relief, under Ill. Const. art. V, § 8 and 15 ILCS 205/4.

121.    Plaintiffs seek a writ of mandamus, declaratory relief, a stay or tolling of deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

## Count XIII: Regulatory Takings – 42 U.S.C. § 1983 (Alternative

122.    Plaintiffs incorporate paragraphs 1–95.

123.    The PTC's enforcement post-*Tyler*, by rendering Plaintiffs' tax sale certificates unenforceable without risking § 1983 liability, constitutes a regulatory taking under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), by severely diminishing the economic value of Plaintiffs' property interests, interfering with their investment-backed expectations, and serving no legitimate public purpose.

124.    Plaintiffs invested millions in certificates expecting enforceable rights

to merchantable title, as represented by Defendants, but the Defendants now imposes a disproportionate burden, effectively nullifying their property interests.

125.     Plaintiffs seek a declaratory judgment that Defendants effects a regulatory taking by seeking payments from  Plaintiffs, an injunction halting its enforcement, a stay or tolling of PTC deadlines, and monetary relief against the County Defendants, reserving monetary relief against the state.

126.     **Count XXX: Equitable Estoppel (Alternative)**

127.     Defendants induced Plaintiffs to rely on the tax deed's validity (e.g., by issuing the deed and confirming the sale).

128.     Plaintiffs seek equitable estoppel to prevent Defendants from challenging the title or seek damages *Cities Serv. Oil Co. v. City of Des Plaines*, 21 Ill. 2d 157 (1961).

129.     Defendants made a representation (e.g., the tax certificates, tax sale, issued deeds and PTC were valid).

130.     The Plaintiffs reasonably relied on Defendants' representation it.

131.     Plaintiffs suffered detriment due to the Defendants.

132.     Estoppel is necessary to prevent injustice.

133.     Defendants issues certificates and tax deeds, issued the tax deed, allowed the Plaintiffs to buy, and Defendants seeks to obtain payments from the Plaintiffs.

134.     Defendants' conduct was egregious (*Hickey v. Ill. Cent. R.R. Co.*, 35 Ill. 2d 427 (1966)).

135. Alternatively, Defendants conduct of was proprietary.

WHEREFORE, as to all the above-pleaded Counts, the Plaintiffs, INTEGRITY INVESTMENT FUND, LLC, an Illinois limited liability company, INTEGRITY INVESTMENT REO HOLDINGS, LLC, an Illinois limited liability company, SIGTELLO, LLC, an Illinois series limited liability company, and ABBOTT PORTFOLIO, LLC, an Illinois limited liability company, respectfully request that this Honorable Court:

1. Issue preliminary and permanent injunctions barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 35 ILCS 200/Art. 1 in such a manner as to compel Plaintiffs to maintain tax certificates that would ultimately result in Plaintiffs not being able to obtain tax deeds without paying delinquent taxpayers the value of any surplus equity in their properties, as said statutes are unconstitutional violations of the owners' rights under the Fifth Amendment to the U.S. Constitution;

2. Enter declaratory relief consistent with the injunction;

3. Order the rescission of all such issued tax certificates, with a refund of all sums paid by Plaintiffs to the Defendant Counties, plus accrued interest;

4. Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988;

5. Award Plaintiff the ordinary costs of suit; and

6.    Grant Plaintiff any and all further relief as this Court deems just and appropriate.

Dated: May 27, 2025                              Respectfully submitted,

_____/s/ David G. Sigale_____
Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

Attorney for Plaintiffs