## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

INTEGRITY INVESTMENT FUND,
LLC, an Illinois limited liability
company, INTEGRITY INVESTMENT
REO HOLDINGS, LLC, an Illinois
limited liability company, SIGTELLO,
LLC, an Illinois series limited liability
company, and ABBOTT PORTFOLIO,
LLC, an Illinois limited liability
company,

        Plaintiffs,

v.

KWAME RAOUL, in his official capacity
as Attorney General of the State of
Illinois; DAVID HARRIS, in his official
capacity as Director of the Illinois
Department of Revenue;

COOK COUNTY, ILLINOIS,
an Illinois political subdivision unit of
government; MARIA PAPPAS, in her
capacity as Treasurer of Cook County;
MONICA GORDON, in her capacity as
Clerk of Cook County;

ADAMS COUNTY, ILLINOIS, an
Illinois political subdivision unit of
government; F. BRYDEN CORY, in his
capacity as Treasurer of Adams County,
Illinois; RYAN A. NIEKAMP, in his
capacity as Clerk of Adams County,
Illinois;

BOONE COUNTY, ILLINOIS, an
Illinois political subdivision unit of
government; CURTIS P. NEWPORT, in
his capacity as Treasurer of Boone
County, Illinois; JULIE A. BLISS, in his

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: 3:25 CV 1122-DWD

capacity as Clerk of Boone County,                    )
Illinois;                                              )
                                                       )
BUREAU COUNTY, ILLINOIS, an                            )
Illinois political subdivision unit of                 )
government; JOSEPH BIRKEY, in his                      )
capacity as Treasurer of Bureau County,                )
Illinois; MATTHEW S. EGGERS, in his                    )
capacity as Clerk of Bureau County,                    )
Illinois;                                              )
                                                       )
CARROLL COUNTY, ILLINOIS, an                           )
Illinois political subdivision unit of                 )
government; LYDIA HUTCHCARFT, in                       )
her capacity as Treasurer of Carroll                   )
County, Illinois; AMY BUSS, in her                     )
capacity as Clerk of Carroll County,                   )
Illinois;                                              )
                                                       )
CASS COUNTY, ILLINOIS, an Illinois                     )
political subdivision unit of government;              )
TRAVIS COX, in his capacity as                         )
Treasurer of Cass County, Illinois;                    )
SHELLY WESSEL, in her capacity as                      )
Clerk of Cass County, Illinois;                        )
                                                       )
CHAMPAIGN COUNTY, ILLINOIS, an                         )
Illinois political subdivision unit of                 )
government; BYRON CLARK, in his                        )
capacity as Treasurer of Champaign                     )
County, Illinois; AARON AMMONS, in                     )
his capacity as Clerk of Champaign                     )
County, Illinois;                                      )
                                                       )
CHRISTIAN COUNTY, ILLINOIS, an                         )
Illinois political subdivision unit of                 )
government; BETTY ASMUSSEN, in                          )
her capacity as Treasurer of Christian                 )
County, Illinois; JODIE BADMAN, in                     )
her capacity as Clerk of Christian                     )
County, Illinois;                                      )
                                                       )

2

CLAY COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
STACY ALLEN, in her capacity as )
Treasurer of Clay County, Illinois; AMY )
BRITTON, in her capacity as Clerk of )
Clay County, Illinois; )
)
CLINTON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; DENISE TRAME, in her )
capacity as Treasurer of Clinton County, )
Illinois; VICKY ALBERS, in her capacity )
as Clerk of Clinton County, Illinois; )
)
COLES COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
GEORGE E. EDWARDS, in his capacity )
as Treasurer of Coles County, Illinois; )
JULIE COE, in her capacity as Clerk of )
Coles County, Illinois; )
)
CRAWFORD COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; RIKKI CALLOWAY, in her )
capacity as Treasurer of Crawford )
County, Illinois; BECKIE STALEY, in )
her capacity as Clerk of Crawford )
County, Illinois; )
)
CUMBERLAND COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; JENY MAYNARD, in her )
capacity as Treasurer of Cumberland )
County, Illinois; BEVERLY HOWARD, )
in her capacity as Clerk of Cumberland )
County, Illinois; )
)
DEWITT COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; JAY RUSSELL, in his )
capacity as Treasurer of DeWitt County, )
Illinois; KARI HARRIS, in her capacity )

as Clerk of DeWitt County, Illinois;    )
)
DUPAGE COUNTY, ILLINOIS, an    )
Illinois political subdivision unit of    )
government; GWEN HENRY, in her    )
capacity as Treasurer of DuPage County,    )
Illinois; JEAN KACZMAREK, in her    )
capacity as Clerk of DuPage County,    )
Illinois;    )
)
FORD COUNTY, ILLINOIS, an Illinois    )
political subdivision unit of government;    )
KRISHA WITCOMB, in her capacity as    )
Treasurer of Ford County, Illinois; AMY    )
FREDERICK, in her capacity as Clerk of    )
For County, Illinois;    )
)
FRANKLIN COUNTY, ILLINOIS, an    )
Illinois political subdivision unit of    )
government; STEVE VERCELLINO, in    )
his capacity as Treasurer of Franklin    )
County, Illinois; KEVIN WILSON, in his    )
capacity as Clerk of Franklin County,    )
Illinois;    )
)
FULTON COUNTY, ILLINOIS, an    )
Illinois political subdivision unit of    )
government; STACI MAYALL, in her    )
capacity as Treasurer of Fulton County,    )
Illinois; PATRICK O'BRIAN, in his    )
capacity as Clerk of Fulton County,    )
Illinois;    )
)
GRUNDY COUNTY, ILLINOIS, an    )
Illinois political subdivision unit of    )
government; TODD KOEHN, in his    )
capacity as Treasurer of Grundy County,    )
Illinois; KAY OLSON, in her capacity as    )
Clerk of Grundy County, Illinois;    )
)
HANCOCK COUNTY, ILLINOIS, an    )
Illinois political subdivision unit of    )

4

government; KRISTINE PILKINGTON, )
in her capacity as Treasurer of Hancock )
County, Illinois; HOLLY WILDE- )
TILLMAN, in her capacity as Clerk of )
Hancock County, Illinois; )
)
HENRY COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; KELLY VINCENY, in her )
capacity as Treasurer of Henry County, )
Illinois; BARBARA M LINK, in her )
capacity as Clerk of Henry County, )
Illinois; )
)
JACKSON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; LIZ HUNTER, in her )
capacity as Treasurer of Jackson County, )
Illinois; FRANK L. BYRD, in his )
capacity as Clerk of Jackson County, )
Illinois; )
)
JERSEY COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; BECCA STRANG, in her )
capacity as Treasurer of Jersey County, )
Illinois; PAM WARFORD, in her )
capacity as Clerk of Jersey County, )
Illinois; )
)
KANE COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
CHRIS LAUZEN, in her capacity as )
Treasurer of Kane County, Illinois; )
JOHN A. CUNNINGHAM, in his )
capacity as Clerk of Kane County, )
Illinois; )
)
KANKAKEE COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; NICHOLAS AFRICANO, in )
his capacity as Treasurer of Kankakee )

5

County, Illinois; DAN HENDRICKSON, )
in his capacity as Clerk of Kankakee )
County, Illinois; )
)
KENDALL COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; JILL FERKO, in her )
capacity as Treasurer of Kendall County, )
Illinois; DEBBIE GILLETTE, in her )
capacity as Clerk of Kendall County, )
Illinois; )
)
LAKE COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
HOLLY KIM, in her capacity as )
Treasurer of Lake County, Illinois; )
ANTHONY VEGA, in his capacity as )
Clerk of Lake County, Illinois; )
)
LASALLE COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; JAMES L. SPELICH, in his )
capacity as Treasurer of LaSalle County, )
Illinois; JENNIFER EBNER, in her )
capacity as Clerk of LaSalle County, )
Illinois; )
)
LAWRENCE COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; BARBIE MOREY, in her )
capacity as Treasurer of Lawrence )
County, Illinois; WILL C. GIBSON, in )
his capacity as Clerk of Lawrence )
County, Illinois; )
)
LEE COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
PAUL RUDOLPHI, in his capacity as )
Treasurer of Lee County, Illinois; )
NANCY PETERSON, in her capacity as )
Clerk of Lee County, Illinois; )
)

LIVINGSTON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; M. NIKKI MEIER, in her )
capacity as Treasurer of Livingston )
County, Illinois; KRISTY MASCHING, )
in her capacity as Clerk of Livingston )
County, Illinois; )
 )
LOGAN COUNTY, ILLINOIS; an )
Illinois political subdivision unit of )
government; PENNY THOMAS, in her )
capacity as Treasurer of Logan County, )
Illinois; THERESA MOORE, in her )
capacity as Clerk of Logan County, )
Illinois; )
 )
MACOUPIN COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; AMBER MCGARTLAND, )
in her capacity as Treasurer of Macoupin )
County, Illinois; PETE DUNCAN, in his )
capacity as Clerk of Macoupin County, )
Illinois; )
 )
MARION COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; GARY L. PURCELL, in his )
capacity as Treasurer of Marion County, )
Illinois; STEVEN FOX, in his capacity )
as Clerk of Marion County, Illinois; )
 )
MARSHALL COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; CYNTHIA NIGHSONGER, )
in her capacity as Treasurer of Marshall )
County, Illinois; JILL KENYON, in her )
capacity as Clerk of Marshall County, )
Illinois; )
 )
MASON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; CARI B. MEEKER, in her )

7

capacity as Treasurer of Mason County, )
Illinois; SUMMER BROWN, in her )
capacity as Clerk of Mason County, )
Illinois; )
)
MCDONOUGH COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; DANA MOON, in her )
capacity as Treasurer of McDonough )
County, Illinois; JEREMY BENSON, in )
his capacity as Clerk of McDonough )
County, Illinois; )
)
MCHENRY COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; GLENDA L. MILLER, in )
her capacity as Treasurer of McHenry )
County, Illinois; JOSEPH J TIRIO, in )
his capacity as Clerk of McHenry )
County, Illinois; )
)
MCLEAN COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; REBECCA C MCNEIL, in )
her capacity as Treasurer of McLean )
County, Illinois; KATHY MICHAEL, in )
her capacity as Clerk of McLean County, )
Illinois; )
)
MENARD COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; MOLLY BETTIS, in her )
capacity as Treasurer of Menard County, )
Illinois; MARTHA GUM, in her capacity )
as Clerk of Menard County, Illinois; )
)
MERCER COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; BEV LOWER, in her )
capacity as Treasurer of Mercer County, )
Illinois; BRIAN GERBER, in his )
capacity as Clerk of Mercer County, )

Illinois;                                        )
                                                 )
MONTGOMERY COUNTY, ILLINOIS,                     )
an Illinois political subdivision unit of        )
government; NIKKI LOHMAN, in her                 )
capacity as Treasurer of Montgomery              )
County, Illinois; SANDY LEITHEISER,              )
in her capacity as Clerk of Montgomery           )
County, Illinois;                                )
                                                 )
MORGAN COUNTY, ILLINOIS, an                      )
Illinois political subdivision unit of           )
government; CRYSTAL MYERS, in her                )
capacity as Treasurer of Morgan County,          )
Illinois;  SHERIY SILLS, in her capacity         )
as Clerk of Morgan County, Illinois;             )
                                                 )
MOULTRIE COUNTY, ILLINOIS, an                    )
Illinois political subdivision unit of           )
government; STEPHANIE L                          )
HELMUTH, in her capacity as                      )
Treasurer of Moultrie County, Illinois;          )
LINDA QUALLS-BINDER, in her                      )
capacity as Clerk of Moultrie County,            )
Illinois;                                        )
                                                 )
OGLE COUNTY, ILLINOIS, an Illinois               )
political subdivision unit of government;        )
TIFFANY O'BRIEN, in her capacity as              )
Treasurer of Ogle County, Illinois;              )
LAURA J. COOK, in her capacity as                )
Clerk of Ogle County, Illinois;                  )
                                                 )
PEORIA COUNTY, ILLINOIS, an                      )
Illinois political subdivision unit of           )
government; BRANDEN MARTIN, in                    )
his capacity as Treasurer of Peoria              )
County, Illinois; RACHEL PARKER, in              )
her capacity as Clerk of Peoria County,          )
Illinois;                                        )
                                                 )
PERRY COUNTY, ILLINOIS, an Illinois              )

9

political subdivision unit of government, )
JODI KOESTER, in her capacity as )
Treasurer of Perry County, Illinois; )
ROBERT KELI, in his capacity as Clerk )
of Perry County, Illinois; )
)
PIATT COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
DEBBIE MARSHALL, in her capacity )
as Treasurer of Piatt County, Illinois; )
JENNIFER HARPER, in her capacity as )
Clerk of Piatt County, Illinois; )
)
PUTNAM COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; KEVIN E KUNKEL, in his )
capacity as Treasurer of Putnam County, )
Illinois; TINA DULDER, in her capacity )
as Clerk of Putnam County, Illinois; )
)
ROCK ISLAND COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; NICK CAMLIN, in his )
capacity as Treasurer of Rock Island )
County, Illinois; KELLY FISHER, in her )
capacity as Clerk of Rock Island County, )
Illinois; )
)
SANGAMON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; JOE AIELLO, in his )
capacity as Treasurer of Sangamon )
County, Illinois; FRANK LESCO, in his )
capacity as Clerk of Sangamon County, )
Illinois; )
)
SHELBY COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; ERICA FIRNHABER, in )
her capacity as Treasurer of Shelby )
County, Illinois; JESSICA FOX, in her )
capacity as Clerk of Shelby County, )

Illinois;                                    )
                                             )
ST. CLAIR COUNTY, ILLINOIS, an               )
Illinois political subdivision unit of       )
government; ANDREW LOPINOT, in his           )
capacity as Treasurer of St. Clair           )
County, Illinois; THOMAS HOLBROOK,           )
in his capacity as Clerk of St. Clair        )
County, Illinois;                            )
                                             )
STARK COUNTY, ILLINOIS, an Illinois          )
political subdivision unit of government;     )
PAULA LEEZER, in her capacity as             )
Treasurer of Stark County, Illinois;         )
HEATHER HOLLIS, in her capacity as           )
Clerk of Stark County, Illinois;             )
                                             )
STEPHENSON COUNTY, ILLINOIS,                 )
an Illinois political subdivision unit of    )
government; STEPHANIE HELMS, in              )
his capacity as Treasurer of Stephenson      )
County, Illinois; JAZMIN WINGET, in          )
her capacity as Clerk of Stephenson          )
County, Illinois;                            )
                                             )
TAZEWELL COUNTY, ILLINOIS, an                )
Illinois political subdivision unit of       )
government; HANNAH CLARK, in her             )
capacity as Treasurer of Tazewell            )
County, Illinois; JOHN C. ACKERMAN,          )
in his capacity as Clerk of Tazewell         )
County, Illinois;                            )
                                             )
VERMILION COUNTY, ILLINOIS, an               )
Illinois political subdivision unit of       )
government; DARREN DUNCAN, in his            )
capacity as Treasurer of Vermilion           )
County, Illinois; MATHEW LONG, in his        )
capacity as Clerk of Vermilion County,       )
Illinois;                                    )
                                             )
WHITE COUNTY, ILLINOIS, an Illinois          )

11

political subdivision unit of government; )
MIKE BAXLEY, in his capacity as )
Treasurer of White County, Illinois; )
KAYCI HEIL, in her capacity as Clerk of )
White County, Illinois; )
)
WHITESIDE COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; PENNY VANKAMPEN in )
her capacity as Treasurer of Whiteside )
County, Illinois; KAREN STAROW, in )
her capacity as Clerk of Whiteside )
County, Illinois; )
)
WILL COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
TIM BROPHY, in his capacity as )
Treasurer of Will County, Illinois; )
KAREN STUKEL, in her capacity as )
Clerk of Will County, Illinois; )
)
WILLIAMSON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; ASHLEY GOTT, in his )
capacity as Treasurer of Williamson )
County, Illinois; AMANDA BARNES, in )
her capacity as Clerk of Williamson )
County, Illinois; )
)
WINNEBAGO COUNTY, ILLINOIS; an )
Illinois political subdivision unit of )
government; THERESA GRENN, in her )
capacity as Treasurer of Winnebago )
County, Illinois; and LORI GUMMOW, )
in her capacity as Clerk of Winnebago )
County, Illinois. )
)
       Defendants. )

## AMENDED COMPLAINT FOR
## DECLARATORY, EQUITABLE, AND INJUNCTIVE RELIEF

Plaintiffs, INTEGRITY INVESTMENT FUND, LLC, an Illinois limited liability company, INTEGRITY INVESTMENT REO HOLDINGS, LLC, an Illinois limited liability company, SIGTELLO, LLC, an Illinois series limited liability company, and ABBOTT PORTFOLIO, LLC, an Illinois limited liability company, by and through undersigned counsel, and for their Complaint against Defendants, states and alleges as follows:

## INTRODUCTION

The Fifth Amendment to the United State Constitution bars the State of Illinois, or any county therein, from seizing property from its owners for the purpose of collecting delinquent property taxes, while in the process forever depriving the property owner of the surplus equity in said property without compensation. *See* U.S. Const. amend. V. The United States Supreme Court has ruled that such action is an unconstitutional taking of the owners' property. Yet, in Illinois this practice persists.

The Defendant Counties' property tax sale system, which implements the Illinois Property Tax Code, 35 ILCS 200/1-1 *et seq.*, unconstitutionally deprives a property owner who fails to pay overdue property taxes of not just their property to the extent it is taken to satisfy the amount of the tax debt, but of all of the surplus equity in the property possessed by the owner; *i.e.* - the market value of the

property over and above what the owner owes in overdue taxes, penalties, interest and costs. The County Defendants sell the delinquent taxes to a private party investor-called a "tax purchaser"—who pays the past due taxes and, in exchange, receives the right to take ownership of the property if the property is not redeemed through payment of the taxes, plus all accrued penalties and interest by a deadline known as the "redemption date." Alternatively, if the property is not sold, it is forfeited to the county or state. If the property is not "redeemed" by paying all amounts due in taxes and related charges by the redemption date, the tax lien certificate holder is entitled to a tax deed to the property, upon which will transfer ownership of the property free and clear, no matter how much it was worth in excess of the unredeemed taxes and related charges.

Plaintiffs are tax purchasers who have participated in the auction process, purchased tax certificates - upon the payment of delinquent taxes - from the Defendant Counties, which they still possess. Should the taxes on the subject properties not be paid, and said properties redeemed, Plaintiffs will be entitled to petition the Counties' Circuit Courts for tax deeds, and upon receipt of same they will own the subject properties.

In this process, nobody reimburses the property owner for their lost surplus equity. Therefore, a property tax sale, where the owner cannot or does not successfully redeem, will ultimately result in a total loss to the owner of not just the property to the extent of the amount of the taxes due, but also the entire value of

the property over and above the tax amounts owed.

However, the Supreme Court has ruled that such a scheme is an unconstitutional violation of the property owners' Fifth Amendment rights against unlawful takings. *See Tyler v. Hennepin County*, 598 U.S. 631 (2023).

Plaintiffs assert their constitutional rights against the County Defendants for their sale of tax certificates to the Plaintiffs which are now all but worthless, as they will either force Plaintiffs to pay the surplus equity of the auctioned property to the property owner, to never receive a tax deed, or to violate the property owners' Fifth Amendment rights. Plaintiffs assert their constitutional rights against the State Defendants for their unconstitutional scheme which violates property owners' constitutional rights, and forces Plaintiffs to either not obtain deeds to property for which they hold tax certificates and lose their investments, pay the property owners the surplus equity, or violate the property owners' Fifth Amendment rights. Plaintiffs are entitled to declaratory, injunctive, and equitable relief as a result of this unconstitutional scheme.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201, 2202 and 42 U.S.C. § 1983. The Court has jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue lies in this Court pursuant to 28 U.S.C. § 1391.

15

**PARTIES**

**Plaintiffs**

3.      Plaintiff INTEGRITY INVESTMENT FUND, LLC, is an Illinois limited liability company, which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

4.      Plaintiff INTEGRITY INVESTMENT REO HOLDINGS, LLC, is an Illinois limited liability company, which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

5.      Plaintiff SIGTELLO, LLC, is an Illinois series limited liability company, which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

6.      Plaintiff ABBOTT PORTFOLIO, LLC, is an Illinois limited liability company, which has received tax certificates from the Defendant Counties after being the successful bidder at one or more County property tax auctions and paying the County the amount of the delinquent property taxes owed on said properties, plus any required costs and fees.

16

**Defendants**

7.     Defendant KWAME RAOUL is sued in his official capacity as the Attorney General of the State of the Illinois. Defendant Raoul's ongoing enforcement of the relevant State law against Illinois property owners places Plaintiffs in the position of either not obtain deeds to property for which they hold tax certificates, pay the property owners the surplus equity, or violate the property owners' Fifth Amendment rights.

8.     Defendant DAVID HARRIS is sued in his official capacity as the Director of the Illinois Department of Revenue. Defendant Harris's ongoing enforcement of the relevant State law against Illinois property owners places Plaintiffs in the position of either not obtain deeds to property for which they hold tax certificates, pay the property owners the surplus equity, or violate the property owners' Fifth Amendment rights.

9.     Defendant COOK COUNTY, ILLINOIS is a public body as defined in 5 ILCS 120/1, *et seq.* Cook County maintains a policy, practice, and custom of seizing property of delinquent property taxpayers, pursuant to 35 ILCS Art. 21, and auctioning that property to winning tax buyers (and sometimes to government entities for no payment), who – after the expiration of a redemption period – can exchange the tax certificate for a tax deed to the delinquent taxpayer's property, including all surplus equity the delinquent taxpayer may have acquired in the property, thus permanently depriving the delinquent taxpayer of said surplus equity. The challenged custom, and policy practice neither serves a valid public

17

purpose, nor serves a solely a remedial purpose.

10.    Defendant Cook County, Illinois, includes its agents, who include Defendants Pappas and Gordon. Cook County is a party defendant, including but not limited to for purposes of indemnification of Defendants Pappas and Gordon as to any monetary amounts recovered by Plaintiffs through this action.

11.    Defendant MARIA PAPPAS is sued in her individual and official capacities as the Treasurer of Cook County, Illinois. Defendant Pappas administers the property tax statutes for Cook County, pursuant to 35 ILCS 200, *et seq.* She is the Cook County official who mails delinquent tax notices (35 ILCS 200/20-5), advertises the tax delinquent property for sale and notices the tax assessee of the pending sale (35 ILCS 200/21-110, 21-135), sells tax delinquent properties (35 ILCS 200/21-190), and establishes rules of the property sale (35 ILCS 200/21-205).

12.    Defendant MONICA GORDON is sued in her individual and official capacities as the Clerk of Cook County, Illinois. Defendant Gordon is responsible for enforcing the complained-of laws by sending out statutory notices (35 ILCS 200/22-5), preparing estimates of redemption (35 ILCS 200/21-355), preparing and maintaining the judgment and warrant books (35 ILCS 200/21-110, 21-120), memorializing the sales, payments, and dates of redemption (35 ILCS 200/21-360), and executing tax deeds (35 ILCS 200/22-85), among other duties, all of which are integral steps in Illinois' statutory tax sale scheme that effectuates the unconstitutional taking of private property without a compensation mechanism.

13.    Plaintiffs repeat and reallege the allegations of the immediately

preceding four paragraphs, substituting for Defendants Cook County, Pappas and Gordon:

| COUNTY | TREASURER | CLERK & RECORDER |
|--------|-----------|------------------|
| Adams | F. Bryden Cory | Ryan A. Niekamp |
| Boone | Curtis P. Newport | Julie A. Bliss |
| Bureau | Joseph Birkey | Matthew S. Eggers |
| Carroll | Lydia Hutchcarft | Amy Buss |
| Cass | Travis Cox | Shelly Wessel |
| Champaign | Byron Clark | Aaron Ammons |
| Christian | Betty Asmussen | Jodie Badman |
| Clay | Stacy Allen | Amy Britton |
| Clinton | Denise Trame | Vicky Albers |
| Coles | George E. Edwards | Julie Coe |
| Crawford | Rikki Calloway | Beckie Staley |
| Cumberland | Jeny Maynard | Beverly Howard |
| DeWitt | Jay Russell | Kari Harris |
| DuPage | Gwen Henry | Jean Kaczmarek |
| Ford | Krisha Witcomb | Amy Frederick |
| Franklin | Steve Vercellino | Kevin Wilson |
| Fulton | Staci Mayall | Patrick O'Brian |
| Grundy | Todd Koehn | Kay Olson |
| Hancock | Kristine Pilkington | Holly Wilde-Tillman |

| | | |
|---|---|---|
| Henry | Kelly Vinceny | Barbara M. Link |
| Jackson | Liz Hunter | Frank L. Byrd |
| Jersey | Becca Strang | Pam Warford |
| Kane | Chris Lauzen | John A. Cunningham |
| Kankakee | Nicholas Africano | Dan Hendrickson |
| Kendall | Jill Ferko | Debbie Gillette |
| Lake | Holly Kim | Anthony Vega |
| LaSalle | James L. Spelich | Jennifer Ebner |
| Lawrence | Barbie Morey | Will C. Gibson |
| Lee | Paul Rudolphi | Nancy Peterson |
| Livingston | M. Nikki Meier | Kristy Masching |
| Logan | Penny Thomas | Theresa Moore |
| Macoupin | Amber McGartland | Pete Duncan |
| Marion | Gary L. Purcell | Steven Fox |
| Marshall | Cynthia Nighsonger | Jill Kenyon |
| Mason | Cari B. Meeker | Summer Brown |
| McDonough | Dana Moon | Jeremy Benson |
| McHenry | Glenda L. Miller | Joseph J. Tirio |
| McLean | Rebecca C. McNeil | Kathy Michael |
| Menard | Molly Bettis | Martha Gum |
| Mercer | Bev Lower | Brian Gerber |
| Montgomery | Nikki Lohman | Sandy Leitheiser |

| | | |
|---|---|---|
| Morgan | Crystal Myers | Sheriy Sills |
| Moultrie | Stephanie L. Helmuth | Linda Qualls-Binder |
| Ogle | Tiffany O'Brien | Laura J. Cook |
| Peoria | Branden Martin | Rachel Parker |
| Perry | Jodi Koester | Robert Keli |
| Piatt | Debbie Marshall | Jennifer Harper |
| Putnam | Kevin E. Kunkel | Tina Dulder |
| Rock Island | Nick Camlin | Kelly Fisher |
| Sangamon | Joe Aiello | Frank Lesco |
| Shelby | Erica Firnhaber | Jessica Fox |
| St. Clair | Andrew Lopinot | Thomas Holbrook |
| Stark | Paula Leezer | Heather Hollis |
| Stephenson | Stephanie Helms | Jazmin Winget |
| Tazewell | Hannah Clark | John C. Ackerman |
| Vermillion | Darren Duncan | Mathew Long |
| White | Mike Baxley | Kayci Heil |
| Whiteside | Penny VanKampen | Karen Starow |
| Will | Tim Brophy | Karen Stukel |
| Williamson | Ashley Gott | Amanda Barnes |
| Winnebago | Theresa Grenn | Lori Gummow |

14.     In both the individual and official capacities, the individual County Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

15.	Defendants, acting under color of state law and through their policies and customs, and acting in uniform fashion pursuant to Illinois statutes, *e.g.*, 35 ILCS 200/21-1, *et seq.*, have violated the rights of delinquent taxpayers by seizing and auctioning their property without providing for the return of the property owners surplus equity, which has forced the Plaintiffs to either pay the surplus equity, forego obtaining tax deeds, or violate the property owners' constitutional rights per the Fifth Amendment and *Tyler*.

## STATEMENT OF FACTS

### The Statutory Scheme

16.	Title 7 of the Illinois Property Tax Code (35 ILCS 200/Tit. 7, *et seq.*) is entitled "Tax Collection," and generally governs the assessment and collection of property taxes within the State of Illinois. Title 7 contains four Articles, which are:

- Article 19 of the Illinois Property Tax Code (35 ILCS 200/Art. 19, *et seq.*) governs the officials responsible for property tax collection at the local level within the State of Illinois.

- Article 20 of the Illinois Property Tax Code (35 ILCS 200/Art. 20, *et seq.*) governs the process for the collection of property taxes within the State of Illinois.

- Article 21 of the Illinois Property Tax Code (35 ILCS 200/Art. 21, *et seq.*) is entitled "Due Dates, Delinquencies, and Enforcement of Payments," and governs – among other related topics – tax liens, sales of properties for delinquent taxes, and redemption of auctioned properties within the State of Illinois.

- Article 22 of the Illinois Property Tax Code (35 ILCS 200/Art. 22, *et seq.*) governs the procedures by which a tax purchaser petitions for, and receives, a tax deed for an auctioned property within the State of Illinois.

17.     Under the Property Tax Code, a delinquent taxpayer will have his or her property seized by the County (and its Treasurer acting as *Ex Officio* County Collector) in which the property sits, then either auctioned to a tax purchaser or government entity who receives a tax certificate from the County and its County Collector in exchange for payment of the delinquent taxes. The tax purchaser then is entitled to payments of interest and costs on the unpaid taxes, which the property owner must pay in full in order to redeem the property during a statutory redemption period. If the property is not redeemed through a full payment the Circuit Court may order that a tax deed be issued which upon recording vested the tax certificate holder or its assignee with ownership of the property and its full value, while the property owner is dispossessed not only of the property, but of all the surplus equity the property owner had owned. *See* 35 ILCS Art. 21.

18.     The tax sale process in Illinois is governed by 35 ILCS 200/Art. 21, *et seq.* through which the Illinois General Assembly exercises its power to collect revenue on behalf of the People of Illinois, delegating enforcement to the Defendant County Treasurers (also acting as *Ex Officio* County Collectors, who apply for judgments and issue certificates of purchase in the name of the People of Illinois (35 ILCS 200/21-180, 21-250)). The process provides for the sale of tax delinquent real property (35 ILCS 200/21-190) subject to the right to redemption enshrined in State statutes and the Illinois Constitution. The sale of the property is memorialized through a Certificate of Purchase entitling the holder to redemption monies or to a tax deed if unredeemed (35 ILCS 200/21-240, 22-40).

19.     The process authorizes the divesture of all equity in the property, including surplus equity (*i.e.* value of the property in excess of the tax and tax collection amounts), without compensation, upon issuance of a tax deed, regardless of whether title vests in a private buyer or the county, and neither considers nor accounts for the property's value relative to the tax debt at any stage beyond initial assessment, ensuring no mechanism exists to compensate owners for surplus equity. The legislature lacked authority to enact such a draconian statute, which intentionally forfeits all surplus equity - contrary to the Illinois and U.S. Constitutions.

20.     It is the Defendants' choices to disregard the law as stated in *Tyler* by refusing to pay the delinquent property owners the surplus equity that the U.S. and Illinois Constitutions require.

**21.**     It is Defendants' official policies and customs to promote the system of Plaintiffs and other tax purchasers obtaining tax deeds on properties whose taxes have been sold without providing any compensation to the property owners. Further, the Defendant Treasurers and Clerks ultimately have the final policymaking authority regarding the seizure and auctioning of delinquent properties, and while nothing requires or compels any Defendant to withhold from paying the delinquent property owners the surplus equity that the U.S. and Illinois Constitutions necessitate, such is the usual custom and practice.

<u>Impact on Plaintiffs</u>

22.     Plaintiffs purchased tax sale certificates at auctions in 64 of Illinois'

102 counties, all prior to the *Tyler* decision, in reliance on Defendants'
representations that the certificates were enforceable financial instruments
conveying merchantable title, including all surplus equity without payment to prior
owners, as mandated by the Illinois Property Tax Code (PTC), 35 ILCS 200/21-205
*et seq.*, and specifically 35 ILCS 200/22-40.

23.     Specifically, Plaintiffs purchased tax certificates in all of the
Defendant Counties, and still currently possess said tax certificates.

24.     Defendants Counties, Treasurers, and Clerks, acting in a proprietary
or governmental capacity under the PTC, enables divestures of real property
through tax deeds without compensating owners for surplus equity, exposing
Plaintiffs to liability by conducting tax sales and issuing tax deeds through the
county treasurers acting *ex officio* as county collectors under Ill. Const. 1970, Art.
VII, § 4(d). Alternatively, county treasurers act as state agents, implementing state
tax collection policies under 35 ILCS 200/*et seq.*, with Defendants Raoul and Harris
responsible for the PTC's design and enforcement.

25.     Tax purchasers such as Plaintiffs have been accused – including by
state and county Defendants in pending litigation in Illinois - of being state actors
under *Tyler* when obtaining tax deeds, potentially exposing Plaintiffs to § 1983
liability for participating in the PTC's unconstitutional scheme, compelling them to
seek relief to avoid complicity. Such accusations have further harmed Plaintiffs by
devaluing Plaintiffs' property.

26.     Across Illinois' 102 counties, Defendants have conducted tax sale

25

auctions annually, selling thousands of tax sale certificates and issuing thousands of tax deeds. These transactions, representing millions of dollars in investments by tax buyers like Plaintiffs, who collectively invested millions in reliance on Defendants' representations that the certificates were enforceable financial instruments and merchantable title would be conveyed without surplus payment obligations by Plaintiffs, exposing Plaintiffs to significant financial and legal risks and devalued property.

27.     The PTC's "take all" system, with the provision conveying full title without surplus payment under 35 ILCS 200/22-40 as its linchpin, is so integral that its removal would render the statutory scheme nonsensical and inoperable, fundamentally undermining its purpose. The system uses surplus equity as a "carrot" to attract robust bids from tax buyers, promising unencumbered title, and as a "stick" to coerce property owners to redeem delinquent taxes under threat of total property loss, a strategy consistent with Defendants' position that this coercive mechanism is essential to enforce redemption and is consistent with the legislature's intent in enacting the PTC.

28.     The provision conveying full title without surplus payment cannot be severed from the PTC without dismantling its carefully calibrated balance of incentives and penalties. Its elimination would contradict explicit assurances made to tax buyers, who relied on Defendants' representations of merchantable title free of surplus obligations, and negate the coercive threat of complete forfeiture used to compel redemption, rendering the system incoherent and ineffective.

29.     Requiring Plaintiffs to pay surplus equity to prior owners upon obtaining a tax deed would violate the PTC's promise of merchantable title imposing an obligation akin to a forced sale that contradicts the contractual bargain and the system's economic incentives, further exposing Plaintiffs to financial loss and liability.

30.     The Illinois Tax Deed Indemnity Fund provisions (35 ILCS 200/21-295 *et seq.*) do not provide just compensation for surplus equity as required by Tyler. Each county maintains its own indemnity fund. The indemnity fund is not designed to automatically or promptly compensate all tax-delinquent property owners for lost equity, requiring owners to navigate a discretionary petition process that can take years, lacks guaranteed payment, and excludes prejudgment interest. The administrative hurdles and limited funding render county indemnity funds constitutionally inadequate, compelling Plaintiffs to risk participating in an unconstitutional scheme or forfeiting their investments.

31.     For example, Cook County's indemnity fund's insolvency and mismanagement exacerbate this inadequacy. As of November 2024, Cook County's indemnity fund had a backlog of 278 unpaid judgments totaling roughly $33.62 million and a 6.5-year lag in payment.  Cook County has failed to maintain statutorily required minimum reserves (35 ILCS 200/21-300), report annually on the fund's condition (35 ILCS 200/21-295), or include judgments as liabilities in county budgets (55 ILCS 5/1-6004), further undermining its ability to compensate owners.  While in the majority of counties, annually, no indemnity judgments are

entered and any money collected into the fund escheats to the county; no compensation is paid to divested property owns through the indemnity fund. The structural deficiencies of the indemnity fund statutes and Defendants' non-compliance render it incapable of fulfilling *Tyler*'s mandate, compelling Plaintiffs to risk participating in an unconstitutional scheme or forfeiting their investments.

32.    Plaintiffs obtained tax deeds and acted under the PTC in good faith, unaware the PTC's "take all" system violated the Fifth and Eighth Amendments to the Constitution by taking surplus equity without compensation or imposing excessive fines.

33.    However, in *Tyler*, the United States Supreme Court held that taking surplus equity without just compensation violates the Fifth Amendment and suggested an additional Eighth Amendment violation.

34.    Illinois' PTC, functionally identical to Minnesota's law in *Tyler*, extinguishes owners' equity without compensation through its "take all" system, imposing a punitive sanction disproportionate to tax debts. *See Grady v. Wood County*, 2025 U.S. Dist. LEXIS 81157, at *12–13 (S.D. W. Va. Apr. 29, 2025).

35.    Post-*Tyler*, Defendants have not reformed the PTC, issued moratoriums, or offered relief to Plaintiffs, who face coercion to either forfeit investments or participate in unconstitutional acts. Defendant Raoul has failed to propose legislative reforms, issue guidance, or take other actions to address the PTC's constitutional flaws, despite authority to do so under 15 ILCS 205/4.

36.    Defendants were aware or should have been aware of the PTC's

constitutional flaws, yet continued to enforce it, shifting liability to tax buyers.

37.     Enforcing certificates requires Plaintiffs to participate in an unconstitutional taking and excessive fine, risking § 1983 liability, while PTC deadlines create an untenable dilemma: enforce and risk liability or forfeit investments. Illinois is the last and only state in the county that maintains a statutory scheme like that challenged in *Tyler*.

38.     Additionally, despite the plaintiffs having purchased all tax certificates prior to the *Tyler* decision, and despite the "toxic" nature of the tax certificates following *Tyler*, Plaintiffs have nonetheless been compelled to act under the PTC, incurring additional expenses and taking necessary actions to protect their interests, including paying subsequent tax amounts to maintain lien priority, publishing notices, serving process, conducting tract searches, extending redemption dates, covering recording costs, mailing notices, and paying interest.

39.     Counties have sued the State of Illinois and tax buyers arguing either the state of tax buyers like Plaintiffs are liable for any unconstitutional takings.

## CAUSES OF ACTION

### Count I: Violation of the Takings Clause – U.S. Const. Amend. V; 42 U.S.C. § 1983

40.     Plaintiffs incorporate and reallege Paragraphs 1-39, inclusive, as if fully repeated herein.

41.     The PTC, 35 ILCS 200/21-360 and 200/21-365, takes surplus equity without just compensation, violating the Fifth Amendment's Takings Clause, as held in *Tyler*, and the Fourteenth Amendment. Defendants, whether as state agents

or county officials, facilitate this taking.

42.     Defendants, acting under color of state law by enacting and enforcing the PTC, cause this violation, and now Plaintiffs are forced to either participate in an unconstitutional scheme to enforce their certificates, risking liability, or otherwise face loss of investments.

43.     Additionally, if the loss of surplus equity is an unconstitutional taking from the property owner under the Fifth Amendment, then forcing Plaintiffs to either lose their investment or pay the surplus equity so the property owner has her rights vindicated is merely shifting the taking onto Plaintiffs, whose Fifth Amendment rights are violated as a result.

44.     Plaintiffs seek a declaratory judgment that the PTC is unconstitutional, an injunction preventing Defendants from enforcing it, and monetary relief against the County Defendants, including the rescission of such "toxic" tax certificates plus interest.

**Count II: Excessive Fines – U.S. Const. Amend. VIII; 42 U.S.C. § 1983**

45.     Plaintiffs incorporate and reallege Paragraphs 1-44, inclusive, as if fully repeated herein.

46.     The PTC's forfeiture of surplus equity is a punitive sanction grossly disproportionate to tax debts, violating the Eighth Amendment, as incorporated by the Fourteenth Amendment. See *Timbs v. Indiana*, 586 U.S. 146 (2019); *Tyler*, 598 U.S. at 651–53 and echoed in *State v. Black*, 305 So. 3d 783 (Fla. Dist. Ct. App. 2020), where Florida's continued forfeiture practices post-*Timbs v. Indiana*, 586 U.S.

146 (2019), were challenged as disproportionate.

47.     Plaintiffs, with third-party standing, assert owners' rights, as
enforcing their tax certificates risks § 1983 liability to the property owners.

48.     Additionally, if the loss of surplus equity is an excessive fine on the
property owner under the Eighth Amendment, then forcing Plaintiffs to either lose
their investment or pay the surplus equity so the property owner has her rights
vindicated is merely shifting the excessive fine onto Plaintiffs, whose Eighth
Amendment rights are violated as a result.

49.     Plaintiffs seek a declaratory judgment, injunction, a stay or tolling of
deadlines, and monetary relief against the County Defendants, including the
rescission of such "toxic" tax certificates plus interest, reserving monetary relief
against the State.

### Count III: Due Process Violation – U.S. Const. Amend. XIV; 42 U.S.C. § 1983

50.     Plaintiffs incorporate and reallege Paragraphs 1-49, inclusive, as if
fully repeated herein.

51.     Plaintiffs' certificates are a protected Fourteenth Amendment property
interest, but Defendants' failure to remedy the PTC's constitutional flaws post-*Tyler*
deprives Plaintiffs of this interest without due process, forcing them to sue amidst
imminent PTC deadlines. This deprives Plaintiffs of their certificate rights without
due process, as they face liability risks without clear guidance.

52.     The effect of *Tyler* and the PTC's enforcement on the Plaintiffs' tax
certificates, for which Plaintiffs are now forced to either lose their investment, pay

the surplus equity to the property owner, or violate the property owner's Fifth Amendment rights, on their face and as applied, are unconstitutional denials of their fundamental substantive due process rights, and are in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

53.     Plaintiffs seek a declaratory judgment, injunctive relief, a stay or tolling of PTC deadlines, and monetary relief against the County Defendants, including the rescission of such "toxic" tax certificates plus interest, and reserving monetary relief against the state.

## Count IV: Unconstitutional Conditions – 42 U.S.C. § 1983

54.     Plaintiffs incorporate and reallege Paragraphs 1-53, inclusive, as if fully repeated herein.

55.     *Tyler v. Hennepin County*, 598 U.S. 631 (2023) held that surplus equity in tax foreclosures is a protected property interest under the Fifth Amendment, and the Government taking said equity without just compensation is unconstitutional as incorporated by the Fourteenth Amendment. The *Tyler* concurrence also suggested that such forfeiture also violates the Eighth Amendment's Excessive Fines Clause due to its grossly disproportionate punitive nature.

56.     Defendants' tax sale system, governed by the PTC and the Illinois Constitution does not compensate divested property owners for surplus equity in their property.

57.     The government cannot use private parties to do indirectly what it is constitutionally prohibited from doing directly. This principle is rooted in the

unconstitutional conditions doctrine and state action doctrine, which prevent the government from circumventing constitutional protections by delegating or incentivizing private actors to violate others' rights. *See. e.g. Frost v. Railroad Commission*, 271 U.S. 583 (1926) (striking conditions requiring private parties to waive constitutional protections); *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) (invalidating an ordinance requiring hotel owners to consent to warrantless searches, as it coerced private parties into violating Fourth Amendment rights to retain a business license).

58.    Defendants' condition enforcement of Plaintiffs' rights and participate in the tax foreclosure process on complying with a statutory scheme that requires, allows, and incentivizes retaining surplus equity without compensating the original property owner, thereby facilitating an unconstitutional taking.

59.    The unconstitutional conditions doctrine, as established in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), prohibits the government from conditioning a benefit on a private party's participation in violating another's constitutional rights.

60.    Post-*Tyler*, courts, including *257-261 20th Ave. Realty, LLC v. Roberto*, 288 A.3d 1209 (N.J. 2025), and *Nieveen v. TAX 106*, 979 N.W.2d 682 (Neb. 2022), have held that private tax lienholders are state actors under the *Lugar* test (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 1982) when they use state foreclosure processes, subjecting them to liability under 42 U.S.C. § 1983 for unconstitutional

takings.

61.     Post-*Tyler*, Defendants and county officials have alleged that tax buyers like Plaintiffs are responsible for the taking of surplus equity. *Bell v. Pappas* (N.D. Ill.), *Sharritt v. Henry*, No. 1:23-cv-15838, 2024 U.S. Dist. LEXIS 189825, 2024 WL 4524501 (N.D. Ill. Oct. 18, 2024); *Top Metal Buyers, Inc. v. St. Clair County* (S.D. Ill.).

62.     At least two tax deed issued to Plaintiffs have been challenged under the *Tyler* holding.

63.     Plaintiff faces imminent harm.

64.     Defendant's tax sale system thus imposes an unconstitutional condition, as it leverages the benefit of tax lien participation to compel Plaintiffs' involvement in a constitutional statutory scheme.

65.     As in *Parrish v. Civil Service Commission*, 66 Cal. 2d 260 (1967), where a public official was protected for refusing to participate in unconstitutional searches, Plaintiffs cannot be coerced into facilitating the PTC's unconstitutional takings, nor should Defendants enforce a system that violates *Tyler's* mandate.

66.     This condition lacks a compelling state interest and coerces Plaintiffs to violate third-party rights or forfeit investments.

67.     Plaintiffs participated in tax sales administered under the Illinois PTC which was presumed constitutional prior to the decision in *Tyler* issued on May 25, 2023. 598 U.S. 631 (2023).

68.     Plaintiff participated in the tax sale and foreclosure process in good-

faith reliance on which, prior to *Tyler*, did not indicate that retaining surplus equity was unconstitutional or that tax buyers would be deemed state actors subject to liability. *See e.g. Balthazar v. United States*, 430 U.S. 924 (1977); *United States v. Cooter*, 456 U.S. 444 (1982).

69. These pending lawsuits demonstrate that Plaintiffs face a credible threat of liability as a state actors, including potential claims by the original property owner of or others similarly situated, seeking recovery of surplus equity.

70. Defendants tax sale system and Defendants' accusation now exposes Plaintiff to retroactive liability as a state actor without fair notice or opportunity to avoid such liability at the time of their participation.

71. This retroactive imposition of state actor status violates Plaintiff's Fourteenth Amendment due process rights by:

    a. Depriving Plaintiff of procedural due process, as Defendant's tax sale system provides no mechanisms to avoid participating in an unconstitutional taking should no redemption occur; and

    b. Violating substantive due process by arbitrarily subjecting Plaintiff to unforeseen liability for actions taken in good-faith reliance on a then-valid statutory scheme, especially in light of pending litigation in other jurisdictions highlighting similar unfairness to tax buyers and counties.

72. Plaintiffs seek a declaratory judgment, injunction, a stay or tolling of deadlines, and monetary relief against the County Defendants, including the

rescission of such "toxic" tax certificates plus interest, reserving monetary relief against the state for the Court of Claims.

**Count V: Declaratory Relief**

73.     Plaintiffs incorporate and reallege Paragraphs 1-72, inclusive, as if fully repeated herein.

74.     Plaintiffs obtained tax deeds in reliance on *Balthazar* and *Cooter*, as well as the express language of the PTC, all of which suggested the PTC was constitutional, but instead *Tyler* potentially exposes them to liability.

75.     The risk of § 1983 liability is heightened by allegations that tax purchasers like Plaintiffs are state actors, necessitating protective relief for Plaintiffs' pre-*Tyler* actions.

76.     That by reason of the foregoing an actual controversy exists and Plaintiffs are therefore entitled to a judicial declaration of their rights and declaratory relief pursuant to 28 U.S.C. § 2201 in connection therewith because the PTC is oppressive and illegal as violating the fundamental constitutional rights of the affected property owners, are against public policy, forced on Plaintiffs and perpetuated by Defendants in bad faith and are therefore unenforceable.

77.     Plaintiffs therefore request a declaratory judgment that they are not state actors, and face no § 1983 liability for tax deeds.

78.     Plaintiffs also request a declaration that - if the PTC is constitutional - they may enforce certificates without liability for surplus equity, as the PTC (35 ILCS 200/22-55) provides merchantable title free of claims.

79. In the alternative, Plaintiffs request a declaration that the PTC is unconstitutional, and that forcing the Plaintiffs to lose their investment, pay the surplus equity, or violate the delinquent property owners' constitutional rights is inequitable and that Plaintiffs are entitled to relief, including the rescission of such "toxic" tax certificates plus interest.

## Count VI: Unjust Enrichment and *Ultra Vires* Actions – 42 U.S.C. § 1983

80. Plaintiffs incorporate and reallege Paragraphs 1-79, inclusive, as if fully repeated herein.

81. Defendants acted *ultra vires*; even if they act pursuant to Illinois statutory authority, said authority is in excess of constitutional authority under both the U.S. and Illinois Constitutions, as their actions violated the Fifth Amendment rights – and the rights granted under Art. I, § 15 of the Illinois Constitution – of the delinquent property owners, thus forcing Plaintiffs to also violate those rights, pay the surplus equity, or lose their investments.

82. Defendants' retention of Plaintiffs' payments through tax sales under an unconstitutional PTC constitutes unjust enrichment, as they lack constitutional authority, even if they had statutory authority.

83. The thousands of certificates sold statewide, generating millions in revenue, unjustly enrich Defendants at Plaintiffs' expense, as they retain these funds while shifting liability post-*Tyler*.

84. As the Defendants' *ultra vires* acts exceeded their constitutional

authority, Plaintiffs are entitled to recover their investment from the Defendants.

85.     Plaintiffs seek a declaratory and injunctive relief against such *ultra vires* conduct and unjust enrichment by the Defendants, including against future such conduct, and equitable restitution against the County Defendants, including the rescission of such "toxic" tax certificates plus interest, while reserving monetary restitution against the state.

## Count VII: Equitable Estoppel – Illinois Law

86.     Plaintiffs incorporate and reallege Paragraphs 1-85, inclusive, as if fully repeated herein.

87.     Defendants made representations (*e.g.*, that the tax certificates, tax sale, issued deeds and PTC were valid), upon which the Plaintiffs reasonably relied.

88.     Defendants induced Plaintiffs to rely on the tax deed's validity (*e.g.*, by issuing the deed and confirming the sale).

89.     Plaintiffs suffered detriment due to the Defendants' representations, in the form of tax certificates for which Plaintiffs are forced to lose their investments, pay surplus equity to the property owners, or violate the property owners' Fifth Amendment constitutional rights.

90.     Defendants' representations about the tax certificate's enforceability, on which the Plaintiffs reasonably relied, estop them from denying validity.

91.     Plaintiffs seek equitable estoppel to prevent Defendants from challenging the title or seeking damages against Plaintiffs.

92.     Estoppel is necessary to prevent injustice.

93.     Plaintiffs seek a declaratory judgment, equitable relief, a stay or tolling of deadlines, and restitution against the County Defendants, including the rescission of such "toxic" tax certificates plus interest, reserving restitution against the state.

**Count VIII: Equitable Rescission Based on Impossibility of Performance**

94.     Plaintiffs incorporate and reallege Paragraphs 1-93, inclusive, as if fully repeated herein.

95.     *Tyler* renders certificate enforcement impossible or frustrates the contract's purpose, since Plaintiffs are forced to choose between losing their investments, paying surplus equity to the property owners, or violating the property owners' Fifth Amendment constitutional rights.

96.     Such a factual situation, where the purpose for which the contracts between Plaintiffs and Defendants were made have become impossible for Plaintiffs to perform.

97.     Plaintiffs' performance under the tax auction contracts with the Defendants, *i.e.*, "conversion" of the tax certificates into tax deeds, has been rendered objectively impossible due to destruction of the subject matter of the contract (*i.e.*, the profit Plaintiffs were promised when they purchased the tax certificates at auction) and by operation of law in the form of the *Tyler* decision.

98.     Such events were not foreseeable to the Plaintiffs at the time of the auctions. The totality of the facts justifies rescission of the auction contracts. Plaintiffs therefore seek rescission of the auction contracts with the County

Defendants, with the return of Plaintiffs' funds plus interest, and reserving restitution against the state.

## Count IX: Breach of Contract – Illinois Law

99.     Plaintiffs incorporate and reallege Paragraphs 1-98, inclusive, as if fully repeated herein.

100.    The tax certificates Plaintiffs purchased form the County Defendants at the various tax auctions constitute contracts promising enforceable rights, which Defendants, including county treasurers *ex officio* acting in a proprietary or governmental capacity as state or county actors, breached by selling defective instruments tied to an unconstitutional scheme, actionable in contract.

101.    Plaintiffs have been damaged as a result of purchasing the tax certificates which will force the Plaintiffs to choose to either lose their investments, pay surplus equity to the property owners, or violate the property owners' Fifth Amendment constitutional rights.

102.    Plaintiffs seek a declaratory judgment, injunctive relief, and damages against the County Defendants, including the rescission of such "toxic" tax certificates plus interest, reserving damages against the state.

## Count X: Unconscionability – Illinois Law

103.    Plaintiffs incorporate and reallege Paragraphs 1-102, inclusive, as if fully repeated herein.

104.    The Counties' seizure and auction of delinquent properties for tax auction without compensating the property owner for her surplus equity is an

unconstitutional scheme which is unenforceable.

105. The tax certificate sales are procedurally and substantively unconscionable under *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1 (2006), as Defendants sold defective instruments while shifting liability, creating an oppressive dilemma similar to that forced upon Plaintiffs, *i.e.*, they are forced to violate the property owners' constitutional rights, pay the surplus equity, or lose their investments.

106. Plaintiffs seek a declaratory judgment, rescission, injunctive relief, and restitution against the County Defendants, including the rescission of such "toxic" tax certificates plus interest, reserving restitution against the state.

### Count XI: Stay and Tolling of Deadlines

107. Plaintiffs incorporate and reallege Paragraphs 1-106, inclusive, as if fully repeated herein.

108. PTC deadlines (35 ILCS 200/21-350, 22-10, 22-25, 22-30) create irreparable harm by forcing Plaintiffs to enforce certificates, risking § 1983 liability, or forfeit investments.

109. The volume of certificates sold and deeds issued, coupled with imminent PTC deadlines, creates irreparable harm for Plaintiffs, tax buyers and property owners, and interested parties in the underlying real estate and financial instruments necessitating a stay or tolling.

110. Plaintiffs should not be placed in a position of being forced to violate the property owners' constitutional rights, pay surplus equity payments, or lose

their investments because PTC deadlines passed while this matter is pending.

111.    Plaintiffs therefore seek a stay or tolling of statutory deadlines regarding their pending tax certificates pending resolution, consistent with other states' moratoriums.

WHEREFORE, as to all the above-pleaded Counts, the Plaintiffs, INTEGRITY INVESTMENT FUND, LLC, an Illinois limited liability company, INTEGRITY INVESTMENT REO HOLDINGS, LLC, an Illinois limited liability company, SIGTELLO, LLC, an Illinois series limited liability company, and ABBOTT PORTFOLIO, LLC, an Illinois limited liability company, respectfully request that this Honorable Court:

1.    Issue preliminary and permanent injunctions barring Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing 35 ILCS 200/Tit. 7 in such a manner as to compel Plaintiffs to maintain tax certificates that would ultimately result in Plaintiffs not being able to obtain tax deeds without paying delinquent taxpayers the value of any surplus equity in their properties, as said statutes are unconstitutional violations of the owners' rights under the Fifth Amendment to the U.S. Constitution;

2.    Enter declaratory relief consistent with the injunction;

3.    Order the rescission of all such issued tax certificates, with a refund of all sums paid by Plaintiffs to the Defendant Counties, plus accrued interest;

4. Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988;

5. Award Plaintiff the ordinary costs of suit; and

6. Grant Plaintiff any and all further relief as this Court deems just and appropriate.

Dated: May 28, 2025                           Respectfully submitted,

                                              /s/ David G. Sigale
                                              Attorney for Plaintiffs


David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

Attorney for Plaintiffs