# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

INTEGRITY INVESTMENT FUND, LLC, an Illinois limited liability company, INTEGRITY INVESTMENT REO HOLDINGS, LLC, an Illinois limited liability company, SIGTELLO, LLC, an Illinois series limited liability company, and ABBOTT PORTFOLIO, LLC, an Illinois limited liability company,

        Plaintiffs,

v.

KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; DAVID HARRIS, in his official capacity as Director of the Illinois Department of Revenue;

COOK COUNTY, ILLINOIS, an Illinois political subdivision unit of government; MARIA PAPPAS, in her capacity as Treasurer of Cook County; MONICA GORDON, in her capacity as Clerk of Cook County;

ADAMS COUNTY, ILLINOIS, an Illinois political subdivision unit of government; F. BRYDEN CORY, in his capacity as Treasurer of Adams County, Illinois; RYAN A. NIEKAMP, in his capacity as Clerk of Adams County, Illinois;

BOONE COUNTY, ILLINOIS, an Illinois political subdivision unit of government; CURTIS P. NEWPORT, in his capacity as Treasurer of Boone County, Illinois; JULIE A. BLISS, in his capacity as Clerk of Boone County,

Case No: 3:25 CV 1122-DWD

Illinois;                                                    )
                                                             )
BUREAU COUNTY, ILLINOIS, an                                  )
Illinois political subdivision unit of                       )
government; JOSEPH BIRKEY, in his                            )
capacity as Treasurer of Bureau County,                      )
Illinois; MATTHEW S. EGGERS, in his                          )
capacity as Clerk of Bureau County,                          )
Illinois;                                                    )
                                                             )
CARROLL COUNTY, ILLINOIS, an                                 )
Illinois political subdivision unit of                       )
government; LYDIA HUTCHCARFT, in                              )
her capacity as Treasurer of Carroll                         )
County, Illinois; AMY BUSS, in her                           )
capacity as Clerk of Carroll County,                         )
Illinois;                                                    )
                                                             )
CASS COUNTY, ILLINOIS, an Illinois                           )
political subdivision unit of government;                    )
TRAVIS COX, in his capacity as                               )
Treasurer of Cass County, Illinois;                          )
SHELLY WESSEL, in her capacity as                            )
Clerk of Cass County, Illinois;                              )
                                                             )
CHAMPAIGN COUNTY, ILLINOIS, an                               )
Illinois political subdivision unit of                       )
government; BYRON CLARK, in his                              )
capacity as Treasurer of Champaign                           )
County, Illinois; AARON AMMONS, in                           )
his capacity as Clerk of Champaign                           )
County, Illinois;                                            )
                                                             )
CHRISTIAN COUNTY, ILLINOIS, an                               )
Illinois political subdivision unit of                       )
government; BETTY ASMUSSEN, in                                )
her capacity as Treasurer of Christian                       )
County, Illinois; JODIE BADMAN, in                           )
her capacity as Clerk of Christian                           )
County, Illinois;                                            )
                                                             )
CLAY COUNTY, ILLINOIS, an Illinois                           )
political subdivision unit of government;                    )
STACY ALLEN, in her capacity as                              )

2

Treasurer of Clay County, Illinois; AMY )
BRITTON, in her capacity as Clerk of )
Clay County, Illinois; )
)
CLINTON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; DENISE TRAME, in her )
capacity as Treasurer of Clinton County, )
Illinois; VICKY ALBERS, in her capacity )
as Clerk of Clinton County, Illinois; )
)
COLES COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
GEORGE E. EDWARDS, in his capacity )
as Treasurer of Coles County, Illinois; )
JULIE COE, in her capacity as Clerk of )
Coles County, Illinois; )
)
CRAWFORD COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; RIKKI CALLOWAY, in her )
capacity as Treasurer of Crawford )
County, Illinois; BECKIE STALEY, in )
her capacity as Clerk of Crawford )
County, Illinois; )
)
CUMBERLAND COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; JENY MAYNARD, in her )
capacity as Treasurer of Cumberland )
County, Illinois; BEVERLY HOWARD, )
in her capacity as Clerk of Cumberland )
County, Illinois; )
)
DEWITT COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; JAY RUSSELL, in his )
capacity as Treasurer of DeWitt County, )
Illinois; KARI HARRIS, in her capacity )
as Clerk of DeWitt County, Illinois; )
)
DUPAGE COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; GWEN HENRY, in her )

3

capacity as Treasurer of DuPage County, Illinois; JEAN KACZMAREK, in her capacity as Clerk of DuPage County, Illinois; )
)
)
)
)

FORD COUNTY, ILLINOIS, an Illinois political subdivision unit of government; KRISHA WITCOMB, in her capacity as Treasurer of Ford County, Illinois; AMY FREDERICK, in her capacity as Clerk of For County, Illinois; )
)
)
)
)
)
)

FRANKLIN COUNTY, ILLINOIS, an Illinois political subdivision unit of government; STEVE VERCELLINO, in his capacity as Treasurer of Franklin County, Illinois; KEVIN WILSON, in his capacity as Clerk of Franklin County, Illinois; )
)
)
)
)
)
)
)
)

FULTON COUNTY, ILLINOIS, an Illinois political subdivision unit of government; STACI MAYALL, in her capacity as Treasurer of Fulton County, Illinois; PATRICK O'BRIAN, in his capacity as Clerk of Fulton County, Illinois; )
)
)
)
)
)
)
)

GRUNDY COUNTY, ILLINOIS, an Illinois political subdivision unit of government; TODD KOEHN, in his capacity as Treasurer of Grundy County, Illinois; KAY OLSON, in her capacity as Clerk of Grundy County, Illinois; )
)
)
)
)
)
)

HANCOCK COUNTY, ILLINOIS, an Illinois political subdivision unit of government; KRISTINE PILKINGTON, in her capacity as Treasurer of Hancock County, Illinois; HOLLY WILDE-TILLMAN, in her capacity as Clerk of Hancock County, Illinois; )
)
)
)
)
)
)
)

HENRY COUNTY, ILLINOIS, an )

4

Illinois political subdivision unit of government; KELLY VINCENY, in her capacity as Treasurer of Henry County, Illinois; BARBARA M LINK, in her capacity as Clerk of Henry County, Illinois; )

JACKSON COUNTY, ILLINOIS, an Illinois political subdivision unit of government; LIZ HUNTER, in her capacity as Treasurer of Jackson County, Illinois; FRANK L. BYRD, in his capacity as Clerk of Jackson County, Illinois; )

JERSEY COUNTY, ILLINOIS, an Illinois political subdivision unit of government; BECCA STRANG, in her capacity as Treasurer of Jersey County, Illinois; PAM WARFORD, in her capacity as Clerk of Jersey County, Illinois; )

KANE COUNTY, ILLINOIS, an Illinois political subdivision unit of government; CHRIS LAUZEN, in her capacity as Treasurer of Kane County, Illinois; JOHN A. CUNNINGHAM, in his capacity as Clerk of Kane County, Illinois; )

KANKAKEE COUNTY, ILLINOIS, an Illinois political subdivision unit of government; NICHOLAS AFRICANO, in his capacity as Treasurer of Kankakee County, Illinois; DAN HENDRICKSON, in his capacity as Clerk of Kankakee County, Illinois; )

KENDALL COUNTY, ILLINOIS, an Illinois political subdivision unit of government; JILL FERKO, in her capacity as Treasurer of Kendall County, Illinois; DEBBIE GILLETTE, in her )

5

capacity as Clerk of Kendall County,                    )
Illinois;                                               )
                                                        )
LAKE COUNTY, ILLINOIS, an Illinois                      )
political subdivision unit of government;               )
HOLLY KIM, in her capacity as                           )
Treasurer of Lake County, Illinois;                     )
ANTHONY VEGA, in his capacity as                        )
Clerk of Lake County, Illinois;                         )
                                                        )
LASALLE COUNTY, ILLINOIS, an                            )
Illinois political subdivision unit of                  )
government; JAMES L. SPELICH, in his                    )
capacity as Treasurer of LaSalle County,                )
Illinois; JENNIFER EBNER, in her                        )
capacity as Clerk of LaSalle County,                    )
Illinois;                                               )
                                                        )
LAWRENCE COUNTY, ILLINOIS, an                           )
Illinois political subdivision unit of                  )
government; BARBIE MOREY, in her                        )
capacity as Treasurer of Lawrence                       )
County, Illinois; WILL C. GIBSON, in                    )
his capacity as Clerk of Lawrence                       )
County, Illinois;                                       )
                                                        )
LEE COUNTY, ILLINOIS, an Illinois                       )
political subdivision unit of government;               )
PAUL RUDOLPHI, in his capacity as                       )
Treasurer of Lee County, Illinois;                      )
NANCY PETERSON, in her capacity as                      )
Clerk of Lee County, Illinois;                          )
                                                        )
LIVINGSTON COUNTY, ILLINOIS, an                         )
Illinois political subdivision unit of                  )
government; M. NIKKI MEIER, in her                      )
capacity as Treasurer of Livingston                     )
County, Illinois; KRISTY MASCHING,                      )
in her capacity as Clerk of Livingston                  )
County, Illinois;                                       )
                                                        )
LOGAN COUNTY, ILLINOIS; an                              )
Illinois political subdivision unit of                  )
government; PENNY THOMAS, in her                        )

6

capacity as Treasurer of Logan County, )
Illinois; THERESA MOORE, in her )
capacity as Clerk of Logan County, )
Illinois; )
)
MACOUPIN COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; AMBER MCGARTLAND, )
in her capacity as Treasurer of Macoupin )
County, Illinois; PETE DUNCAN, in his )
capacity as Clerk of Macoupin County, )
Illinois; )
)
MARION COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; GARY L. PURCELL, in his )
capacity as Treasurer of Marion County, )
Illinois; STEVEN FOX, in his capacity )
as Clerk of Marion County, Illinois; )
)
MARSHALL COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; CYNTHIA NIGHSONGER, )
in her capacity as Treasurer of Marshall )
County, Illinois; JILL KENYON, in her )
capacity as Clerk of Marshall County, )
Illinois; )
)
MASON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; CARI B. MEEKER, in her )
capacity as Treasurer of Mason County, )
Illinois; SUMMER BROWN, in her )
capacity as Clerk of Mason County, )
Illinois; )
)
MCDONOUGH COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; DANA MOON, in her )
capacity as Treasurer of McDonough )
County, Illinois; JEREMY BENSON, in )
his capacity as Clerk of McDonough )
County, Illinois; )
)

7

MCHENRY COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; GLENDA L. MILLER, in )
her capacity as Treasurer of McHenry )
County, Illinois; JOSEPH J TIRIO, in )
his capacity as Clerk of McHenry )
County, Illinois; )
 )
MCLEAN COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; REBECCA C MCNEIL, in )
her capacity as Treasurer of McLean )
County, Illinois; KATHY MICHAEL, in )
her capacity as Clerk of McLean County, )
Illinois; )
 )
MENARD COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; MOLLY BETTIS, in her )
capacity as Treasurer of Menard County, )
Illinois; MARTHA GUM, in her capacity )
as Clerk of Menard County, Illinois; )
 )
MERCER COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; BEV LOWER, in her )
capacity as Treasurer of Mercer County, )
Illinois; BRIAN GERBER, in his )
capacity as Clerk of Mercer County, )
Illinois; )
 )
MONTGOMERY COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; NIKKI LOHMAN, in her )
capacity as Treasurer of Montgomery )
County, Illinois; SANDY LEITHEISER, )
in her capacity as Clerk of Montgomery )
County, Illinois; )
 )
MORGAN COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; CRYSTAL MYERS, in her )
capacity as Treasurer of Morgan County, )
Illinois;  SHERIY SILLS, in her capacity )

8

as Clerk of Morgan County, Illinois;                    )
                                                        )
MOULTRIE COUNTY, ILLINOIS, an                           )
Illinois political subdivision unit of                  )
government; STEPHANIE L                                 )
HELMUTH, in her capacity as                             )
Treasurer of Moultrie County, Illinois;                 )
LINDA QUALLS-BINDER, in her                             )
capacity as Clerk of Moultrie County,                   )
Illinois;                                               )
                                                        )
OGLE COUNTY, ILLINOIS, an Illinois                      )
political subdivision unit of government;               )
TIFFANY O'BRIEN, in her capacity as                     )
Treasurer of Ogle County, Illinois;                     )
LAURA J. COOK, in her capacity as                       )
Clerk of Ogle County, Illinois;                         )
                                                        )
PEORIA COUNTY, ILLINOIS, an                             )
Illinois political subdivision unit of                  )
government; BRANDEN MARTIN, in                          )
his capacity as Treasurer of Peoria                     )
County, Illinois; RACHEL PARKER, in                     )
her capacity as Clerk of Peoria County,                 )
Illinois;                                               )
                                                        )
PERRY COUNTY, ILLINOIS, an Illinois                     )
political subdivision unit of government,               )
JODI KOESTER, in her capacity as                        )
Treasurer of Perry County, Illinois;                    )
ROBERT KELI, in his capacity as Clerk                   )
of Perry County, Illinois;                              )
                                                        )
PIATT COUNTY, ILLINOIS, an Illinois                     )
political subdivision unit of government;               )
DEBBIE MARSHALL, in her capacity                        )
as Treasurer of Piatt County, Illinois;                 )
JENNIFER HARPER, in her capacity as                     )
Clerk of Piatt County, Illinois;                        )
                                                        )
PUTNAM COUNTY, ILLINOIS, an                             )
Illinois political subdivision unit of                  )
government; KEVIN E KUNKEL, in his                      )
capacity as Treasurer of Putnam County,                 )

9

Illinois; TINA DULDER, in her capacity )
as Clerk of Putnam County, Illinois; )
)
ROCK ISLAND COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )
government; NICK CAMLIN, in his )
capacity as Treasurer of Rock Island )
County, Illinois; KELLY FISHER, in her )
capacity as Clerk of Rock Island County, )
Illinois; )
)
SANGAMON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; JOE AIELLO, in his )
capacity as Treasurer of Sangamon )
County, Illinois; FRANK LESCO, in his )
capacity as Clerk of Sangamon County, )
Illinois; )
)
SHELBY COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; ERICA FIRNHABER, in )
her capacity as Treasurer of Shelby )
County, Illinois; JESSICA FOX, in her )
capacity as Clerk of Shelby County, )
Illinois; )
)
ST. CLAIR COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; ANDREW LOPINOT, in his )
capacity as Treasurer of St. Clair )
County, Illinois; THOMAS HOLBROOK, )
in his capacity as Clerk of St. Clair )
County, Illinois; )
)
STARK COUNTY, ILLINOIS, an Illinois )
political subdivision unit of government; )
PAULA LEEZER, in her capacity as )
Treasurer of Stark County, Illinois; )
HEATHER HOLLIS, in her capacity as )
Clerk of Stark County, Illinois; )
)
STEPHENSON COUNTY, ILLINOIS, )
an Illinois political subdivision unit of )

10

government; STEPHANIE HELMS, in
his capacity as Treasurer of Stephenson
County, Illinois; JAZMIN WINGET, in
her capacity as Clerk of Stephenson
County, Illinois;

TAZEWELL COUNTY, ILLINOIS, an
Illinois political subdivision unit of
government; HANNAH CLARK, in her
capacity as Treasurer of Tazewell
County, Illinois; JOHN C. ACKERMAN,
in his capacity as Clerk of Tazewell
County, Illinois;

VERMILION COUNTY, ILLINOIS, an
Illinois political subdivision unit of
government; DARREN DUNCAN, in his
capacity as Treasurer of Vermilion
County, Illinois; MATHEW LONG, in his
capacity as Clerk of Vermilion County,
Illinois;

WHITE COUNTY, ILLINOIS, an Illinois
political subdivision unit of government;
MIKE BAXLEY, in his capacity as
Treasurer of White County, Illinois;
KAYCI HEIL, in her capacity as Clerk of
White County, Illinois;

WHITESIDE COUNTY, ILLINOIS, an
Illinois political subdivision unit of
government; PENNY VANKAMPEN in
her capacity as Treasurer of Whiteside
County, Illinois; KAREN STAROW, in
her capacity as Clerk of Whiteside
County, Illinois;

WILL COUNTY, ILLINOIS, an Illinois
political subdivision unit of government;
TIM BROPHY, in his capacity as
Treasurer of Will County, Illinois;
KAREN STUKEL, in her capacity as
Clerk of Will County, Illinois;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

11

WILLIAMSON COUNTY, ILLINOIS, an )
Illinois political subdivision unit of )
government; ASHLEY GOTT, in his )
capacity as Treasurer of Williamson )
County, Illinois; AMANDA BARNES, in )
her capacity as Clerk of Williamson )
County, Illinois; )
)
WINNEBAGO COUNTY, ILLINOIS; an )
Illinois political subdivision unit of )
government; THERESA GRENN, in her )
capacity as Treasurer of Winnebago )
County, Illinois; and LORI GUMMOW, )
in her capacity as Clerk of Winnebago )
County, Illinois. )

Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS COOK COUNTY TREASURER MARIA PAPPAS, COOK COUNTY CLERK MONICA GORDON, AND THE COUNTY OF COOK'S MOTION TO DISMISS PLAINTIFFS SECOND AMENDED COMPLAINT

NOW COME the Plaintiffs, INTEGRITY INVESTMENT FUND, LLC, an

Illinois limited liability company, INTEGRITY INVESTMENT REO HOLDINGS,

LLC, an Illinois limited liability company, SIGTELLO, LLC, an Illinois series

limited liability company, and ABBOTT PORTFOLIO, LLC, an Illinois limited

liability company, by and through LAW FIRM OF DAVID G. SIGALE, P.C., their

attorney, and for their Response to the Defendants Cook County Treasurer Maria

Pappas, Cook County Clerk Monica Gordon, and the County of Cook's F.R. Civ. P.

12(b)(1), (6) Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. #200),

state as follows:

12

## TABLE OF CONTENTS

Introduction ……………………………………………………………….… 15

Statement of Facts …….......……………………………………………………... 15

Argument ……………………………………………………………………... 16

       F.R. Civ. P. 12(b)(1) Standard …………………………………………16
       F.R. Civ. P. 12(b)(6) Standard ………………………………………….16

I. Plaintiffs' Claims Are Justiciabile ……………………………………………. 17

    A. Plaintiffs have alleged imminent and threatened injury to establish
       standing for their claims ………………………………………………… 17

       <u>Plaintiffs Are Not Seeking an Advisory Opinion</u> …………………………….. 17

    B. Plaintiffs have standing for their requested relief ……………………………18

       1. Rescission and Reimbursement ……………………………………… 18

       2. Injunctive and Declaratory Relief ……………………………………. 20

II. The Statute of Limitations Has Not Run On Plaintiffs' § 1983 Claims ………... 28

III. Plaintiffs Properly State Their Claims For Relief …………………….…............ 30

    A. Plaintiffs Plead Allegations for *Monell* Liability ……............................ 30

    B. Count I - Plaintiffs Plead A Cognizable Fifth Amendment Takings
       Claim ……………………………………………………….............................. 34

       1. The Defendants Committed Unconstitutional Takings ………….. 37

       2. Whether the Indemnity Fund Provides "Just Compensation" …. 39

    C. Count III - Plaintiffs Plead A Cognizable Eighth Amendment
       Excessive Fines Claim …………………………………………………….. 43

    D. Count III - Plaintiffs Alternatively State A Valid Substantive
       Due Process Claim .......................................................................50

E.  Count IV - The Unconstitutional Conditions Doctrine Applies
to Plaintiff's Claims …………………………………………………..... 52

F.  Count VI - Cook County Has Been Unjustly Enriched
to Plaintiffs' Detriment ................................................................53

G. Count VII - Plaintiffs Have Stated A Claim for Equitable Estoppel ........ 54

H. Count IX - Plaintiffs Have Stated A Claim for Breach of Contract .......... 55

I.  Count XI - Plaintiffs' Prayer for a Stay or Tolling Should Not
Be Dismissed.........................................................................57

CONCLUSION ................................................................................59

## INTRODUCTION

Plaintiffs' Second Amended Complaint properly pleads its causes of action that Defendants' property forfeiture system unconstitutionally deprives delinquent property taxpayers of the surplus equity in their properties, and thus is violating their Fifth, Eighth, and Fourteenth Amendment rights. Relevant to this case, the Defendants' constitutional violations have forced Plaintiffs to either be accomplices to the equity theft, and/or suffer great financial hardship and potential ruin. Defendants claim they are innocent victims in this situation, merely following a State statute with no responsibility for the illegal consequences. While the State certainly bears responsibility, the County Defendants are not blameless. They should likewise be held accountable for selling toxic tax certificates to Plaintiffs, and Plaintiffs' Second Amended Complaint states causes of actions reflecting as such. Defendants also anchor their Motion to the concept of standing, but the harm Plaintiffs face is real and imminent, and can be remedied by this Court, and thus the facts and law do not support Defendants' assertions. Therefore, Defendants' Motion to Dismiss should be denied.

## STATEMENT OF FACTS

The Plaintiff's Second Amended Complaint (Dkt # 193) is incorporated as if fully restated herein.

15

## ARGUMENT

### Standard for Motion to Dismiss

### F.R. Civ. P. 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The standard of review for a Rule 12(b)(1) motion to dismiss depends on whether the defendant raises a facial or factual challenge. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Id.* "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly–Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

### F.R. Civ. P. 12(b)(6) Standard

"[W]hen considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the Court takes the allegations in the complaint as true, viewing all facts -- as well as any inferences reasonably drawn therefrom -- in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000); *Bell Atlantic Corp.*, 127 S. Ct. at 1955 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n. 1 [ ] (2002))." *Manuel v. Lyles*, 2008 U.S. Dist. LEXIS 51433, 5-6 (N.D. Ill. June 30, 2008).

Generally, a dismissal pursuant to Rule 12(b)(6) is appropriate only if there is no set of facts consistent with the pleadings under which the plaintiffs could obtain relief. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016). To survive such a motion the factual allegations of the complaint, accepted as true for the purpose motion, need only be "plausible" and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## I. Plaintiffs' Claims Are Justiciabile

### A. Plaintiffs have alleged imminent and threatened injury to establish standing for their claims.

Plaintiffs Are Not Seeking an Advisory Opinion

The harm caused to Plaintiffs by the unconstitutional PTC is not speculative, and not abstract. It is an ongoing situation which threatens Plaintiffs' financial viability, and which threatens to drag Plaintiffs into the same lawsuits that have ensnared Defendants, such as *Top Metal*, *Sharritt*, and *Kidd*. Defendants have been raising the issue in such cases of bringing in tax buyers as necessary parties, so the threat is real. Plaintiffs are not asking for advice; they are asking for relief.

It is logical that since Plaintiffs have standing to bring this suit, which requires real injuries which this Court can remedy, that this is not a scenario involving a mere advisory opinion.

The surplus equity theft inherent in the PTC implicates fundamental liberty interests – the Supreme Court and the Illinois federal Courts have said so. Plaintiffs are squarely in the middle, and are being severely harmed as a result. They are the holders of toxic tax certificates which they cannot convert to tax deeds

17

without arguably becoming state actors and violating the constitutional rights of the property owners, and/or incurring financial ruin. This harm is not hypothetical. Defendants argue that Plaintiffs are not "yet" encountering these alternatives, but that is only because they have so far declined from stealing the surplus equity and have instead come to this Court for relief.

The harm is also not conclusory – *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023), *Kidd*, *Sharritt* and *Top Metal Buyers* have laid bare the unconstitutionality of the PTC, and how the property owners must be compensated for their surplus equity. In *Kidd*, for example, the Cook County Defendants argued that responsibility belongs with tax buyers such as Plaintiffs (2025 U.S. Dist. LEXIS 252918 at *50). Defendants' argument must be rejected.

### B. Plaintiffs have standing for their requested relief.

Plaintiffs seek declaratory, injunctive, and, where appropriate, compensatory damages for their business losses. While it is true Plaintiffs need standing for a particular form of relief like they need standing for claims (*see, e.g., Simic v. City of Chicago*, 851 F.3d 734 (7th Cir. 2017)), Defendants seem to be arguing that Plaintiffs have standing for none of it. That is preposterous, especially at the pleading stage.

### Rescission and Reimbursement

Defendants do not refute Plaintiffs' assertions regarding their tax certificates, and even admit that "Plaintiff could be obligated to give the owners the surplus

equity once they obtained the tax deed" (Motion at p.7), which is exactly what Plaintiffs are asserting.

Defendants also state that "*Tyler* did not forbid states from seizing and selling property to recover the amount of taxes owed. 598 U.S. at 638 (citing *Jones v. Flowers*, 547 U.S. 220, 234 (2006)). It simply requires states to return to the owner any money left over after the property was sold to satisfy the past-due taxes (and collection fees) as just compensation. *Id.* at 637." Motion at p.7. Again, this is exactly what Plaintiffs are claiming. The problem, as properly pleaded in the Second Amended Complaint, is that the State is not about to pay the property owners anything, and the Counties are so far doing everything they can not to pay, either, while at the same time trying to put the burden of compensation on the tax buyers such as Plaintiff. Simply put, Plaintiff's tax certificates are (at best) worthless because should they be exchanged for a tax deed, Plaintiffs would have massive exposure.

Since it is clear from the Second Amended Complaint that Plaintiffs purchased the tax certificates (all pre-*Tyler*) relying on the PTC's provisions that they would be able to obtain tax deeds if no redemption took place, and the Counties holding out the same. Since Plaintiffs relied on those material misrepresentations to their detriment, rescission is an (but not the only) appropriate remedy. *See Archdiocese of Milwaukee v. Appeal of Doe*, 743 F.3d 1101, 1006 (7th Cir. 2014) ("To rescind a contract based on a fraudulent or material misrepresentation made during contract formation, the recipient must have justifiably relied on the

19

misrepresentation in deciding to enter into the contract."). Therefore, Plaintiffs have standing to seek the equitable remedy of rescission among its requested remedies.

Injunctive and Declaratory Relief

The Constitution requires that a plaintiff must have standing to bring suit in federal court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). To establish Article III standing, one must "prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (citing *Lujan*, 504 U.S. at 560-61; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

"[T]he party seeking judicial resolution of a dispute" must "'show that he personally has suffered some actual **or threatened injury** as a result of the putatively illegal conduct' of the other party." *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979)) (boldface added). Plaintiffs have so alleged in this case.

Defendants allege that Plaintiffs' injury is hypothetical, *see* Motion at p.13, but that is not true. Nor is Plaintiffs' injury a mere diminishment of expected profit. But even if it were, Defendants are wrong that Plaintiffs lack standing. While "[t]he Fifth Amendment . . . does not find a taking in a mere denial of the 'highest and best use,' *i.e.*, most profitable use, that would be available in the absence of

20

regulation . . . a regulation . . . can be a taking if its effect on a landowner's ability to put his property to productive use is sufficiently severe." *Yancey v. United States*, 915 F.2d 1534, 1540 (quoting *Florida Rock Indus. v. United States*, 791 F.2d 893, 900-901 (Fed. Cir. 1986), *cert. den.*, 479 U.S. 1053, (1987)). Regardless of whether the taking occurs because Plaintiffs' tax certificates are practically worthless after *Tyler*, or because Plaintiffs are either subject to liability for civil rights violations should they obtain tax deeds unless they pay large sums themselves to the property owners, Plaintiffs have standing to seek redress for their injuries.

"[E]ven if the Government's regulatory action were presumed to be reasonable, a compensable taking may still occur." *Yancey*, 915 F.2d at 1540. "In *Department of Agriculture v. Mid-Florida Growers, Inc.*, 521 So. 2d 101 (Fla. 1988), *cert. denied*, 488 U.S. 870 [ ] (1988), the court held that Florida's destruction of citrus trees tested and found not to be infected with citrus canker, a communicable viral disease, was a compensable taking, despite the fact that the action was a valid exercise of police powers." *Yancey*, 915 F.2d at 1540. Therefore, even though Plaintiffs are not challenging the *Tyler* decision, the Defendants' decisions to ignore *Tyler* while blindly following the PTC without providing for just compensation to the property owners (a failure noted by multiple Courts) has resulted in injury to Plaintiffs.

In the alternative, Plaintiffs have also sufficiently pled pre-enforcement standing. Pre-enforcement challenges satisfy standing requirements when there is a substantial risk of harm or an imminent injury, even if the injury is not yet

21

realized. The existence of a statute or penalty provision itself implies a threat of enforcement, which can establish the necessary injury for standing. *See Lozano v. City of Zion*, 2021 U.S. Dist. LEXIS 182056; *see also Conlon v. Sebelius*, 923 F. Supp. 2d 1126, 1130 (N.D. Ill. 2013) ("Challenges to standing may be made prior to the enforcement of a law. The 'existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purpose of standing.'"); *see also International Aerobatics Club Chptr. 1 v. City of Morris*, No. 13 C 04272, 2015 U.S. Dist. LEXIS 199104, at *13 (N.D. Ill. June 23, 2015) ("The subject of the dispute is not hypothetical; the City of Morris has an ordinance on the books that it maintains is valid and enforceable").

The issue in Defendants' Motion is whether Plaintiffs' inability to take their tax certificates and use them to obtain a tax deed without being liable for the surplus equity – either by up-front payment or after violating the property owners' civil rights under *Tyler* - puts them in a position of threatened injury. The multiple lawsuits alleging *Tyler* violations, including *Sharritt* where Counties are suing tax buyers, proves the injury – both actual and threatened – is real. Defendants' argument that Plaintiffs do not have standing until someone actually sues them for civil rights violations is preposterous, and a complete ignoring of Plaintiffs' right to make a pre-enforcement challenge. Further, Plaintiffs have standing to seek a declaration of the very-ripe questions of whether the PTC and the Defendants' failure to provide for surplus equity compensation are unconstitutional. If they are

not, then Plaintiffs will have the adjudication necessary to conduct their business. If the laws and the Defendants' actions *are* unconstitutional, Plaintiffs will likewise know to act accordingly. Either way, Plaintiffs have standing to seek a declaration as to how they can proceed.

Defendants list the steps of the tax deed sale process and suggest Plaintiffs do not suffer injury as there are multiple steps before a tax deed is granted. That is irrelevant because the outcome is set from the very beginning of the process.

To obtain an order for tax deed, the certificate holder must simply check the statutorily required boxes that that the period of redemption expired, subsequent taxes were paid, statutory notices were given, and any public funds advanced under Section 22-35 (police power) have been paid. 35 ILCS 200/22-40. "Upon receipt of sufficient evidence of the requirements under this subsection (a), the court shall find that the petitioner complied with those requirements and shall enter an order directing the county clerk, on the production of the tax certificate and a certified copy of the order, to issue to the purchaser or its assignee a tax deed." *Id.* The specific penalty (total forfeiture) is not relitigated during this "prove up" hearing. *Id.*

Therefore, the judgment of sale irrevocably commits the property, and all of its equity, whatever that amount may be, to forfeiture unless redemption occurs. Later proceedings are limited to verifying notice and statutory compliance; the penalty itself is already imposed at the time the judgement for tax is entered. The Defendants' claims that the taking is not complete until deed issuance is wrong in law and logic. Once penalty is imposed by the judgment, the owner is strapped into

23

a penalty scheme in which all surplus equity is irretrievably committed to government use unless redemption occurs. Therefore, the injury must be recognized and remedied at that penalty stage.

Thus, Plaintiffs' exposure to financial loss and/or civil rights liability is not a speculative harm contingent on uncertain future events but the inevitable final step in the statutory sequence. This certainty creates a live, concrete controversy under Article III. "Pocketbook harm is a traditional Article III injury. [*Tyler*], 598 U.S. 631, 636 [ ] (2023). That is so not only when a law directly imposes costs on a plaintiff, *see*, *e.g.*, *McGowan v. Maryland*, 366 U.S. 420, 430-431 [ ] (1961) (profits lost from Sunday-closing law), but also when a plaintiff "reasonably incur[s] costs to mitigate or avoid" the "'substantial risk'" of a harm caused by a statute, *Clapper* [*v. Amnesty Int'l USA*, 568 U. S. 398, 414, n.5 (2013)] (collecting cases)." *Bost v. Ill. State Bd. of Elections*, 2026 U.S. LEXIS 431, *17, 146 S. Ct. 513 (2026).

Further, as the Supreme Court explained in *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298 (1979), and reaffirmed in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–61 (2014), a plaintiff need not "await the consummation of threatened injury" before seeking judicial review when the challenged law subjects him to a credible and coercive threat of enforcement. Plaintiffs' circumstances therefore satisfy the constitutional requirement of imminence: the statutory structure guarantees that one or more types of injury will occur unless relief is granted, making their injury ripe for adjudication now.

24

As tax certificate holders of tax-delinquent properties in the Defendant Counties, Plaintiffs are subject to the unconstitutional Illinois PTC, and the Defendants' procedures that will ultimately result in the loss of property owners' surplus equity in their property unless either the Defendant Counties or the Plaintiffs compensate the property owners for that surplus equity. Per the pleadings, it is only a matter of "when" this happens to Plaintiffs. Defendants conclude this is not the case, but that is Defendants' mere speculation, which is ironically what Defendants accuse Plaintiffs of doing, and is not a basis for a Rule 12(b)(6) Motion.

Defendants claim that "[w]hat Plaintiffs really seek is an injunction allowing them to retain surplus equity after obtaining a tax deed with no liability to either Defendants or the property owners." Motion at p.8. If that is what the Courts eventually hold, that would answer Plaintiffs' concerns. However, based on *Tyler* and all the subsequent/current cases, that result is exceedingly unlikely. Even more important, Plaintiffs have an eleven-Count Complaint asserting exactly the opposite. And despite Defendants' assertions that "In the event Defendants are found liable to the property owners for lost equity, it would not be left to Defendants to decide what happens to the tax certificates Plaintiffs hold," Motion at p.8, the lawsuits such as *Sharritt* where the Counties are bringing third-party claims against tax buyers belie such arguments.

Finally, Plaintiffs are not claiming to stand in the shoes of the tax-delinquent property owners, and are not attempting to do so in ¶47 of the Second Amended

25

Complaint. In that paragraph, Plaintiffs are merely recognizing that – should they convert their tax certificate to tax deeds and take the subject properties, they would arguably be violating the § 1983 rights of the property owners and subjecting themselves to liability. At least, this is what the Defendants from DuPage and Lake County are asserting in, *e.g.*, Count II of their Third-Party Complaint against tax buyers such as Plaintiffs in the *Sharritt* lawsuit:

35.     The Class Third Party Defendants' policies and practices of failing to adequately, certainly, and reasonably compensate former property owners for the equity in properties which they confiscated or caused homeowners to cease to own and be deprived of is an actionable taking of private property (*i.e.*, the value of their homes in excess of the Tax Amounts due) without just compensation, if *Tyler* applies to the PTC, and a deprivation of rights secured under, *inter alia*, the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 15 of the Illinois Constitution.

36.     Furthermore, by seeking an unconstitutional order for the issuance of a tax deed which does not secure just compensation as mandated by the United States Constitution and Illinois Constitution, if *Tyler* applies to the PTC, the Class Third Party Defendants compelled the Third Party Plaintiffs to violate the former property owners constitutional rights.

37.     The Third Party Plaintiffs are sued in this matter for the violation of a class of former property owners' civil rights. The Class Third Party Defendants, potentially are acting as a state actor in order to deprive any party of their property without providing just compensation, and would be thereby liable under the former property owners' allegations for their conduct. Third Party Plaintiffs did not cause any party to lose their property without just compensation.

38.     Third Party Plaintiffs request this Court to order the Class Third Party Defendants to contribute their pro rata share of the damages which Third Party Plaintiffs are ordered to pay in the present suit to any and all former property owners.

39.     Third Party Plaintiffs request this Court to order the State Third Party Defendants to contribute their pro rata share of the damages which Third Party Plaintiffs are ordered to pay in the present suit to any and all former property owners.

40.    Third Party Plaintiffs assert that as ministerial government officials performing acts compelled either by State law or by court order, they are minimally responsible for any ordered damages, if Tyler applies to the PTC. The Third Party Defendants are solely responsible for the alleged takings and excessive fines claims filed against the Third Party Plaintiffs and used the Third Party Plaintiffs' limited authority to the benefit of Class Third Party Defendants' personal gain. Therefore, the Third Party Defendants, in portions that may be adjudicated by the Court, should contribute 100% of any and all damages and costs attributed to the Third Party Plaintiffs in this case be paid by the Third Party Defendants who are at sole fault for their unconstitutional laws.

*See* 1:23 CV 15838, Dkt. #124 at pp.8-10.

While the third-party defendant tax buyers in *Sharritt* are accused of actually obtaining the relevant tax deeds and keeping the surplus equity, the Plaintiffs chose instead to seek declaratory and compensatory relief as to the toxic tax certificates, with more than enough specificity to satisfy F.R. Civ. P. 65(d)(1)(B). And while Plaintiffs cannot predict the end results of the other lawsuits, there is an ongoing threat of harm to Plaintiffs that is in no way hypothetical. While Plaintiffs acknowledge that there are steps in between purchasing a tax certificate and obtaining a tax deed, that does not change the fact (or the allegations in the Second Amended Complaint) that Plaintiffs have purchased tax certificates from the County Defendants that – if exchanged for a tax deed – will subject Plaintiffs to huge financial repercussions. This is true even if some of the certificates are eventually redeemed by the property owners, which they were not at the time of filing. Further, despite Defendants' insinuations, Plaintiffs have pleaded that they possess tax certificates purchased from all the Defendant Counties.

27

## II. The Statute of Limitations Has Not Run On Plaintiffs' § 1983 Claims

Plaintiffs allege they did not purchase tax certificates post-*Tyler*. *See* Second Amended Complaint at ¶ 22, 38. Defendants seem to be arguing that Plaintiffs' injury occurred on the date the Supreme Court decided *Tyler*. However, that is untrue. Plaintiffs' injuries were not caused by the *Tyler* decision, as *Tyler* merely confirmed "classic" Fifth Amendment takings law. *See Kidd*, 2025 U.S. Dist. LEXIS 252918 at **43-44 (quoting *Tyler*, 598 U.S. at 639.

Rather, Plaintiffs' injuries are caused by the PTC and the Defendants' continuing failure to remedy the equity theft situation without laying all the financial burden at Plaintiffs' feet. Plaintiffs' injuries are ongoing and will continue into the future, so long as they possess tax certificates and the Defendants have no mechanism to prevent surplus equity theft from the tax-delinquent property owners on whose property Plaintiffs have purchased said certificates. "Where a tort involves repeated injury, the statute of limitations in Illinois begins to run from the date of the last injury or when the tortious acts cease." *Roark v. Macoupin Creek Drainage Dist.*, 316 Ill. App. 3d 835, 847 (4th Dist. 2000) (citing *Starcevich v. City of Farmington*, 110 Ill. App. 3d 1074, 1079 (3rd Dist. 1982)). "A continuing violation *** is occasioned by continuing unlawful acts and conduct, not [merely] by continual ill effects from an initial violation." *Roark*, 316 Ill. App. 3d at 847 (citing *Hyon Waste Management Services, Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 763 (1st Dist. 1991)). "If the injury is in fact ongoing, any limitations period would not have begun to run until the date of the last injury." *Roark*, 316 Ill. App. 3d at 847

(citing *Leckrone v. City of Salem*, 152 Ill. App. 3d 126, 137-38 (5th Dist. 1987)); *see also LAJIM, LLC v. GE*, 917 F.3d 933, 951 (7th Cir. 2019).

Explained another way, "[d[espite courts occasionally using the word 'toll' when applying the doctrine, the Illinois continuing tort doctrine governs only the point at which a claim accrues. *See Pitts v. City of Kankakee, Ill.*, 267 F.3d 592, 595 (7th Cir. 2001) ('The continuing violation doctrine is ... best characterized as a doctrine governing the accrual of a claim.'); *see also Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) ('[T]he correct characterization of the [Illinois] doctrine of continuing violation is that it is a doctrine governing accrual, ... not a tolling doctrine[.]' (citations omitted)); *Powell v. City of Danville*, 253 Ill. App. 3d 667, [669] ([4th Dist.]1993) ('There are situations where the tortious conduct is continuing, and the limitations period begins on the date of the last injury (the date the tortious acts cease).'). *NW Ill. Area Agency on Aging v. Basta*, 145 F.4th 695, 701-702 (7th Cir. 2025).

For example, in *Roark*, the government's continuing "failure to inspect and maintain a sewage drainage canal, failure to prevent the accumulation of silt and debris in it, and failure to prevent erosion along its banks are recurrent and ongoing injuries caused by negligent use, operation, and maintenance of the drainage canal." *Roark*, 316 Ill. App. 3d at 847. Here, the Defendants have been causing continuing injury by failure to remedy the unconstitutional system in place since *Tyler* was decided. That they instead blame Plaintiffs, similar to the counties blaming the tax buyers in *Sharritt*, does not change Defendants' continuing wrongdoing.

Therefore, the Motion to dismiss Counts I-VI should be denied in its entirety.

## III. Plaintiffs Properly State Their Claims For Relief

Defendants start this argument by once again misstating Plaintiffs' claims. Plaintiffs are not claiming the Defendants have wrongfully taken anything from them directly. Motion at p.13. Nor is it the collection of taxes that is at issue, it is the theft of the property owners' surplus equity that is unconstitutional, at least according to the Supreme Court.

### A.   Plaintiffs Plead Allegations for *Monell* Liability

At the outset, Plaintiffs wish to clarify: though Paragraphs 11-14 of the Second Amended Complaint states that the County Treasurers and Clerks are being sued in both official and individual capacities, Plaintiffs are only making claims against the County Defendants in their official capacities. If the Court wishes the Plaintiffs to clarify such in an amended pleading, Plaintiffs will of course do so.

However, regarding said official capacity claims, Defendants incorrectly argue that Plaintiffs' Second Amended Complaint fails to allege a "policy" or "custom" that "inflicts the injury" Plaintiffs have suffered, claiming Plaintiffs cannot sue the county treasurers or clerks in their official capacities under § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "[A] municipality can be liable under § 1983 only 'when execution of a government's policy or custom . . . inflicts the [constitutional] injury.'" *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Monell*, 436 U.S. at 694). The three avenues

plaintiffs have to proceed under *Monell* are "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citation omitted). In Paragraphs 34-37 of the Second Amended Complaint, Plaintiffs ties up the Defendants' wrongdoing which is alleged through the Second Amended Complaint.

Defendants' argument was rejected in *Kidd v. Pappas*, where the Court held:

> A reasonable fact finder could find that if the tax sales did result in unconstitutional takings and fines, the risks of that in conducting tax sales was obvious to the County. Cook County arguably had every piece of information needed to know that its failure to compensate property owners created a high risk of constitutional violations:  tax sales often led to the issuance of tax deeds without compensation to homeowners; a transferred property could be worth more than the property owner's outstanding tax debt; and the Indemnity Fund, which is supposed to compensate homeowners for lost equity, was severely underfunded and backlogged.

*Kidd*, 2025 U.S. Dist. LEXIS 252918 at *43.

> The defendants may argue that they could not have known of this risk because the Supreme Court's decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023)—which formally concluded that a county's retention of excess equity violated the Fifth Amendment's Takings Clause—only came out in 2023. Yet the Supreme Court was not imposing any new obligation onto counties in *Tyler*. Instead, the Court was interpreting the preexisting obligations counties have to pay just compensation for taken property under the Fifth Amendment's Takings Clause—a clause that has imposed restrictions on local governments since 1897. *See Chi., B. & Q. R. Co. v. City of Chicago*, 166 U.S. 226, 241 (1897) (incorporating the Fifth

> Amendment's Taking Clause onto the states and local governments through the Fourteenth Amendment). And the Court in *Tyler* held—unanimously—that counties' "use [of] the toehold of the tax debt to confiscate more property than was due" was a "*classic* taking." *Tyler*, 598 U.S. at 639 (emphasis added).
>
> A reasonable fact finder could find that the defendants knew that the Fifth Amendment prohibited the taking of property without just compensation and that the tax sales often led to properties being transferred despite property owners not being compensated for the excess equity in their properties. Further, a reasonable fact finder could find that by conducting those tax sales without providing a sufficient means to reacquire lost excess equity, the defendants ignored the obvious risk that property owners who had their property transferred without just compensation would have their constitutional rights violated.

*Kidd*, 2025 U.S. Dist. LEXIS 252918 at **43-44. This is why Defendants' argument about *Tyler* not yet being applied to the PTC fails, just like it was rejected in substance in *Top Metal*, *Sharritt,* and *Kidd.*

"What actually results in property owners losing their property—in this case, being deprived of their equity—is not the state-imposed processes for conducting a tax sale, but the refusal of the seller—the County—to compensate owners for their lost equity after the sale is completed. That is in no way mandated by state law. The County has an independent obligation to comply with the Constitution's mandate of fair compensation for the taking of property. Nothing in the Property Tax Code prohibits or even hinders County from doing so. The fact that no Illinois statute affirmatively requires the County to comply with the Constitution's mandate does not immunize the County for its own actions or inactions, nor does it

32

make the Treasurer an arm of the state when she fails to provide just compensation." *Kidd*, 2025 U.S. Dist. LEXIS 252918 at \*\*46-47.

This is why Defendants' citation to *Bethesda Lutheran Homes & Servs. v. Leean*, 154 F.3d 716 (7th Cir. 1998) is misplaced. "Municipal liability under § 1983 attaches where-- and only where--a deliberate choice to follow a course of action is made from among various alternatives." *Id.* at 718-19. Contrary to Defendants' assertions about rigidly being forced to follow state law, the policy triggering *Monell* liability is the County Defendants' choice to disregard the long-standing law as laid out in *Tyler* by refusing to pay property owners the compensation the U.S. Constitution requires.

Therefore, Plaintiffs' allegations go beyond accusing Defendants of simply following the law. Rather, it is Defendants' official policy and custom that they "were aware or should have been aware of the PTC's constitutional flaws [of "extinguish[ing] owners' equity without compensation through its "take all" system, imposing a punitive sanction disproportionate to tax debts" and "not reform[ing] the PTC, issu[ing] moratoriums, or offer[ing] relief to Plaintiffs"], yet continued to enforce it." *See* Second Amended Complaint at ¶¶20-21, 34-36. The treasurers and clerks "have final policymaking authority," and nothing requires or compels any Defendant to refrain from paying just compensation to property owners whose properties were sold for tax delinquencies. (see ¶¶20-21 of Second Amended Complaint). As the Court must accept these allegations as true, *see Kubiak*, 810 F.3d at 480–81, and as currently pleaded Plaintiffs satisfy *Monell*'s requirement to

allege "that the constitutional injury was caused by a person with final policymaking authority." *Bureau*, 506 F.3d at 515.  Plaintiffs 42 U.S.C. ¶ 1983 claims therefore state causes of action under *Monell*.

### B.    Count I - Plaintiffs Plead A Cognizable Fifth Amendment Takings Claim

The Takings Clause of the Fifth Amendment to the United States ,Constitution, applicable to the States through the Fourteenth Amendment, states that "private property [shall not] be taken for public use, without just compensation." U.S. const., amend. V. To assert a takings claim under the Fifth Amendment, a plaintiff must allege "(1) that the governmental entity 'took' his property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).

While the "purpose" of the PTC may not be "to assist tax petitioners in depriving the true owners of their property," *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, *17, when it comes to the surplus equity taken *via* the tax deeds issued under the PTC, that is surely the effect, and it is also the "carrot" used to induce tax buyers to bid at the tax auction.

"[W]hat the tax sale procedure does is sell the county's equitable remedy to a third party, the tax purchaser. In this way, the tax sale procedure provides immediate income to the county. In order to incentivize the purchase of the county's equitable remedy, the statutory framework enlarges the remedy by putting the

tax purchaser in a position to take the property entirely if the taxes are not paid in the form of a redemption. Notwithstanding the expansion, the tax purchaser still owns, as modified, the county's equitable remedy against the property for nonpayment of taxes. His petition for a tax deed is merely finishing the sale that the county started for nonpayment of taxes." *In re LaMont*, 740 F.3d 397, 408-409 (7th Cir. 2014).

Even if the alternative view is adopted, "the Illinois Appellate Court reemphasized that a 'tax certificate, prior to its redemption and issuance of a tax deed, is a mere species of personal property, and does not give its purchaser any equity or title to the property' and 'a certificate holder has no real property interest in the land until the certificates have been redeemed and the petition for a tax deed has been granted.' *Petition of Conrad Gacki Profit Sharing Fund (PJA Investments, Ltd. v. Conrad Gacki Profit Sharing Fund)*, [ ] 634 N.E.2d 1281, 1282-83, [ ] (1994) (citing *Wells v. Glos*, 277 Ill. 516 [ ] (Ill. 1917)). In fact, to the extent the Illinois Appellate Court has recognized any interest in the real property, it has been limited to those rights conferred statutorily by the Illinois property tax code. *See In re Application of Cnty. Collector (Edward Scott, LLC v. Nadine Sackor)*, [ ] 909 N.E.2d 337, 340-42 [ ] (Ill. App. Ct. 2009) (cataloguing statutory rights and concluding that, because of those rights, a tax purchaser had enough 'interest[] in the property')" *In re LaMont*, 740 F.3d at 405.

"In sum, we will not abstract [the tax buyer's] interest into a future interest in real property, but will treat it as the unique statutory creature that it is. What

[the tax buyer] holds is what Illinois courts refer to as a 'species of personal property, a lien for taxes.' *Wiebrecht*, 304 N.E.2d at 12. The peculiarity of his interest is that, if the debtors' real property is not redeemed, he may obtain not just the value of his 'lien' but may take the real property in its entirety. Because the statutory framework provides this possibility of ownership in the future, the code also provides him with some rights to protect that interest, such as the right to petition for appointment of a receiver to prevent waste. *See* 35 ILCS 200/22-80. Accordingly, Illinois has given tax purchasers an unusual tax lien." *In re LaMont*, 740 F.3d at 406.

Defendants cannot credibly argue that the failure to return surplus equity to delinquent property owner is not unconstitutional, not after *Tyler* and the subsequent Illinois cases. Rather, Defendants argue that Plaintiffs are not being injured such that they can plead a Fifth Amendment violation. This is simply incorrect

Defendants argue that no takings occurred because private tax buyers—not the county governments—received the surplus equity from any properties whose value exceeded the amount of property tax due, so the Fifth Amendment does not apply. However, the Defendants' actions/inactions violate the Fifth Amendment regardless of whether they or tax buyers such as the Plaintiffs receives the benefit of the taking that is the surplus equity.

## 1. The Defendants Committed Unconstitutional Takings.

Defendants also argue that Plaintiffs have not alleged a taking because Illinois counties do not themselves receive any funds that exceed the amount due for delinquent property taxes. Defendants argue that the Fifth Amendment only prohibits the government from collecting and retaining any surplus property value in excess of the delinquent property taxes due as part of a tax sale. Defendants argue that the provisions of the Illinois PTC accordingly cannot violate the Fifth Amendment because the municipal governments do not collect or retain any more than the amount of property taxes to which they are entitled because tax buyers only pay them the Tax Amounts in exchange for the right to place a lien on and perhaps eventually take title to a delinquent property owner's property. In Defendants' eyes, it is irrelevant that the original owners who ultimately lose title to their property to tax buyers suffer a greater loss than what they owed in delinquent property taxes because any excess loss goes to the tax buyer, who is a private entity. This is the basis of the third-party pleadings against the tax buyers in *Sharritt.*

The Court in *Sharritt* addressed this issue, and held that "the Fifth Amendment makes it unconstitutional for original property owners to lose more equity than what they owed in property taxes without compensation, regardless of who ultimately benefits. Defendants' attempt to pass the buck to the tax buyers is a red herring because the Fifth Amendment does not care whether the government or a private party receives the windfall; what matters is that it is unconstitutionally

37

coming out of the original owner's pocket." *Sharritt*, 2024 U.S. Dist. LEXIS 189825 at \*33.

"Defendants' argument defies the Fifth Amendment's text and established Supreme Court precedent. The Fifth Amendment prohibits the government from "tak[ing] for public use" privately-owned property. It does not limit this prohibition to situations where the government also *retains* the property: "a State may transfer property from one private party to another if future 'use by the public' is the purpose of the taking." *Kelo v. City of New London*, 545 U.S. 469, 477 (2005); *see also Haw. Housing Auth. v. Midkiff*, 467 U.S. 229 (1984) (finding constitutional a state law authorizing use of condemnation proceedings to seize land from large landowners—with compensation—for purpose of transferring title to renters or other local Hawaiians). Indeed, the Illinois tax sale system is essentially a mechanism for the counties to "transfer property from one private party to another" for the eminently justifiable purpose of recovering overdue taxes. *Kelo*, 545 U.S. at 477. Nothing in the Fifth Amendment requires property "taken for public use" to remain in the government's hands." *Sharritt* , 2024 U.S. Dist. LEXIS 189825 at \*\*33-34.

In *Kidd*, the Cook County Defendants demonstrated why Plaintiffs not only have standing to being this suit, but also why Plaintiffs are injured by the Government's collective Catch-22:

> … the County only obtains a tax lien on the property, which is then sold to a tax buyer for the amount of unpaid taxes due. Only if the delinquent property owner fails to redeem the property after Cook County's tax sale can the tax buyer obtain a

deed to the property.  According to the defendants, **this means the tax buyer is the party responsible for the taking**—not the County, Treasurer, or State. But the fact that a tax buyer might also have violated the Takings Clause does not immunize the defendants' facilitation of the transfer of property without just compensation. "A permanent physical occupation authorized by state law is a taking without regard to whether the State, or instead a party authorized by the State, is the occupant." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432 n.9 (1982) (emphasis added).

*Kidd*, 2025 U.S. Dist. LEXIS 252918 at * 50.

As pleaded in Plaintiffs' Second Amended Complaint, the PTC and the Defendants' Fifth Amendment violations of failure to compensate property owners for taken surplus equity has left the Plaintiffs with three options – lose their investments, pay the surplus equity themselves out-of-pocket, or take the surplus equity and become civil rights defendants themselves. All of these choices cause financial hardship and/or liability to Plaintiffs. The *Kidd* Plaintiffs have received summary judgment on their Fifth Amendment claim. *Id.* at *55. Though addressing the situation from a different angle, the Plaintiffs have likewise stated a cause of action. Therefore, Plaintiffs have stated a claim for a taking under the Fifth Amendment to the U.S. Constitution.

### 2. Whether the Indemnity Fund Provides "Just Compensation"

Defendants also argue that the existence of the Indemnity Fund forecloses at least part of Plaintiffs' takings claim, because the Indemnity Fund provides constitutionally sufficient compensation. This too charitably describes the machinations of the Indemnity Fund. The statute authorizing the Indemnity Fund provides that a petitioner seeking indemnity from the loss of property in a tax sale

39

may only recover "the fair cash value of the property as of the date the tax deed was

issued less any mortgages or liens on the property, and the award will not exceed

$99,000." 35 Ill. Comp. Stat. 200/21-305(1). Awards for $99,000 or less are only

granted if, "in the discretion of the [petitioned] Court, the equities warrant the

action." *Id.* If the petitioner requests even a penny more, he must show that "the

loss of his . . . property was not attributable to his . . . own fault or negligence." *Id.*

Further, the Indemnity Fund is merely a post-deprivation form of relief that

limits the amount a petitioner is entitled to recover—if at all based on a court's

equitable judgment—and imposes a stricter evidentiary burden on recoveries

greater than an arbitrary amount. See 35 Ill. Comp. Stat. 200/21-305(1). In other

words, under the Indemnity Fund, a petitioner has no guarantee of recovering

anything and the total amount depends on the whims of the reviewing court's

equitable balancing, which can lead to uncertain outcomes. *See Mamloff v. Kerr*,

227 Ill. 2d 118, 125 (2007) ("In its broadest and most general signification, [equity]

denotes the spirit and the habit of fairness, justness, and right dealing which would

regulate the intercourse of men with men." (quotations omitted)).

Second, for many of these same reasons, the Indemnity Fund is no substitute

for "just compensation." U.S. Const. amend. V. As noted, the Indemnity Fund's

governing law requires a Court to find that "the equities warrant" payments of up to

$99,000, and that the property owner was not negligent if he claims indemnity for

any more than that amount. 35 Ill. Comp. Stat. 200/21-305(1). But the Supreme

Court has long and consistently held that compensation "must be a full and perfect

40

equivalent for the property taken." *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 326 (1893); *see Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235–36 (2003) ("[T]he 'just compensation' required by the Fifth Amendment is measured by the property owner's loss rather than the government's gain."); *United States v. Miller*, 317 U.S. 369, 373 (1943) ("[C]ompensation means the full and perfect equivalent in money of the property taken."); *Kimball Laundry Co. v. United States*, 338 U.S. 1, 23 (1949) (Douglas, J., dissenting) ("The truth of the matter is that [in this case] the United States is being forced to pay not for what it gets but for what the owner loses."); *Olson v. United States*, 292 U.S. 246, 255 (1934) (compensation's "equivalent is the market value of the property at the time of the taking contemporaneously paid in money"); *Boston Chamber of Com. v. Boston*, 217 U.S. 189, 195 (1910) ("[T]he question is what has the owner lost, not what has the taker gained."); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 717 (1999) ("When the government repudiates this duty [to provide just compensation for a taking], either by denying just compensation in fact or by refusing to provide procedures through which compensation may be sought, it violates the Constitution."). A procedure that does not provide certain and full compensation, such as the Indemnity Fund, is therefore constitutionally deficient as a mechanism to satisfy the Fifth Amendment.

"*Colantuono v. Novak*, 2011 IL App (2d) 100957-U, illustrates why the Indemnity Fund fails to satisfy the Fifth Amendment. In that case, the Illinois Appellate Court upheld a lower court's finding that a petitioner was not entitled to

any recovery after losing his property to tax sale proceedings (*i.e.*, there would be no compensation). The trial court faulted the petitioner for failing to act after receiving several notices of his delinquent property taxes and one notice informing him that "his property had been sold and he had less than five months to redeem the property." *Id.* ¶ 21. 'Based on the petitioner's repeated failures to act after learning that his delinquent taxes had not been paid,' the appellate court found the trial court's decision to deny him equitable recovery proper. *Id.* Instead of providing the original owner "the full and perfect equivalent in money of the property taken," *Olson*, 292 U.S. at 255, the government paid him nothing. The Indemnity Fund cannot both be the proper procedure that former owners can exercise to receive compensation for their lost land, . . . ("Post-Tyler, there is no takings claim at all if the statutory framework includes a surplus return mechanism. That is what the Indemnity Fund is."), and a gatekeeping mechanism that prevents those who lost their land from receiving compensation, *see Colantuono*, 2011 IL App (2d) 100957-U, ¶ 21. **In its current form, the Indemnity Fund is not a font of just compensation that satisfies the Fifth Amendment's clear compensation requirement**. *See Monongahela Navigation Co.*, 148 U.S. at 326 (just compensation is 'a full and perfect equivalent for the property taken')." *Sharritt*, 2024 U.S. Dist. LEXIS 189825 at *41 (boldface added).

Therefore, Count I of Plaintiffs' Second Amended Complaint states a claim that the Defendants' statutes, policies, and procedures mandate unconstitutional takings without compensation.

### C. Count III - Plaintiffs Plead A Cognizable Eighth Amendment Excessive Fines Claim

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Plaintiffs claim that the wholesale loss of the property owners' equity pursuant to Illinois' PTC constitutes an excessive fine that violates the Eighth and Fourteenth Amendments to the U.S. Constitution, *see Timbs v. Indiana*, 586 U.S. 146, 151 (2019) (incorporating the Eighth Amendment against the States).

The Excessive Fines Clause requires a two-step analysis. First, a court must determine whether "the sanction is punitive or purely remedial." *Grashoff v. Adams*, 65 F.4th 910, 916 (7th Cir. 2023). "Because the Eighth Amendment 'limits the government's power to extract payments . . . as punishment for some offense,'" *Austin v. United States*, 509 U.S. 602, 60910 (1993), only punitive sanctions fall within its scope; purely remedial sanctions are not subject to Eighth Amendment scrutiny." *Id.* (cleaned up). Civil penalties can constitute punishment if they serve "retributive or deterrent purposes." *Id.* (quoting *Towers v. City of Chicago*, 173 F.3d 619, 625 (7th Cir. 1999)).

If the sanction is punitive, then the second step is to determine whether it is "grossly disproportional to the gravity of [the] . . . offense." *Grashoff.* 65 F.4th at 916-17 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). "The touchstone of the constitutional inquiry . . . is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *Grashoff.* 65 F.4th at 916-17.

43

In Count II, Plaintiffs claim that Defendants, through the PTC and the County seizures and auctions, levied excessive fines on the tax-delinquent property owners in violation of the Eighth Amendment. Specifically, Plaintiffs allege that "if the loss of surplus equity is an excessive fine on the property owner under the Eighth Amendment, then forcing Plaintiffs to either lose their investment or pay the surplus equity so the property owner has her rights vindicated is merely shifting the excessive fine onto Plaintiffs, whose Eighth Amendment rights are violated as a result." Second Amended Complaint at ¶48. In that very real sense, the excessive fine will not be imposed on the property owner; it will be imposed upon Plaintiffs.

Defendants chose to take the surplus value from delinquent property taxpayers, which is a punitive policy designed to punish lawbreakers and to disincentivize others from breaking the law. Moreover, the sanction is grossly disproportional to the gravity of the offense, considering some property owners forfeit surplus equity valued far in excess of the cost of their unpaid taxes. The sanction on property owners is punitive.

With respect to the first prong of the Eighth Amendment analysis, the Excessive Fines Clause applies to any statutory scheme that "serv[es] in part to punish." *Austin*, 509 U.S. at 610. In other words, if a challenged penalty "cannot fairly be said solely to serve a remedial purpose," then a court must examine it through the lens of the Eighth Amendment. *Id.* Given that the amount of equity a property owner loses in Illinois' tax sale procedures is inherently variable

44

depending on the value of the property, whether there was a mortgage or other liens against it, and other factors, its forfeiture is "a *penalty* that ha[s] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law." *United States v. Ward*, 448 U.S. 242, 254 (1980) (emphasis added). And, as Illinois courts have recognized, the threat of losing property serves as a method of "*coerc[ing]* tax delinquent property owners to pay their taxes," *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17 (emphasis added), meaning that the loss of property does not "*solely* [] serve a remedial purpose," *Austin*, 509 U.S. at 610. Accordingly, the Excessive Fines Clause to the Eighth Amendment applies. *See Grashoff*, 65 F.4th at 916.

As the *Kidd* Court noted: "It is undisputed that Cook County's tax sales have a punitive purpose. Illinois courts acknowledge that 'the primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes.' *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17, [ ] (quoting *In re Application of the Cnty. Collector*, 295 Ill. App. 3d 703, 710 [ ] (1998)).  Fines meant to coerce action do not 'solely . . . serve a remedial purpose.' *Austin v. United States*, 509 U.S. 602, 621 (1993) (citation omitted). In fact, coercing action is a paradigmatic goal of punishment. *Cf. Timbs*, 586 U.S. at 153 (describing states' 'use of fines to coerce involuntary labor' as an example of excessive fines prohibited by the Eighth Amendment that the Fourteenth Amendment was passed to address)." *Kidd v. Pappas*, 2025 U.S. Dist. LEXIS 252918 at *56.

45

Illinois appellate courts have held that the purpose of the tax sale procedure is to encourage buyers at tax sales, increase the collection of taxes by government authorities, and to free land to reenter the stream of commerce and again shoulder the burden of its share of taxes. *See City of Bloomington v. John Allan Co.*, 310 N.E.2d 437, 446 (Ill. App. Ct. 1974). Defendants also argue that the Defendant Counties receive nothing more than the delinquent taxes, penalties, and interest due; no part of the surplus value goes to them.

However, *In re County Treasurer*, 3 N.E.3d 431, 435 (Ill. App. Ct. 2013), states that the purpose of the tax deed system is actually to "coerce tax delinquent property owners to pay their taxes," meaning it is not simply remedial in nature. Moreover, as the court in *Sharritt* recognized, given that the amount of equity property owners lose in the tax sale procedure is inherently variable, the forfeiture of that surplus value is a penalty that has no correlation to the amount of taxes owed to the county.

In *Tyler*, the Supreme Court elected not to decide whether the plaintiff had also alleged an excessive fine under the Eighth Amendment. But in his concurrence, Justice Gorsuch, joined by Justice Jackson, explained that "the Excessive Fines Clause applies to any statutory scheme that "serv[es] in part to punish." *Tyler*, 598 U.S. at 648 (Gorsuch, J., concurring) (quoting *Austin v. United States*, 509 U.S. 602, 610 (1993) (emphasis added)). "It matters not whether the scheme has a remedial purpose, even a predominantly remedial purpose. So long as the law 'cannot fairly be said solely to serve a remedial purpose,' the Excessive Fines Clause applies." *Id.*

46

Indeed, he noted, "a statutory scheme may still be punitive where it serves another 'goal of punishment,' such as '[d]eterrence.'" *Id.* at 649 (quoting *Bajakajian*, 524 U.S. at 329). "Economic penalties imposed to deter willful noncompliance with the law are fines by any other name. And the Constitution has something to say about them: They cannot be excessive." *Id.* at 649-50.

<u>The seizure of surplus equity is grossly disproportional to the property owners' offense.</u>

The Court should then consider if the fine is "grossly disproportional to the gravity of [the] . . . offense." *Bajakajian*, 524 U.S. at 334. This entails weighing four factors: (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fit into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct. *United States v. Malewicka*, 664 F.3d 1099, 1104 (7th Cir. 2011).

The allegations in Plaintiffs' Second Amended Complaint show that their loss - of value in the tax certificates and/or payment of surplus equities and/or civil liability for not paying surplus equities - satisfies these factors. Although the property owners' failure to pay property taxes obviously merits some sort of monetary penalty, the loss of all equity a landowner holds in their property is likely "grossly disproportional to the gravity of" the offense. *Bajakajian*, 524 U.S. at 334; *see id.* at 337–39 (forfeiture of $357,144 is grossly disproportionate compared to seriousness of reporting statute). This is because "the maximum . . . fine" is indefinite and undefined: it depends entirely on the value of the properties the tax

debtors once owned and bears little relation to the amount of property taxes they failed to pay to the municipal governments. *Malewicka*, 664 F.3d at 1104. Moreover, due to the factual nature of these questions, it would be premature to conclude whether Plaintiffs' loss of the value of the tax certificates and/or liability to compensate the property owners for the surplus equity in their properties does or does not violate the Eight Amendment. *Cf. United States v. Real Prop. Located At 1912 SE 15TH Ave. Gainesville FL with all improvements & appurtenances thereon*, No. 06 C 138, 2010 WL 2136044, at *8 (N.D. Fla. May 25, 2010) ("In sum, because of these disputed factual issues, the Court concludes that summary judgment is not appropriate regarding the issue of whether the forfeiture is an excessive fine.").

Defendants misconstrue Plaintiffs' Eighth Amendment claims altogether. Though there is an element of lost profits which will presumably have to be proven at trial, the crux is that the Defendants have sold the Plaintiffs toxic certificates, which can only subject Plaintiffs to severe financial obligations and/or civil liability. They are either worthless, or less-than-worthless, because the Defendants have unconstitutionally failed to implement any mechanism to compensate the property owners whose properties they seize for their surplus equity. *See Kidd*, 2025 U.S. Dist. LEXIS 252918 at *61 ("the Court concludes that the loss of excess equity as a result of Cook County's tax sales is an excessive fine in all residential property cases"). This is not speculative; it is happening right now.[1] This means that

---

[1] Reportedly, a few Counties (Plaintiffs are aware of Cook and Rock Island, though there may be others) are beginning to take steps to either account for the return of surplus equity

Plaintiffs will ultimately either be imposing the excessive fine by obtaining the tax deed including the surplus equity, or paying the excessive fine themselves by providing the compensation to the property owner out of their pockets. The only other choice for Plaintiffs is to abandon the tax certificate altogether, which will likewise mean the only ones getting penalized are the Plaintiffs.

Defendants twist the Plaintiffs' excessive fine claim as if they are alleging *they* are the ones being fined, but that is not the case. Nor is this a simple case of a lousy investment. Their injury comes from being enticed by Defendants to buy into an unconstitutional system which repeatedly has violated the Eighth Amendment rights of those affected. *See Kidd*, 2025 U.S. Dist. LEXIS 252918 at *58 ("By facilitating the tax sales that resulted in the loss of this excess equity, the defendants have imposed a fine on these homeowners that is subject to Eighth Amendment scrutiny"). Plaintiffs stand to suffer catastrophic financial losses resulting from their unwitting[2] involvement without relief from this Court. The Defendants may not be penalizing the Plaintiffs directly, but they are certainly shifting the penalties onto Plaintiffs.

Accordingly, Plaintiffs' Second Amended Complaint states a claim for a violation of the Excessive Fines Clause of the Eighth Amendment. Defendants' Motion to dismiss Count II of Plaintiffs' Second Amended Complaint should be denied.

---

and/or the courts are refusing to order the issuance of tax deeds. But a few piecemeal steps fall far short of any comprehensive solution, and certainly does not remedy Plaintiffs' situation.

[2] Plaintiffs did not purchase any tax certificates from the Defendants after the *Tyler* ruling.

49

### D. Count III - Plaintiffs Alternatively State A Valid Substantive Due Process Claim

Plaintiffs acknowledge that their due process claims cannot be brought alongside their Fifth and Eighth Amendment claims, since "if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

However, should the Court determine the Fifth and Eighth Amendments do not apply in this case (a conclusion, of course, with which Plaintiffs disagree), Plaintiffs assert their Fourteenth Amendment substantive due process property rights in the tax certificates are injured by the PTC and the Defendants' failures to compensate property owners for surplus equity. "A property interest under the Fourteenth Amendment Due Process Clause 'is an individual entitlement grounded in state law, which cannot be removed except for cause.'" *Bevers v. City of Dallas*, 2026 U.S. Dist. LEXIS 7611, *4 (N.S. Tex. 2026). Plaintiffs' tax certificates, purchased pursuant to the State PTC and from the Defendant Counties, qualify as property interests. "If a contract creates rights specific enough to be enforced in state court by awards of damages or specific performance, then it creates a legitimate claim of entitlement; and if it creates such a claim, it is 'property." *Khan v. Bland*, 630 F.3d 519, 529 (7th Cir. 2010) (quoting *Mid-Am. Waste Sys., Inc. v. City of Gary, Ind.*, 49 F.3d 286, 290 (7th Cir. 1995)). And even if the Court only looks to whether the Defendants eventually show "a reasonable relation to a

50

legitimate state interest" (*see Wash. v. Glucksberg*, 521 U.S. 702, 722 (1997)), the continued systematic surplus equity theft by the Government, while attempting to leave Plaintiffs with the burden of restitution, fails the reasonableness test.

Further, [t]he Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause. Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). While the tax certificates at issue are clearly products of state and/or county law, their nature as property interests affords them Fourteenth Amendment Due Process protection.

Defendants cite to *Muscarello v. Ogle County Bd. of Comm'rs*, 610 F.3d 416 (7th Cir. 2010), but that case is inapposite, as the plaintiff was claiming a property interest in the government lifting a zoning restriction on someone else's property. *Id.* at 423. Here, Plaintiffs' claim is based on their own certificates, which are presently stripped of value and which subject Plaintiffs to liability and/or financial injury should they exchange them for tax deeds. Interestingly, the Court characterized plaintiff's claim for "diminuation of investment-backed expectations" as a takings claim. *Id.* But if this Court disagrees, then Plaintiffs have a property interest in their own property. Defendants' solution to Plaintiffs' injuries is "they can avoid "participating" in an unconstitutional taking by simply paying the surplus

51

equity to those former owners." Motion at p.22. According to Defendants, therefore, the remedy for Plaintiffs' imminent injuries is simply to go ahead and suffer the injuries. At the same time, Defendants suffer nothing. That is unacceptable. Therefore, Defendants' Motion to Dismiss Count III should be denied.

### E. Count IV - The Unconstitutional Conditions Doctrine Applies to Plaintiff's Claims

Defendants offer their interpretation of the unconstitutional conditions doctrine, and construe it as narrowly as possible, but it does not change that Plaintiffs have properly pleaded a cause of action.

At the time Plaintiffs purchased the subject tax certificates, the law – as applied to tax buyers – was as stated in *Balthazar v. Mari, Ltd.*, 301 F. Supp. 103, 106 (N.D. Ill. 1969): "The total forfeiture seems extremely harsh when overdue taxes amount to only two or three percent of the property's value. But oppressive statutes must be tempered by the legislature, not the courts." The *Balthazar* Court also cited to *Nelson v. New York City*, 352 U.S. 103, 110-111 (1956), where the Supreme Court stated the same principle "unless some constitutional guarantee is infringed." *See Balthazar*, 301 F. Supp. at 106. Fast forward to 2023, and the *Tyler* Court says the *status quo* is now an infringement of the property owners' rights. This means that the condition of Plaintiffs receiving the benefit of participating in tax auctions, even those pre-*Tyler,* is that they either have to violate the property owners' rights or compensate them. Either way, the Counties recoup the delinquent taxes, and Plaintiffs receive threats of financial ruin and civil liability due to the infringement of the property owners' Fifth and Eighth Amendment rights, which

52

would occur once Plaintiffs take the full value of what they purchased at the tax auction. Defendants want to limit the availability of the unconstitutional conditions doctrine to the property owners, but they received nothing that could be called a benefit. Plaintiffs did receive a benefit, but with unconstitutional strings attached.

If Defendants want to argue about the mechanics and procedures of the tax auctions – including who gets to participate and the requirements therefor – that should be done during discovery, not a Motion to Dismiss where all inferences must favor the Plaintiffs. Defendants' Motion to dismiss Count IV should be denied.

### F.  Count VI - Cook County Has Been Unjustly Enriched to Plaintiffs' Detriment

Though actually brought under § 1988, Plaintiffs respond as alleged in Defendants' Motion. To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672 (Ill. 1989).

In Count VI, Plaintiffs claim that Defendants have been unjustly enriched by the sale of the tax certificates themselves, which saddle the Plaintiffs with liability while the Defendants get their tax money at Plaintiffs' expense. And if the property owners make a *Tyler* claim against the Defendant Counties, they blame the tax buyers and claim the Counties only collect taxes, such as certain Defendants are already doing in *Sharritt*, and as they are arguing here.

Defendants claim they receive no benefit from collecting taxes, but that *is* the benefit, Defendants' characterizations to the contrary notwithstanding. It is irrelevant that Defendants are owed the taxes. It is obvious that when property owners do not pay their taxes, it burdens the Counties and their other residents. If there was no benefit to collecting those unpaid taxes, there would be no need for the PTC. But that benefit comes from – in this case – the Plaintiffs, who bought the certificates because there was to be a financial benefit to them as well. But since the Supreme Court declared the PTC's equity theft unconstitutional in *Tyler*, the Counties wish to retain *their* benefits while leaving the Plaintiffs holding the bag. That is the definition of unjust enrichment.

In light of the above, Defendants' Motion to dismiss Count VI should be denied. However, Plaintiffs will ask to remove the reference to ¶29 from Count VI of the Second Amended Complaint, *instanter*, or amend the Complaint to remove the reference, to clarify that Plaintiffs are not seeking equitable and contractual relief in the same Count.

### G. Count VII - Plaintiffs Have Stated A Claim for Equitable Estoppel

Defendants again incorrectly argue there were no promises from Defendants to Plaintiffs, and no contracts between the two, either.

"To establish a claim [for promissory estoppe], the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v.*

54

*Kubota Tractor Corp.*, 233 Ill. 2d 46, 51 (2009). "It is the expending of money, *etc.*, or incurring a legal liability on the faith of the promise, which gives the right of action." *Id.* at 52 (quoting *Estate of Beatty v. Western College*, 177 Ill. 280, 293 (1898)).

Defendants continue to characterize the situation as a disappointing business investment, where Plaintiffs cannot blame Defendants for making less profit than hoped. But, as discussed above, that is not the basis of Plaintiffs' claims. Defendants promised to Plaintiffs that – at tax auctions – they were purchasing instruments that could be negotiated pursuant to the PTC, and, if not redeemed, could be exchanged for a tax deed, Plaintiffs relied on these promises in purchasing the tax certificates and easing the Defendants' tax shortfall. The Defendants knew Plaintiffs would rely on these promises when it auctioned the properties at the tax sales, and Plaintiffs have incurred a detriment in doing so in the form of liability for equity theft should they obtain a tax deed and the Defendants do not compensate the property owners themselves. Plaintiffs have expended money, and incurred legal liability (*see* the Counties' Third Party Complaint in *Sharritt*) on the faith of the Defendants' promises. All these elements are pleaded in Count VII of Plaintiffs' Second Amended Complaint. Therefore, Defendants' Motion to Dismiss Count VII should be denied.

### H. Count IX - Plaintiffs Have Stated A Claim for Breach of Contract

Defendants' Motion as to Count IX is about semantics: whether the tax auction which results in the Plaintiffs bidding on – and purchasing - the individual

tax certificates at issue, or the tax certificates themselves, are the contract is besides the point. Even if Defendants are correct that a tax certificate is "personal property in the form of a lien on the taxpayer's property," *see Heritage Std. Bank v. Rosewell (In re Cnty. Treasurer)*, 185 Ill. App. 3d 701, 703 (1st Dist. 1989), the allegations remain that the County Defendants sold Plaintiffs what purported to be a lien which – if not redeemed – could be used to obtain a tax deed. However, rather than sell the Plaintiffs a negotiable instrument, they sold a land mine – an instrument with which if Plaintiffs actually took advantage of the benefit of their bargain, they would, one way or another, be liable for huge sums, either as a consequence of violating the property owners' civil rights, or so as to avoid doing so.

Either way, this was not a mere *caveat emptor* risky business enterprise on the part of Plaintiffs; this was Defendants selling Plaintiffs a worthless bill of goods. And there was a contract: Plaintiffs paid Defendants got paid the taxes they were owed by the delinquent taxpayers, and Defendants were *supposed* to give Plaintiffs what was offered, but that is not what Plaintiffs received. Had *Tyler* never happened, and Plaintiffs obtained a tax deed and found the purchase was not as lucrative as hoped, then Plaintiffs would not have cause to complain against the County. However, that is not remotely what happened in this case. Defendants sold toxic tax certificates where the surplus equity offered was not the County's to offer. Those unconstitutional sales to Plaintiffs, which would subject them to civil liability, was a breach of the contract that was made at the tax auctions. The toxic tax certificates are the physical manifestation of that breach. Defendants argue that

56

without transfer of title, there is no bargained-for exchange or enforceable promise (Motion at p.30), but that is argued without support, and ignores the nature of the tax auction and of the transaction between the parties. Without Tyler, some tax certificates would have been redeemed by the property owners, some would not and on those properties Plaintiffs had planned to obtain tax deeds, but *all* are near worthless post-*Tyler*. Defendants' Motion to dismiss Count IX should be denied.

### I. Count XI - Plaintiffs' Prayer for a Stay or Tolling Should Not Be Dismissed

Plaintiffs allege that "PTC deadlines (35 ILCS 200/21-350, 22-10, 22-25, 22-30) create irreparable harm by forcing Plaintiffs to enforce certificates, risking § 1983 liability, or forfeit investments." *See* Second Amended Complaint at ¶108. "Plaintiffs should not be placed in a position of being forced to violate the property owners' constitutional rights, pay surplus equity payments, or lose their investments because PTC deadlines passed while this matter is pending." *Id,* at ¶110. "Plaintiffs therefore seek a stay or tolling of statutory deadlines regarding their pending tax certificates pending resolution . . . ." *Id.* at ¶111. This does not prejudice the Defendants, and is necessary to avoid ongoing harm to the Plaintiffs.

Defendants oppose this request, and cite to *Sundance Homes v. County of Du Page*, 195 Ill. 2d 257 (2001), but that case is about a statute of limitations being enforced against a plaintiff developer who tried to untimely seek a personal refund for previously-paid road impact fees. There were no constitutional issues at issue, nor any third-party considerations. Using imposed taxes as an analogy for the impact fees, *Sundance* was very limited to its facts. *See id.* at 268 ("Federal

57

decisions appear to sanction strict application of statutes of limitation in the area of tax litigation, even where the law has been altered by judicial decision"). Defendants state that "[e]quitable tolling is warranted only under extraordinary circumstances. *Thede v. Kapsas*, 386 Ill. App. 3d 396, 402-403 (2008). *See* Motion at p.30. *Thebes* dealt with statutes of limitation in a medical malpractice case, and is factually irrelevant to the instant situation.

Rather, Plaintiffs assert that unknowingly participating in an unconstitutional scheme that literally steals equity from property owners, which the Supreme Court and multiple federal Courts have deemed unconstitutional, which every State except Illinois has corrected, which the Defendants have the authority to correct so Plaintiffs are not severely at financial risk but continue to choose not to do so,[3] and which Counties are actively trying to push the financial liability for the equity theft onto tax buyers like Plaintiffs, is an extraordinary circumstance compelling such equitable relief. As Plaintiffs have been prevented from asserting their rights under the PTC, lest they either face the financial burden of compensating property owners for their surplus equity and/or defending themselves in court for civil rights violations after committing equity theft if they do so, this situation qualifies as one where Plaintiffs "ha[ve] been prevented from asserting his or her rights in some extraordinary way" *Moreci v. Ret. Bd. of the Cnty. Employees',*

---

[3] Recently, Cook County courts started demanding a disclosure whether surplus equity existed when a tax buyer sought a tax deed, and since then a moratorium on obtaining tax deeds entirely has been imposed, but unfortunately this does nothing to help Plaintiffs' situation.

2025 IL App (1st) 242373-U, P20. Though the use of equitable tolling is rarely used, *see, id.* at P19, it is an appropriate remedy in this case.

## CONCLUSION

In light of the above, Defendants' Motion to Dismiss should be denied in its entirety.

WHEREFORE, the Plaintiffs, INTEGRITY INVESTMENT FUND, LLC, an Illinois limited liability company, INTEGRITY INVESTMENT REO HOLDINGS, LLC, an Illinois limited liability company, SIGTELLO, LLC, an Illinois series limited liability company, and ABBOTT PORTFOLIO, LLC, an Illinois limited liability company, requests this Honorable Court deny the Defendants Cook County, Maria Pappas, and Monica Gordon's Motion to Dismiss in its entirety, and for any and all further relief as this court deems appropriate.

Date: March 24, 2026                             /s/ David G. Sigale
                                                 Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com

59

## CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING

The undersigned certifies that:

1.      On March 24 2026, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

2.      Pursuant to F.R. Civ. P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


　　　　　　　　　　　　　　　　/s/ David G. Sigale
　　　　　　　　　　　　　　　　Attorney for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
55 West 22nd Street, Suite 230
Lombard, IL 60148
630.452.4547
dsigale@sigalelaw.com