**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

INTEGRITY INVESTMENT FUND, LLC, *et al.*,

    Plaintiffs,

    v.

KWAME RAOUL, in his official capacity as the Illinois Attorney General, *et al.*,

    Defendants.

No. 25-cv-1122

Judge David W. Dugan

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
TO DISMISS SECOND AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs' response confirms that they have no valid basis for suing the State Defendants. Plaintiffs are four Illinois companies that challenge the property tax sale systems of various Illinois counties, alleging that they deprive property owners who fail to pay overdue property taxes of the "surplus equity" in their properties. They allege that the county treasurers "administer" the systems and that the county clerks are "responsible for enforcing the complained of laws." But in addition to suing these local officials, Plaintiffs have named Attorney General Raoul and David Harris, the Director of the Illinois Department of Revenue. Plaintiffs' second amended complaint articulates no viable basis for suing these state defendants, and their response brief reveals that they have none. Plaintiffs' claims against Attorney General Raoul and Director Harris are predicated on their speculation that the County Defendants might take surplus equity because they "fear" that if they do not follow state law, the Attorney General might prosecute them, or Director Harris might "request" such a prosecution. But such speculation cannot avoid the State Defendants' Eleventh Amendment immunity or establish standing. Plaintiffs' claims against Attorney General Raoul and Director Harris should be dismissed.

1

## ARGUMENT

**I.      Plaintiffs do not assert any state-law claims against the State Defendants.**

The Eleventh Amendment bars any state-law claims against the State Defendants.  Dkt. 195 at 4-5.  Plaintiffs respond that they do not intend to assert such claims, and if the Court construes Counts 7-11 as against the State, "Plaintiffs will dismiss those claims against the State Defendants."  Dkt. 209 at 14.

**II.     Plaintiffs' federal constitutional claims against the State Defendants are barred by the Eleventh Amendment.**

That leaves Plaintiffs' federal constitutional claims (Counts 1-6), which all should be dismissed.  Because the State Defendants (1) are not sufficiently connected to the enforcement of the County Defendants' property tax sale systems and (2) have not taken or threatened any action that could cause Plaintiffs any injury, the federal claims against them are also barred by the Eleventh Amendment. Dkt. 195 at 5-8.  Plaintiffs' response adds numerous allegations that appear nowhere in their amended complaint, which is improper.  *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).  But even if the additional allegations are considered, dismissal is warranted.

**A.  Plaintiffs' claims against Attorney General Raoul are barred.**

As established in the State Defendant's motion to dismiss, Plaintiffs' bare-bones allegations against Attorney General Raoul do not come close to piercing his Eleventh Amendment immunity. Dkt. 195 at 6-7.  The relevant allegation appears in paragraph 7 of the second amended complaint, which vaguely claims that the Attorney General enforces the "relevant state law" against "Illinois property owners" (not Plaintiffs). Dkt. 193 at ¶¶ 7, 8.  This allegation falls short because Plaintiffs do not allege a sufficient connection between the Attorney General and the County Defendants' property tax sale systems that they challenge in this lawsuit.  Dkt. 195 at 6; *see also Doe v.*

2

*Holcomb*, 883 F.3d 971, 976-78 (7th Cir. 2018).  Also, paragraph 35 alleges that the Attorney General has "failed to propose legislative reforms, issue guidance, or take other actions" to address the Property Tax Code's alleged constitutional flaws, *id.* at ¶ 35, which is insufficient because such allegations do not relate to the Attorney General's *enforcement* authority. *See, e.g.*, *Ruiz v. Pritzker*, 2024 U.S. Dist. Lexis 53686, at *11 (N.D. Ill. Mar. 26, 2024) (explaining that the Attorney General's role in supporting the constitutionality of a statute is distinct from enforcing it).

From their complaint through their most recent filings, Plaintiffs have admitted that the County Defendants are responsible for implementing and enforcing the property tax sale system at issue here, including the alleged "equity theft" that is the basis for their claims. Dkt. 193 at ¶ 21 (county treasurers and clerks have "final policymaking authority" and "nothing requires or compels" them to withhold from paying surplus equity); *see also id.* at ¶¶ 11-12, 18; Dkt. 206 at 34, 37-39, 57-58, 62 (county treasurers and clerks are withholding surplus equity and state law does not compel them to do so).  Thus, Plaintiffs do not claim that Attorney General Raoul might take any enforcement action against *them* that could cause them any injury.

Rather, Plaintiffs argue that the Attorney General is a proper defendant because he could, in theory, "sue or prosecute" the *local officials* who administer the County Defendants' property tax sale systems if they do not follow *their* statutory obligations.  Dkt. 209 at 15.  In other words, Plaintiffs' theory is that the County Defendants are compelled to violate their rights because, if they do not, the Attorney General might prosecute the County Defendants.  Plaintiffs base their argument on three provisions, 55 ILCS 5/3-14046, 35 ILCS 200/25-30, and 35 ILCS 200/25-35, all of which they misinterpret.  They also assert, more generally, that the Attorney General is a proper defendant because he can bring a *mandamus* or *quo warranto* action to "restrain unlawful

conduct," represent the State of Illinois in legal matters, and issue formal opinions or guidance. Dkt. 209 at 20-21.  As discussed below, Plaintiffs' arguments are baseless.

To start, Plaintiffs' reliance on 55 ILCS 5/3-14046, part of the Illinois Counties Code, is misplaced.  Plaintiffs claim that this provision grants the Attorney General "authority to prosecute violations related to county officials' duties, including those involved in tax sales, if applicable." Dkt. 47-1 at 4.  Yet Section 5/3-14046 only authorizes the Attorney General, or the appropriate State's Attorney, to prosecute violations of "this Division" (Division 3-14), which has nothing to do with tax sales.  *See* 55 ILCS 5/3-14001 to 5/3-14049.  In the many subsections of Division 3-14, the words "tax" and "sale" do not appear, not even once.  *Id.*[1]

Plaintiffs' reliance on 35 ILCS 200/25-30 and 35 ILCS 200/25-35 is equally misplaced. Section 200/25-30 states that "if any county collector or designated deputy fails to attend any sale advertised under this Code, and offer property for sale as required by law, he or she shall be liable to pay the amount of taxes, special assessments and costs due on the advertised property."  35 ILCS 200/25-30.  And Section 200/25-35 provides:

> If any county clerk or designated deputy fails to attend any tax sale, or make and keep the record, as required by this Code, he or she shall forfeit and pay the sum of $500, and shall be liable to indictment for that failure.  Upon conviction he or shall be removed from office.  The sum shall be sued for in a civil action, in the name of the People of the State of Illinois, and when recovered shall be paid into the county treasury.

35 ILCS 200/25-35.  According to Plaintiffs, "[t]he statute explicitly states that the sum shall be sued for in a civil action in the name of the People of the State of Illinois, which would involve the Attorney General initiating such action." Dkt. 209 at 15.

---

[1] Plaintiffs cite a 1943 Illinois case as a purported example of an enforcement action by the "attorney general." Dkt. 209 at 16.  But this case did not involve Section 5/3-14046, and in any event, it was brought by a State's Attorney, not the Illinois Attorney General.  *See People Use of Pope County v. Shetler*, 318 Ill. App. 279 (4th Dist. 1943) (appellants represented by "J. Ado Whiteside, State's Attorney").

Plaintiffs are mistaken.  Contrary to their assumption, States' Attorneys may, in fact, bring proceedings on behalf of the People of the State of Illinois.  *See, e.g.*, *People ex rel. Alvarez v. Gaughan*, 72 N.E.3d 276, 286-88 (Ill. 2016), 55 ILCS 5/3-9005(a), 735 ILCS 5/18-102.  And here, Section 200/25-45 of the Property Tax Code expressly lodges enforcement authority in States' Attorneys, providing that the "State's Attorney of each county shall prosecute all violators of this Code."  35 ILCS 200/25-45; *see also 520 S. Mich. Ave. Assoc. Ltd. v. Devine*, 433 F.3d 961, 964 (7th Cir. 2006) (noting that the Illinois Attorney General "cannot direct the prosecution activities of the 102 States' Attorneys").  Thus, 35 ILCS 200/25-30 and 35 ILCS 200/25-35 do not support Plaintiffs' claims against the Attorney General.

Plaintiffs' purported basis for naming the Attorney General not only misinterprets Illinois law, but it also contradicts their own claims.  While Plaintiffs suggest that Attorney General Raoul might prosecute the County Defendants if they do not follow the Property Tax Code, Plaintiffs' recent filings make clear that they are *not* challenging actions mandated by state law. Dkt. 206 at 34, 37-39, 57-58, 62; Dkt. 21 at ¶ 21; *see also Kidd v. Pappas*, No. 22-C-7061, 2025 U.S. Dist. Lexis 252918, at *46 (N.D. Ill. Dec. 8, 2025) ("What actually results in property owners losing their property—in this case, being deprived of their equity—is not the state-imposed processes for conducting the tax sale, but the refusal of the seller—the County—to compensate owners for their lost equity after the sale is completed.  That is in no way mandated by state law.").  Rather, Plaintiffs accuse the County Defendants of "equity theft," which they claim is an unconstitutional taking.  *See id.*  Plaintiffs have not plausibly alleged that if county officials prevent "surplus equity theft," the Attorney General will prosecute them.  Under Plaintiffs' own theory of the case, they have no basis for suing the Attorney General.[2]

---

[2] Plaintiffs assert in a conclusory manner that the Attorney General "has the authority to ensure that the State tax sale system provides a mechanism, at the County level, for the return of surplus equity to the

More generally, Plaintiffs' argument ignores basic Eleventh Amendment jurisprudence.  In addition to their misplaced arguments above, Plaintiffs variously suggest that the Attorney General is a proper defendant because he can institute *mandamu*s or *quo warranto* proceedings to "restrain unlawful conduct" (Dkt. 209 at 20), because he represents the State in legal matters and has appeared in other tax-related cases (*id.* at 21-22), because he can investigate and address civil rights violations (*id.*), and because he may issue formal opinions or other guidance (*id.* at 23).  But under the caselaw cited in the State Defendants' opening brief (which Plaintiffs entirely ignore), the Attorney General's responsibility for enforcing state law and defending state statutes is not sufficient for the *Ex Parte Young* exception to Eleventh Amendment immunity.  Dkt. 195 at 6 (collecting authority).

Indeed, Plaintiffs' argument cannot be right because it would create an exception to the Attorney General's Eleventh Amendment immunity so broad that it would swallow the rule.  If Plaintiffs' position were accepted, the Attorney General could be added as a defendant in any lawsuit alleging that a local official is violating the Constitution, which is obviously not the case.  Plaintiffs' argument "proves entirely too much—and thus nothing at all."  *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1300 (11th Cir. 2019) (rejecting the plaintiff's claims against the Alabama Attorney General).

Finally, even if Plaintiffs could establish that Attorney General Raoul had "some connection" to the challenged aspects of the County Defendants' property tax sale systems, which they cannot, Plaintiffs' claims still would fail.  That is because Plaintiffs do not adequately allege that the Attorney General has enforced, or threatened to enforce, the challenged property tax sale

---

former property owner." Dkt. 209 at 16.  But Plaintiffs offer no further explanation as to what they mean, much less any authority or other support for their assertion.  Needless to say, the Attorney General does not have the authority to enact legislation.

system against them.  Dkt. 195 at 7, citing *Doe*, 883 F.3d at 997, *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996).  Plaintiffs again fail to address the relevant authority cited in the State Defendants' motion to dismiss.  Their claims against Attorney General are barred by the Eleventh Amendment.

### B.  Plaintiffs' claims against Director Harris are also barred.

Likewise, the Eleventh Amendment bars Plaintiffs' claims against Director Harris, who does not administer the property tax sale system or any aspect of the Property Tax Code relevant to this litigation.  Dkt. 195 at 6-7 (citing statutes regarding the Department of Revenue's authority).  It is undisputed that the property taxes at issue here are assessed and collected by local government, not Director Harris.  *Id.*  Plaintiffs do not, and cannot, allege any facts showing that Director Harris is involved the alleged "equity theft" at issue here (or that he otherwise implements any aspect of the County Defendants' property tax sale systems).

In their response, all Plaintiffs can muster is a single citation to 35 ILCS 200/8-10, which does not show otherwise.  Section 200/8-10 allows the Department of Revenue to meet with local assessment officers, recommend legislation for the improvement of the property tax system, "request" the institution of proceedings against those who fail to comply with the Property Tax Code, and collect information relating to assessments.  *Id.*  Obviously, the ability to suggest or recommend legislation relating to the property tax sale system, a right that the Department shares with everyone, including other state and local officials and members of the public, cannot create an exception to Director's Harris's Eleventh Amendment immunity; otherwise, the exception would swallow the rule.

Similarly, the Department's general ability to "request" the institution of proceedings against someone who does not follow the Property Tax Code is not the same as enforcement

authority. *See Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1106-07 (N.D. Ill. 2022) (State's Attorney, who only had authority to "file a written objection" to name change petition, did not enforce the name change statute). And in any event, Plaintiffs are not alleging that *they* intend to violate the Property Tax Code. Nor are they even alleging that any county officials are violating the Property Tax Code. Again, they have made it clear that they are not suing the County Defendants for taking actions mandated by state law. Dkt. 206 34, 37-39, 57-58, 62. As discussed above, Plaintiffs' speculative theory that a state official might (for reasons that are not entirely clear) prosecute the county officials who administer the property tax sale system at issue does not establish an exception to the State Defendants' Eleventh Amendment immunity. This is especially true for Director Harris, who cannot initiate any prosecution. Plaintiffs' claims against Director Harris are barred by the Eleventh Amendment and should be dismissed.

## II.    Plaintiffs' claims against the State Defendants should also be dismissed for lack of standing.

For similar reasons, Plaintiffs lack standing to sue the State Defendants. Dkt. 195 at 8-9. To establish standing, Plaintiffs must allege an "actual or imminent" injury that is "fairly traceable" to the State Defendants. *Id.*, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). While Plaintiffs assert that the "existence of a statute or penalty provision itself implies a threat of enforcement," Dkt. 209 at 25, the Supreme Court has made clear that a potentially unconstitutional law being "on the books" is "insufficient to justify federal intervention in a pre-enforcement suit." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 49-50 (2021) ("This Court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court."). In any event, Plaintiffs have not alleged any imminent threat of enforcement by the *State Defendants* or any injury "fairly traceable" to them.

Again, Plaintiffs admit that the County Defendants administer the property tax sale system they challenge. As a basis for their claims against Attorney General Raoul and Director Harris, Plaintiffs merely assert—without any supporting factual allegations—that the County Defendants will be "following the unconstitutional Property Tax Code requirements under fear of enforcement by the [State] Defendants." Dkt. 209 at 20. In other words, rather than alleging that the State Defendants are threatening some imminent action against *them*, Plaintiffs hypothesize that the County Defendants might take homeowners' "surplus equity" because, if they do not, the County Defendants might fear that the Attorney General might prosecute them for not following state law, or because Director Harris might "request" such a prosecution.

Such a speculative and attenuated causal chain cannot establish standing. In pre-enforcement challenges, the Supreme Court permits review only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony v. Driehaus*, 573 U.S. at 149, 159 (2014). And where, as here, a plaintiff "not himself of object" of any action by the State Defendants, standing is "substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). Plaintiffs' speculation that the Attorney General might prosecute county officials for not following state law (or that Director Harris might "request" such a prosecution) does not establish any imminent injury to Plaintiffs, much less one that is "fairly traceable" to the State Defendants, who do not implement the County Defendants' property tax sale systems and who are not responsible for taking any surplus equity. *Id.* Indeed, as discussed in Part II above, Plaintiffs' "fear of prosecution" argument contradicts their position that state law does not require the alleged "equity theft" at issue.

Plaintiffs' articulation of their requested relief further confirms that they have no standing to sue the State Defendants. Plaintiffs seek an injunction (1) preventing the Attorney General from

"compelling continued enforcement of the unconstitutional sales and penalty procedures," (2) barring him from "prosecuting or disciplining county officers who decline to carry out such procedures," and (3) requiring him to "issue guidance or clarification to subordinate officials consistent with federal constitutional requirements recognized in *Tyler*." Dkt. 209 at 24. But Plaintiffs allege no facts suggesting that the Attorney General is "compelling" anything, and the relief that Plaintiffs seek against the Attorney General would serve no purpose. If this Court were to find the County Defendants' property tax sale systems unconstitutional, it could enjoin the local officials who implement and enforce them. The Court's order would redress Plaintiffs' injury, without any need to enjoin the Attorney General or require him to issue "guidance." *See Lewis*, 944 F.3d at 129 (plaintiffs' allegation that the Alabama Attorney General should have "notified" the governor and legislature that a statute was unconstitutional did not show an injury "fairly traceable" to the Attorney General for purposes of standing); *see also Ortiz*, 596 F. Supp. 3d 1100, 1106-07 (holding that plaintiffs lacked standing to sue the State's Attorney because they had "failed to show that the State's Attorney is either the cause of, or the solution to, their objections to the … statute").

Plaintiffs also want an injunction "against Director Harris from using the Property Tax Code for surplus equity theft." *Id.* at 24-25. But as discussed in Part II above, Director Harris does not implement the property tax sale systems and is not responsible for the alleged "equity theft" at issue here, making Plaintiffs' requested relief improper and unfounded.

## CONCLUSION

For the reasons above and in the State Defendants' memorandum in support of their motion to dismiss (Dkt. 195), Plaintiffs' claims against Attorney General Raoul and Director Harris fail and should be dismissed.

Dated: April 23, 2026

/s/ Michael T. Dierkes
Michael T. Dierkes
General Law Bureau
Government Representation Division
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Telephone: (312) 814-3672
Facsimile: (312) 814-4425
michael.dierkes@ilag.gov

*Attorney for Kwame Raoul in his official capacity as Illinois Attorney General and David Harris in his official capacity as Director of the Illinois Department of Revenue*