**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INTEGRITY INVESTMENT FUND, LLC, an Illinois limited liability company, *et al*, | |
| Plaintiffs, | |
| v. | |
| KWAME RAOUL, in his official capacity as Attorney General of the State of Illinois; DAVID HARRIS, in his official capacity as Director of the Illinois Department of Revenue; *et al*, | Case No. 3:25-CV-1122-DWD |
| Defendants. | |

**JOINT REPLY IN SUPPORT OF**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiffs' Response reveals that their complaint is premised on the *assumption* that the collection of delinquent property taxes under the Property Tax Code ("PTC"), which process includes issuance of a tax deed to a tax buyer if the property owner fails to timely exercise his or her redemption rights, was rendered unconstitutional under *Tyler v. Hennepin Cty., Minnesota,* 598 U.S. 631 (2023). Plaintiffs are incorrect.

Plaintiffs' complaint is replete with assertions that they will face ruinous liability because the County Defendants continued to collect delinquent property taxes after *Tyler* without adjusting the tax collection process to prevent the unconstitutional taking found in *Tyler*. The Response clarifies what Plaintiffs seek—"a declaration of the very ripe questions of whether the PTC and the [County Defendants'] failure to provide for surplus equity compensation are unconstitutional."

*See* DE 206 at p. 27-28.    This revelation is significant because, as the County Defendants contend, the availability of an Indemnity Fund remedy under the PTC takes this case (and all delinquent tax collection activity) out of *Tyler* and eliminates the harm plaintiffs claim they face by holding "toxic" tax certificates that they posit will expose them to *Tyler* liability.  Plaintiffs claim this liability arises when they petition for and are issued a tax deed, because the tax deed confers on the tax buyer a legal and possessory interest in the property, thereby divesting the property owner of his or her interest therein, including any equity accrued in that real estate. Plaintiffs' amended complaint is premised on a faulty assumption. But Defendants first address the Tax Injunction Act which bars the asserted claims.

## I.    PLAINTIFFS IMPLICATE THE TAX INJUNCTION ACT

Plaintiffs' Response does not cure a fundamental jurisdictional defect identified in Defendants' Motion to Dismiss: the Tax Injunction Act ("TIA") bars this action. Regardless of Plaintiffs' attempts to frame the action as "not about the collection of taxes" (*Plaintiffs' Response to Motion to Dismiss*, d/e 206, pg. 19 of 71), the relief requested would enjoin, suspend, or restrain the collection of state taxes, placing this case squarely outside this Court's jurisdiction. See *Scott Air Force Base Props., LLC v. Cnty. of St. Clair, Ill.*, 548 F.3d 516, 521 (7th Cir. 2008) ("To determine whether the TIA applies, we first need to examine the kind of relief that [Plaintiffs] sought in [their] complaint.").

Plaintiffs here expressly seek sweeping injunctive, declaratory, and other relief that would disrupt the State's tax enforcement system. As discussed in

Defendants' *Memorandum in Support of Motion to Dismiss Second Amended Complaint* (d/e 197), Plaintiffs seek an injunction preventing Defendants from enforcing the PTC, a stay and tolling of deadlines, and a refund of the money they have paid. The injunction requested would enjoin the collection of taxes. A stay or tolling of deadlines suspends the collection of taxes. A refund of the money paid by Plaintiffs diminishes or encumbers state tax revenue.

Plaintiffs attempt to avoid this result by claiming they are not taxpayers. But they paid the taxes due. *See* 35 ILCS 200/21-320 (stating that if a sale in error is declared, the amount refunded shall include *other taxes* paid or redeemed by the *owner of the certificate of purchase* or his or her assignor subsequent to the tax sale, together with interest on those other *taxes* under the same terms as interest is otherwise payable under Section 21-315). Plaintiffs paid the tax and any refund, as requested, diminishes or encumbers tax revenue.

Plaintiffs cite *Kidd v. Pappas*, No. 22 C 7061, 2025 WL 3507374, at *7 (N.D. Ill. Dec. 8, 2025), for the proposition that injunctions related to post-collection actions are not barred under the TIA. But the plaintiffs in that case challenged "only [the defendants'] failure, after all such tax obligations were satisfied, to either preserve [the plaintiffs'] remaining equity or ensure they would be compensated for it." *Kidd,* No. 22 C 7061, 2025 WL 3507374, at *7. The *Kidd* court even noted that "[t]he requested injunction would allow the defendants to continue to collect taxes owed through tax sales. It would only bar them from failing to compensate homeowners for the excess equity lost after the taxes are collected." *Kidd*, No. 22 C 7061, 2025 WL

3507374, at *7. That is not the type of injunction that Plaintiffs seek here.  Plaintiffs'

amended complaint seeks an injunction "preventing Defendants from enforcing" the

PTC. *SAC*, d/e 193, at ¶ 44 (and Plaintiffs' other counts seeking simply "an

injunction"). The requested relief is not directed solely at post-collection actions and

completely halts the collection of property taxes.

The TIA divests this Court of subject-matter jurisdiction over Plaintiffs' claims

because the relief sought enjoins, suspends, or restrains the collection of state taxes.

Even if the Court were to disagree, dismissal is proper because the amended

complaint mistakenly assumes that the PTC is unconstitutional under *Tyler*.

## II.   THE PTC IS NOT UNCONSTITUTIONAL UNDER *TYLER*.

Plaintiffs claim that they have standing because they face the real risk of

liability by virtue of the continued implementation of the PTC with no changes in

procedures in light of *Tyler*.  Plaintiffs make clear that they are not challenging *Tyler*;

they are instead seeking a finding that foists any and all liability arising out of the

issuance of a tax deed to the County Defendants under *Tyler*.  But this assertion begs

the ultimate question that has not been squarely addressed by an Illinois state or

federal court—whether the differences between the PTC and the statutory framework

in Minnesota that was construed in *Tyler* matter.

### A. *Tyler* Was Driven by a Minnesota Statute that is Entirely Different from the Illinois PTC.

The Supreme Court in *Tyler* considered a Minnesota property tax code that is

wholly dissimilar from the PTC.  The most significant difference is that the Minnesota

county took actual possession of the real property to collect delinquent taxes that

were less than the property was worth and the property owner had no remedy to recover the lost surplus value once the property was transferred to the county. *Tyler*, 598 U.S. at 631.

Unlike the statute in *Tyler*, the PTC facilitates collection of the delinquent tax amount due, nothing more. "The primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes, ***not to assist tax petitioners in depriving the true owners of their property.***" *Excalibur Energy Co. v. Rochman*, 2014 IL App (5th) 130524, ¶ 17 (emphasis added).

The Defendant Counties intend to satisfy delinquent taxes owed to the respective taxing districts and restore properties to the taxing rolls by selling the delinquency at an annual tax sale. Tax buyers, such as Plaintiffs here, purchase the tax delinquency in exchange for a tax certificate. The PTC affords delinquent owners a "right of redemption," allowing them to redeem their properties and prohibit the issuance of tax deeds by paying all tax principal, special assessments, interest and penalties up to 30 months after the tax sale. *See* 35 ILCS 200/21-345 *et seq*. These amounts are paid to the tax buyer, not the county, because the tax delinquency was already collected. In the rare event the owner does not avail himself of the redemption right, the tax buyer may exercise its right to a tax deed, the issuance of which divests the property owner of the property and transfers ownership (as well as any value in excess of the tax delinquency) to the tax buyer.

The PTC includes a safety net for any owners whose property was transferred to a tax buyer after the redemption period expires—an avenue to recover lost surplus

value via the Indemnity Fund. *See* 35 ILCS 200/21-305(a). Unlike *Tyler*, where the State of Minnesota retained the surplus (*see Tyler*, 598 U.S. at 635 (Minnesota obtains "absolute title" to the property after the expiration of the redemption period after which the state may sell the property to private parties and retain any excess funds, leaving the former owner no opportunity to recover the surplus)), counties in Illinois do not take more than what is owed and the statute includes a remedy for property owners to recover surplus value they may lose.

Plaintiffs premise their complaint on the misapprehension that the PTC is the same as Minnesota's law, which prompted the Supreme Court of United States to conclude that Minnesota's statutory scheme resulted in an unconstitutional taking. The above discussion makes this clear.

### B. Issuance of a Tax Deed Does Not Result in a *Tyler* Taking.

The County Defendants here take neither physical possession nor legal title to any property that is subject to a tax deed that may be issued to tax buyers, like plaintiffs. The Supreme Court in *Tyler*, made clear what constitutes an impermissible taking in this context:

> History and precedent dictate that, while the County had the power to sell Tyler's home to recover the unpaid property taxes, ***it could not use the tax debt to confiscate more property than was due***. Doing so effected a "classic taking in which the government directly appropriates private property for its own use."

*Tyler*, 598 U.S. at 631 (emphasis added), *citing Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002).

*Tyler* teaches that there is no taking where the statutory framework governing the collection of delinquent property taxes includes a mechanism for the property

6

owner to recover surplus funds in excess of the tax amount owed. *Tyler*, 598 U.S. at 644 (". . . Minnesota's scheme provides **no opportunity** for the taxpayer to recover the excess value: once absolute title has transferred to the State, any excess value **always remains with the State**.") (emphasis added).

Unlike *Tyler*, the PTC satisfies the *Tyler* test. The taxpayer has an opportunity to recover any lost excess value through the Indemnity Fund. The fact that the County Defendants do not take title, coupled with the availability of the Indemnity Fund, defeats the premise on which Plaintiffs' amended complaint is based—that the issuance of a tax deed to the tax buyer under the PTC results in an unconstitutional taking.

*Tyler* is clear—the constitutional violation happens not when a delinquent property tax debt is collected but when a county retains a surplus from issuance of a tax deed. *Tyler*, 598 U.S. at 639 ("The County had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due.") Importantly, there is no constitutional violation where the statutory framework does not absolutely preclude a property owner from recovering surplus funds. *Tyler*, 598 U.S. at 644. *See also Nelson v. City of New York*, 352 U.S. 103, 77 S.Ct. 195, 1 L.Ed 2d 171 (1956) (statute that does not "absolutely preclude" recovery of surplus funds does not run afoul of the Constitution) and *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434, 461 (2020) ("*Nelson* ... informs us that no federal Takings Clause claim will exist when there is a statutory path to recover the surplus proceeds but the property owners fail to avail

7

themselves of that procedure.") The inclusion of the Indemnity Fund within the PTC is evidence that the PTC does not "absolutely prohibit" recovery of surplus funds where such funds result after the collection of delinquent property taxes, thereby complying with *Tyler*. The Indemnity Fund instead paves the statutory path for a property owner to recover surplus value of which they were divested when the tax deed was issued. *Rafaeli, supra.*

### C. The Indemnity Fund is the Remedy Called for in *Tyler*.

The Indemnity Fund is exactly what the *Tyler* court held was necessary to avoid a Takings Clause violation. *Tyler*, 598 U.S. at 644. The Indemnity Fund is not an alternative remedy—it is the precise mechanism that *Nelson* and *Tyler* teach insulates Illinois counties from takings claims when collecting delinquent property taxes under the PTC. Put differently, it is the inclusion of the Indemnity Fund as part of the PTC framework since the 1970's that eliminates a taking in the first instance. This much was recently acknowledged by the court in *Town of Tyngsborough v. Recco,* 18-TL-1223, 2024 WL 2331197 (Mass. Land. Ct. May 21, 2024).

At issue in *Tyngsborough* was whether a Massachusetts statute was devoid of any mechanism that would either allow or require the town to pay the surplus to a property owner after a sale to collect delinquent property taxes. 2024 WL 2331197 at *5. The town argued that it was authorized to foreclose on the property and then pay the surplus to the property owner. *Id.* The property owner argued that there was no statutory mechanism that authorized the recovery of surplus funds. The court noted that, even though the relevant statute did not expressly require or authorize

the return of any surplus, the town acknowledged its "post-*Tyler* constitutional obligation" to do so and further construed the statute as creating the surplus return mechanism. *Id.* at * 6 ("Where the Town has properly acknowledged its post-*Tyler* obligation, the court rules that there is nothing in chapter 60 prohibiting the Town from fulfilling its obligation, and the court further rules that chapter 60 provides a mechanism that allows the Town to make such a return of equity after foreclosure.") Notably, the court went on to note that, even if the town refused to acknowledge its duty to return surplus funds, the fact that the statute provided for payment of the surplus was sufficient. *Id.* at * 6.

The Indemnity Fund here supplies the remedy that *Tyler* requires—an avenue for a property owner to recover surplus value lost in the course of collection of delinquent property taxes.

The courts in *Sharritt v. Henry*, 1:23 CV 1538 (N.D. Ill.), and *Kidd v. Pappas*, 1:22 CV 7061 (N.D. Ill.), read *Tyler* as imposing a broad constitutional prohibition against **any** property tax collection system. Both courts seized on the conclusion in *Tyler* and imported it wholesale into the Illinois context, without examining the structural features that made Minnesota's system unconstitutional in the first place––the government kept the surplus, and there was no "opportunity" for the taxpayer to recover the excess value. This does not happen in Illinois, and neither *Sharritt* nor *Kidd* evaluated the Illinois system against what *Tyler* actually demands. *Tyler* also does not address the constitutional validity of compensation mechanisms, like the Indemnity Fund here, after title transfers to the tax buyer. The controlling question

in Illinois is simply whether the property tax collection system, which includes the availability of recovery from the Indemnity Fund, permits the government to retain a surplus that rightfully belongs to the property owner. The answer is no, and that answer defeats any likening to *Tyler*, as well as the case at bar.

The logical extrapolation from *Sharritt* and *Kidd* is that no lien-based property tax sale system can survive constitutional scrutiny unless it guarantees, at the moment of tax deed issuance, a payment of whatever surplus may exist to the taxpayer. Such a system is as impractical as it is impossible. As it currently stands, the Illinois system does not violate *Tyler*, because it does not enable what Minnesota's system did—the Illinois counties do not retain a surplus, and the Indemnity Fund provides an "opportunity" for compensation to the taxpayer. The solvency of the Cook County Indemnity Fund (which was conceded by Cook County), is irrelevant here where no County Defendant conceded that their respective funds are insolvent. In any event, that is irrelevant to the legal question presented, which is whether the PTC provides the opportunity for recovery of a surplus that *Tyler* demands. The *Kidd* and *Sharritt* courts overread *Tyler* to the extent that those courts assume that the PTC is unconstitutional under *Tyler* without evaluating the stark differences between the PTC and the statutory framework at issue in that case. That is a question this Court can and should consider in resolving whether plaintiffs state a viable cause of action here.

WHEREFORE, the Defendants, through their undersigned counsel, respectfully request that this Court grant their motion and dismiss plaintiffs' second

10

amended complaint with prejudice.  Defendant Counties further request that this Court award them fees and costs as the prevailing parties and for all other just and proper relief.

April 23, 2026

Respectfully submitted,

/s/ *Jerome T. Murphy*
*(with permission)*
Jerome T. Murphy # 6316990
(IL)
233 S. Wacker Dr., 61st Floor
Chicago, IL 60606
Tel: (312) 627-4000
Fax: (312) 627-1717
jmurphy@tresslerllp.com

/s/ *Rosa M. Tumialán*
*(with permission)*
Rosa M. Tumialán  # 6226267
(IL), *pro hac vice*
233 S. Wacker Dr., 61st Floor
Chicago, IL 60606
Tel: (312) 627-4191
Fax: (312) 627-1717
rtumialan@tresslerllp.com

*Attorney for Adams County, Bureau County, Cole County, Grundy County, Jersey County, Lake County, Logan County, Putnam County, Carroll County, Winnebago County, Tazewell County, Sangamon County, Shelby County, Rock Island County, Piatt County, Peoria County, Ogle County, McLean County, Ford County, Lee County, Livingston County, and Boone County Defendants*

*/s/Jason E. Brokaw*
*Jason E. Brokaw #6305541*

11

*GIFFIN, WINNING, COHEN &*
*BODEWES, P.C*
*900 Community Drive*
*Springfield, IL 62703*
*(217) 525-1571*
*jbrokaw@gwcblaw.com*

*/s/Matthew R. Trapp*
*(with permission)*
*Matthew Trapp #6284154*
*GIFFIN, WINNING, COHEN &*
*BODEWES, P.C*
*900 Community Drive*
*Springfield, IL 62703*
*(217) 525-1571*
*mtrapp@gwcblaw.com*

*Attorneys for Cass County,*
*Champaign County, Christian*
*County, Clay County, Clinton*
*County, Crawford County,*
*Cumberland County, DeWitt*
*County, Franklin County,*
*Fulton County, Hancock*
*County, Henry County, Jackson*
*County, Kendall County,*
*LaSalle County, Lawrence*
*County, Macoupin County,*
*Marion County, Mason County,*
*McDonough County, Menard*
*County, Mercer County,*
*Montgomery County, Morgan*
*County, Moultrie County, Perry*
*County, Stark County,*
*Stephenson County, Vermilion*
*County, White County,*
*Whiteside County, Williamson*
*County Defendants*

*/s/ Graeme J. Quinn*
*(with permission)*
Graeme J. Quinn
Office of the DuPage County
State's Attorney

12

503 North County Farm Rd.
Wheaton, IL  60187
(630) 407-8000
Graeme.Quinn@dupagecounty.gov
*Attorney for DuPage County Defendants*

*/s/Laura Lee Scarry*
(with permission)
Laura Lee Scarry
McHenry County State's Attorney
2200 N. Seminary Ave.
Woodstock, IL 60098
815-334-4159
llscarry@mchenrycountyil.gov
*Attorney for McHenry County Defendants*

*/s/Erika M. Hamer*
(with permission)
Erika M. Hamer
Will County State's Attorneys Office
57 N Ottawa
Joliet, IL 60432
815-727-8404
ehamer@willcountysao.gov
*Attorney for Kankakee County and Will County Defendants*

*/s/Scott Pyles*
(with permission)
Scott Pyles
Will County State's Attorneys Office
57 N Ottawa
Joliet, IL 60432
815-727-1318
spyles@rcklawfirm.com
*Attorney for Kankakee County and Will County Defendants*

13

*/s/Erin Brady*
*(with permission)*
Erin Brady
Kane County State's Attorney's Office
100 South Third Street
Fourth Floor
Geneva, IL 60134
630-208-5331
bradyerin@kanecountyil.gov
*Attorney for Kane County Defendants*

*/s/Thomas R. Ysursa*
Becker, Hoerner, & Ysursa, P.C.
5111 West Main Street
Belleville, Illinois 62226
Office: (618) 235-0020
Facsimile: (618) 235-8558
Cell: (618) 540-9426
Email: try@bhylaw.com
*Attorney for St. Clair County Defendants*

/s/ *Paul T. Slocomb*
Paul T. Slocomb    #6226129
Hoffman & Slocomb LLC
1115 Locust Street, 4th Floor
St. Louis, MO 63101
Facsimile 314-231-0323
(314) 436-7800
Email:  paulslocomb@yahoo.com
*Attorney for St. Clair County Defendants*

14