**IIN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **INTEGRITY INVESTMENT FUND, LLC, INTEGRITY INVESTMENT REO HOLDINGS, LLC, SIGTELLO, LLC, AND ABBOT PORTFOLIO, LLC,** | ) | |
| | ) | **Case No. 25-cv-01122-DWD** |
| **Plaintiffs,** | ) | |
| **vs.** | | |
| **KWAME RAOUL, et al.,** | | |
| **Defendants.** | | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

Five motions to dismiss Plaintiffs' Second Amended Complaint are before the Court. (Docs. 194, 196, 198, 199, 200). The motions became fully briefed on May 14, 2026. Illinois then enacted Public Act 104-0553 (the "Act"), and the Cook County Defendants, joined by other County Defendants, filed a Notice of Supplemental Authority contending that the Act addresses the injuries and relief pleaded by Plaintiffs. (Doc. 222). The Act and Notice raise a threshold question the completed briefing does not answer, specifically, whether, and to what extent, a live controversy remains in this case under Article III. For that reason, the parties are DIRECTED to brief the Court on that question as discussed below.

## Background

### A. Factual Background and Complaint

Plaintiffs are tax purchasers. As laid out in the Second Amended Complaint, a tax purchaser pays delinquent property taxes and receives a certificate of purchase. (Doc. 193, ¶¶ 17–18). The prior property owner may redeem the property by paying the required taxes, interest, and costs before the redemption period expires. If the owner does not redeem, the certificate holder may petition the state court for a tax deed.

Plaintiffs allege that they entered that process, at least as to the set of tax certificates at issue in this case, before the Supreme Court decided *Tyler v. Hennepin County*, 598 U.S. 631 (2023). Plaintiffs aver that they purchased tax sale certificates at auctions in 64 of Illinois' 102 counties, all prior to the *Tyler* decision, in reliance on Defendants' representations that the certificates were enforceable financial instruments conveying merchantable title, including all surplus equity without payment to prior owners, as mandated by the Illinois Property Tax Code (PTC), 35 ILCS 200/21-205 et seq., and specifically 35 ILCS 200/22-40. (Doc. 193, ¶ 22). Plaintiffs further allege that they "still currently possess said tax certificates." (Doc. 193, ¶ 23).

The Supreme Court decided *Tyler* in May, 2023. In that case, Hennepin County had sold Geraldine Tyler's condominium to satisfy a $15,000 tax debt and kept the remaining $25,000. *Tyler*, 598 U.S. at 634–35. The Court held that Tyler had plausibly alleged a taking because the County could not use the tax debt "to confiscate more property than was due." *Id.* at 639.

Plaintiffs allege that *Tyler* left their existing certificates in a trilemma. They describe the trilemma, saying that *Tyler* "has forced the Plaintiffs to either pay the surplus equity, forego obtaining tax deeds, or violate the property owners' constitutional rights per the

Fifth Amendment. . . ." (Doc. 193, ¶ 15). They also describe what enforcing the certificates would require: "Enforcing certificates requires Plaintiffs to participate in an unconstitutional taking and excessive fine, risking § 1983 liability, while PTC deadlines create an untenable dilemma: enforce and risk liability or forfeit investments." (Doc. 193, ¶ 37).

The absence of some other legal path is a necessary element in Plaintiffs' account of their claims. They allege that, "[p]ost-*Tyler*, Defendants have not reformed the PTC, issued moratoriums, or offered relief to Plaintiffs, who face coercion to either forfeit investments or participate in unconstitutional acts." (Doc. 193, ¶ 35).

However, Plaintiffs also allege completed and continuing injuries. They claim that, in other cases, former owners' challenges to the confiscation of their property "have further harmed Plaintiffs by devaluing Plaintiffs' property." (Doc. 193, ¶ 25). They also claim that they have been "compelled to act under the PTC, incurring additional expenses and taking necessary actions to protect their interests," including the payment of later taxes and the costs of notices, service, tract searches, redemption extensions, recording, and mailing. (Doc. 193, ¶ 38).

The Second Amended Complaint also places certain unspecified tax deeds at issue. Plaintiffs allege that they obtained deeds in good-faith reliance on the Property Tax Code. (Doc. 193, ¶ 32). Specifically, they allege that "[a]t least two tax deeds issued to Plaintiffs have been challenged under the *Tyler* holding." (Doc. 193, ¶ 62). The pleading does not identify those deeds, the properties, the challengers, or the present status of either dispute.

Those allegations underpin all forms of the requested relief. Plaintiffs seek declarations that "they are not state actors, and face no § 1983 liability for tax deeds," or, if the Property Tax Code is constitutional, that "they may enforce certificates without liability for surplus equity." (Doc. 193, ¶¶ 77–78). In the alternative, they seek a declaration that the Property Tax Code is unconstitutional and relief "including but not limited to the rescission of such 'toxic' tax certificates plus interest." (Doc. 193, ¶ 79). Plaintiffs also seek a stay or tolling of statutory deadlines. (Doc. 193, ¶¶ 108–11). Their prayer asks for "rescission of all such issued tax certificates, with a refund of all sums paid by Plaintiffs to the Defendant Counties, plus accrued interest." (Doc. 193, p. 43).

Plaintiffs filed this action on May 27, 2025, and filed the operative Second Amended Complaint on January 14, 2026. (Docs. 1, 193). Defendants filed the pending motions to dismiss on January 28, 2026. (Docs. 194, 196, 198, 199, 200). Plaintiffs responded, and Defendants replied. (Docs. 206, 209, 210-1, 217, 218, 220). Briefing ended on May 14, 2026. At the parties' request, the Court stayed discovery until it resolves the pending motions to dismiss. (Doc. 192).

**B. PUBLIC ACT 104-0553**

Against this backdrop, Illinois changed the governing statutory text after briefing on the motions to dismiss in this case ended. Public Act 104-0553 became law on July 10, 2026, and took effect that day. P.A. 104-0553, § 99. The Act added a new ground for declaring a tax sale to be a sale in error. Section 21-310(b)'s unchanged opening provides: "When, upon application of the owner of the certificate of purchase only, it appears to the satisfaction of the court which ordered the property sold that any of the following

subsections are applicable, the court shall declare the sale to be a sale in error." 35 ILCS 200/21-310(b); P.A. 104-0553, PDF p. 41. To that list the Act adds subsection (b)(5): "The certificate of purchase was issued prior to the effective date of this amendatory Act of the 104th General Assembly, the certificate's redemption period has expired, and the certificate has not been deeded, redeemed, vacated, or voided under Section 22-85." 35 ILCS 200/21-310(b)(5); P.A. 104-0553, PDF p. 43.

The Act also gave certain former property owners a surplus-equity remedy after issuance of a tax deed. New section 21-302 begins: "A previous owner of property sold under any provision of this Code who sustains loss or damage by reason of the issuance of a tax deed shall have the right to recover surplus equity that was lost in the property through an award from a surplus equity fund . . . ." 35 ILCS 200/21-302(a); P.A. 104-0553.

That provision reaches "tax deeds recorded in the 2 years prior to the effective date" of the Act and "outstanding tax certificates issued prior to the effective date" that result in recorded deeds afterward. 35 ILCS 200/21-302(a)(1)–(2); P.A. 104-0553, PDF p. 31. A former owner seeking an award must name the county treasurer, as trustee of the surplus-equity fund, as the defendant. 35 ILCS 200/21-302(b); P.A. 104-0553, PDF p. 32. The treasurer may bring in a person who may be liable for the award, but not "the tax deed grantee and its successors in title." 35 ILCS 200/21-302(b); P.A. 104-0553, PDF p. 33. If the fund cannot satisfy an award, "the county shall fund the balance necessary" within twelve months after the court enters the award. 35 ILCS 200/21-302(e); P.A. 104-0553, PDF pp. 34–35.

The Act reproduced subsection 21-310(d) without amending it. That subsection begins: "If a sale is declared to be a sale in error for any reason set forth in Section 22-35, Section 22-50, or subdivision (a)(5), (b)(2), or (b)(4) of this Section, the tax certificate shall be forfeited to the county as trustee pursuant to Section 21-90 of this Code . . . ." 35 ILCS 200/21-310(d); P.A. 104-0553. For the listed grounds, subsection (d) directs the collector, on demand of the certificate owner, to "refund the amount paid," pay qualifying interest and costs, and "cancel the certificate so far as it relates to the property." 35 ILCS 200/21-310(d); P.A. 104-0553, PDF pp. 45–46. New subsection (b)(5) does not appear in that list. The section also continues to state: "The changes made to this Section by this amendatory Act of the 103rd General Assembly apply to matters concerning tax certificates issued on or after the effective date of this amendatory Act of the 103rd General Assembly." 35 ILCS 200/21-310; P.A. 104-0553. Public Act 103-555 took effect on January 1, 2024. P.A. 103-555, § 99.

On July 31, 2026, the County Defendants filed their Notice of Supplemental Authority. (Doc. 222). They contend that new subsection (b)(5) gives Plaintiffs a state-law path to cancel qualifying certificates and recover the taxes paid, together with interest and costs. (Doc. 222, pp. 2–3). They also contend that the new surplus-equity fund addresses Plaintiffs' asserted exposure to claims by former owners. *Id.* To the extent that construction is correct, the close match between the relief prayed for in the complaint and the newly enacted statutory sale in error mechanism raises the possibility that some or all of the Plaintiffs' claims are now moot.

## LEGAL STANDARDS

### A. ARTICLE III MOOTNESS

Article III requires a live case or controversy at every stage of the litigation. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). "When a question about mootness arises, federal courts have a constitutional obligation to address it on our own if need be." *Ruggles v. Ruggles*, 49 F.4th 1097, 1099 (7th Cir. 2022). Mootness prevents federal courts from deciding questions that cannot affect the rights of the parties before them, which would offend the Cases and Controversies clause of the Constitution. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

A claim becomes moot when intervening events make it impossible for the Court to grant "any effectual relief whatever" to the prevailing party. *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). The inquiry runs claim by claim, for each form of relief and each defendant. *Planned Parenthood Great Northwest, Hawai'i, Alaska, Indiana, Kentucky, Inc. v. Commissioner of the Indiana State Department of Health*, No. 24-2219, slip op. at 8–9 (7th Cir. Aug. 18, 2026). Even partial relief is enough to preserve a controversy. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam). A damages claim also may preserve a live controversy after prospective relief becomes unavailable, so long as the claim for money damages is at least plausible. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377–78 (2019).

Of particular interest here, an intervening enactment may moot a claim for prospective relief when the new law displaces the challenged law and leaves no effectual relief for the Court to grant. See *Zessar v. Keith*, 536 F.3d 788, 793–96 (7th Cir. 2008).

Enactment alone does not always establish mootness. See *Reporters Committee for Freedom of the Press v. Rokita*, 147 F.4th 720, 724–27 (7th Cir. 2025).

Where Article III jurisdiction is lacking or in doubt, the Court may not assume "hypothetical jurisdiction" to decide the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95, 101–02 (1998). If original jurisdiction existed but the federal claims later drop out or become moot, any remaining state law claims require separate treatment under 28 U.S.C. § 1367. See *RWJ Management Co. v. BP Products North America, Inc.*, 672 F.3d 476, 479–81 (7th Cir. 2012).

**B. THE JURISDICTIONAL RECORD**

The Court may raise subject-matter jurisdiction at any time and must dismiss the action if jurisdiction is absent. Fed. R. Civ. P. 12(h)(3). Before dismissing on a ground raised *sua sponte*, however, the Court ordinarily must give the affected party notice and an opportunity to respond. *Kowalski v. Boliker*, 893 F.3d 987, 996–97 (7th Cir. 2018); *Stewart Title Guaranty Co. v. Cadle Co.*, 74 F.3d 835, 836–37 (7th Cir. 1996). When jurisdiction turns on facts outside the pleadings, the Court may consider competent evidence submitted on the issue. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–45 (7th Cir. 2009).

**C. STAY**

The power to impose a stay is incidental to every court's authority to control the disposition of the cases on its docket. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Courts generally consider three things: prejudice or tactical disadvantage to the parties, whether a stay will simplify the issues, and whether it will reduce the burden of litigation. See, e.g., *Johnson v. Navient Solutions, Inc.*, 150 F. Supp. 3d 1005, 1007 (S.D. Ind. 2015). The

decision is discretionary, but within limits. A stay must remain within the bounds of moderation and end within reasonable limits. *Landis*, 299 U.S. at 256–57.

## Discussion

The Act raises a substantial Article III question. Plaintiffs built the entirety of the Second Amended Complaint around the absence of a lawful exit from their alleged certificate trilemma. The newly enacted subsection 21-310(b)(5) may provide just such an exit for qualifying certificates, which many of the certificates at issue here may be. The new section 21-302 may change the risk associated with qualifying tax deeds by eliminating or greatly reducing the risk that the certificates will require an unconstitutional taking. Both provisions address part of the problem Plaintiffs asked this Court to remedy. If the Act leaves this Court with no effectual relief to grant on a claim, that claim may be moot.

But although the new enactments raise the possibility of an escape from Plaintiffs' trilemma, such a possibility may not be enough to moot Plaintiffs' claims outright. The Notice is right that the new provisions speak directly to Plaintiffs' theory, but that overlap does not completely establish their legal effect. The potential refund depends on how new subsection (b)(5) works with subsection (d), which, being enacted prior to the recent revision, does not list the new ground, and with the section's existing certificate date provision. The surplus equity remedy raises a different question because subsection (b)(5) excludes deeded certificates, while the Second Amended Complaint alleges that at least two deeds have issued and have been challenged. Availability of a state procedure, entitlement to relief under that procedure, and receipt of the relief are separate

propositions. The present record does not establish any of them, and has other gaps as well.

One such gap appears in Plaintiffs' claims for money. Plaintiffs allege devaluation, additional expenses, and a right to recover their investments with interest. The Act may provide relief for some or all of those losses. The current record, for obvious reasons, does not establish which losses the Act reaches, whether the Act gives Plaintiffs an enforceable right to relief or merely the possibility of it, or whether any Defendant remains subject to a plausible damages claim tied to a completed injury. Such a plausible claim to even partial monetary relief that this Court can award would keep the affected claim live, even if the Act eliminated every basis for prospective relief.

The briefing before the Court does not, and could not have, addressed these issues. Focused supplemental briefing is therefore necessary. The question for briefing is whether, and to what extent, Public Act 104-0553 has rendered the claims and requested relief in the Second Amended Complaint moot under Article III. That question turns on the relevant provisions' meaning and temporal reach, the material post-pleading jurisdictional facts, and their application to the claims, remedies, and parties before the Court. The answer will also bear on all of the pending motions and on the treatment of, and indeed the jurisdiction of this Court over, any surviving state law claims.

The unresolved Article III question also warrants a limited stay. The Court cannot assume jurisdiction and proceed to the merits while that question remains unresolved. Resolving mootness may eliminate or materially simplify the pending motions, while continued merits litigation would impose expense that may prove unnecessary. Any

prejudice is limited because discovery is already stayed. Furthermore, it is anticipated that the stay will end with the Court's jurisdictional ruling, and nothing in the stay restricts a proceeding or protective action available under Illinois law. Those considerations support holding the pending motions in abeyance until the Court resolves mootness.

## CONCLUSION

For these reasons, the Court **ORDERS** as follows:

The Court raises the issue of Article III mootness as to all claims in the Second Amended Complaint in light of Illinois Public Act 104-0553. Until that issue is addressed by the Court, this matter is **STAYED**.

Defendants shall file one consolidated opening memorandum addressing whether, and to what extent, Public Act 104-0553 has rendered the claims and requested relief in the Second Amended Complaint moot under Article III. The memorandum shall interpret the relevant statutory provisions and their temporal operation, support with competent evidence any material post-pleading jurisdictional fact on which Defendants rely, and apply the governing mootness principles to the claims, remedies, and parties actually before the Court. Defendants shall state the precise disposition they request, including the effect of their position on the pending motions and on any remaining state-law claims.

Plaintiffs shall file one consolidated response addressing the same matters and stating the precise disposition they request. Defendants may file one consolidated reply.

Defendants' opening memorandum is due within 30 days after entry of this Order. Plaintiffs' response is due within 30 days after Defendants file their opening memorandum. Defendants' reply is due within 14 days after Plaintiffs file their response. No surreply will be accepted.

Declarations and exhibits bearing on subject-matter jurisdiction may accompany the authorized memoranda. The ordinary page limits apply. Except for the notice authorized in paragraph 6 and a request concerning administration of this Order, no other submission may be filed without leave of Court.

The Final Pretrial Conference set for December 3, 2026, and the Bench Trial set for December 14, 2026, are VACATED.

**SO ORDERED.**

Dated: September 8, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.09.08 15:07:11 -05'00'

DAVID W. DUGAN
United States District Judge